

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 23, 2025**

_____
**United States Bankruptcy Judge**

_____

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Chapter 11** |
| | § | |
| **ABUELO'S INTERNATIONAL, L.P., _et al._,[1]** | § | **Case No. 25-43339-elm11** |
| | § | |
| **Debtors.** | § | **Joint Administration Requested** |

**ORDER AUTHORIZING CONTINUED USE OF CASH**
**COLLATERAL AND GRANTING ADEQUATE PROTECTION**
**[REFERS TO DKT. NO. 11]**

This matter is before the Court on the _Debtors' Emergency Motion for Interim and Final_

_Orders (I) Authorizing Use of Cash Collateral; (II) Granting Adequate Protection; and (III)_

_Scheduling a Final Hearing_ ("Motion") [Dkt No. 11] filed by Abuelo's International, L.P. ("ABI"),

Food Concepts International, L.P. ("FCI"), and Food Concepts International Holdings, Inc. ("FCIH"), the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, include: Abuelo's International, L.P. (1108), Food Concepts International, L.P. (5079) and Food Concepts International Holdings, Inc. (2576).

Debtors in Possession in the above captioned chapter 11 cases (collectively "Debtors").

The Court having considered, on an interim basis, the aspects of the Motion and the exhibits attached thereto, and in accordance with Bankruptcy Rule 4001(c), due, proper and adequate notice of the Motion appropriate to the circumstances presented having been given, and a final hearing having been held on September 22, 2025 ("Final Hearing").  After consideration of the pleadings on file, evidence and arguments of counsel, the Court finds the relief requested in the Motion should be granted on an interim basis as set forth herein.

All objections having been withdrawn or overruled and the Court, having considered the pleadings, evidence and arguments of counsel, finds:

A.      On September 2, 2025, the Debtors filed their voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Petition Date").  Contemporaneously, the Debtors filed motions requesting joint administration of their bankruptcy proceedings, which motions were approved by the Court.

B.      The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No creditors' committee has been appointed in this case.

C.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief granted herein are section 364 of the Bankruptcy Code and Bankruptcy Rule 4001(c).  Venue of this Chapter 11 proceeding and the Motion is proper in this district pursuant to 28 U.S.C. § 1408 and 1409.

D.      The Debtors must continue post-petition operations and have no source of funds available to conduct postpetition operations other than deposits on hand at the time of

commencement of the subject proceeding together with prepetition accounts receivable collected and funds generated from continued operations (the "Cash Collateral").

E.      As of the Petition Date, liens or other interests are asserted against the Cash Collateral of the Debtors by First Bank & Trust, Lubbock, Texas, a state bank ("FBT")[2] and Ben E. Keith ("Keith" and collectively with FBT, the "Secured Creditors").

F.      If the Debtors are unable to fund post-petition operations, the value of the Debtors' estates will rapidly decline as the Debtors will be unable to operate their restaurants and generate revenue. The harm to the estates of Debtors will be irreparable.

G.      On September 5, 2025, the Court entered its *Order (I) Authorizing Interim Use of Cash Collateral; (II) Granting Adequate Protection; and (III) Scheduling a Final Hearing* ("Interim Order") [Dkt. No. 55] authorizing the Debtors to use Cash Collateral through September 26, 2025, unless extended by further order of the Court.

H.      The Debtors seek, on a continuing basis, authorization to use Cash Collateral to pay the actual, ordinary and necessary operating expenses incurred from September 26, 2025 through December 31, 2025, as set forth on the Budget attached hereto and incorporated herein as **Exhibit A** ("Budget").  The Budget has been prepared by the Debtors and their management and sets forth, among other things, the projected cash receipts and projected cash disbursements of the Debtors for the period covered thereby.  The Budget does not include extraordinary expenses which may be required from the Debtors and to the extent that such expenses are not part of the Budget the Debtors may seek consent from the Secured Creditors for the payment of the same or further authorization from the Court.

I.      The Secured Creditors have consented to the Debtors' use of Cash Collateral on the

---

[2] FBT is a division of Heartland Financial USA, Inc. ("HTLF"). On or about January 31, 2025, UMB Financial Corporation ("UMB") acquired HTLF.  FBT currently continues to operate as a division of UMB.

**In re Abuelo's International, L.P.,** *et al.***, Debtors in Possession**
**Order Authorizing Continued Use of Cash Collateral - Page 3**

terms set forth in this order (the "Order").  The Debtors and the Secured Creditors have negotiated the terms of this Order in good faith and at arm's length.

J.      The Debtors have requested immediate entry of this Order pursuant to Bankruptcy Rule 4001(b)(2).  This Court concludes that entry of this Order is in the best interest of the Debtors and their estates and creditors as its implementation will, among other things, allow for the continued operation and rehabilitation of the Debtors' existing business.

K.      Based on the record before this Court, there is good cause for the Court to authorize the Debtors' use of Cash Collateral under the terms and conditions stated herein.

L.      This Order constitutes findings of fact and conclusions of law under Bankruptcy Rule 7052 and will take effect and be fully enforceable immediately upon entry.

Based upon the foregoing findings and conclusions, and good and sufficient cause appearing therefor, **IT IS HEREBY ORDERED:**

1.      The Motion is **GRANTED** on an interim basis on the terms set forth herein.

2.      The paragraphs contained in the foregoing findings and conclusions of this Order are incorporated herein by reference, and the Debtors and the Secured Creditors consent and stipulate to the facts and findings contained in such preamble and to the entry of this Order.

3.      The assertions by the Debtors are solely for purposes of this continued use order and are not binding, preclusive or estoppel with respect to the Debtors' estates or any trustee or representative thereof or any creditor or party in interest, or committee.   Notwithstanding any other term of this Order, this Order, and use of the descriptive term "Cash Collateral:" (i) does not determine, adjudicate or find the nature, extent, priority, validity or perfected status of any alleged lien, interest or security interest, in any property, proceeds or Cash Collateral or the nature of any transaction  and (ii) does not release, waive, bar, estop, preclude or impair: (a) any right, defense,

claim, assertion or cause of action (including without limitation under Chapter 5 of the Bankruptcy Code) against any other person or entity of the Debtor or its estate or any creditor, party in interest or committee, or (b) any objection or request to disallow, re-characterize or subordinate any claim or interest asserted.

4.      Nothing contained herein shall waive or modify any rights and remedies that Debtors have or may come to have under this Order, at law, in equity, or otherwise.

5.      **Use of Cash Collateral.**  The Debtors are authorized to use Cash Collateral to pay the actual, necessary, and ordinary expenses incurred from and after the Petition Date in connection with the operation of its business up to but not exceeding 5% of each individual line item amount or 10% in the aggregate as set forth in the Budget. Debtors may not use Cash Collateral other than as set forth in the Budget and this Cash Collateral Order without further Court order.  Provided Debtors' authority to use Cash Collateral under this Order has not terminated pursuant to the terms set forth below, the Debtors are authorized to use Cash Collateral for the actual, necessary, and ordinary expenses incurred during such period consistent with, and as set forth in, the Budget.

6.      **Term.**

a.      The Debtors' use of the Cash Collateral shall terminate (subject to any applicable notice requirements as set forth below) on the earliest to occur of (each such occurrence being defined as a "Termination Event") (a) December 31, 2025 (the "Expiration Date"), unless extended pursuant to the procedures set forth in this Order or further order of this Court, (b) the dismissal or the conversion of any of these cases to Chapter 7 of the Bankruptcy Code, (c) the appointment or election of a trustee or examiner with expanded powers, provided however, that such trustee or examiner shall be provided use of Cash Collateral for a period of fifteen days from the date of the entry of the order approving the appointment of the trustee or examiner in order to

provide such trustee time to negotiate with the Secured Creditors continued use of Cash Collateral by the trustee or examiner and/or to file his own motion, (d) the occurrence of the effective date or consummation date of a plan of reorganization for the Debtors, or (e) the entry of an order of the Court reversing, staying, vacating or otherwise modifying in any material respect the terms of this Order. On and after the occurrence of a Termination Event specified above, the Debtors shall immediately cease using Cash Collateral.

b. On or before November 30, 2025, the Debtors shall serve upon Secured Creditor's counsel, debtor-in-possession lender's counsel, and the United States Trustee, by electronic mail, a proposed budget for the three-month period beginning January 1, 2026 (the "Proposed Extended Budget"). If no opposition to the Proposed Extended Budget is provided to the Debtors by Secured Creditors' counsel, debtor-in-possession lender's counsel, or the United States Trustee by 5:00 p.m. on the fifteenth calendar day after the service due date, the Proposed Extended Budget shall be deemed approved for the upcoming three-month period (thereby becoming an "Approved Extended Budget"), the Debtors shall file a Notice of Agreement Authorizing Continued Use of Cash Collateral (with a copy of the Proposed Extended Budget attached), and the Debtors shall be authorized to use Cash Collateral in accordance with the Approved Extended Budget. The same procedures shall be followed with respect to successive extensions for use of Cash Collateral, with each new three-month budget served on the appropriate parties no less than thirty (30) days prior to the expiration of the then-effective Approved Extended Budget.

7. **Default.** In the event the Debtors fail in any material manner to comply with this Order and such failure is not cured within seven (7) calendar days after receipt of written notice from the Secured Creditors, the Debtors' authority to use Cash Collateral under this Order shall

terminate. The Secured Creditors shall file of record a notice that a default has occurred at the same time notice is sent to the Debtors. Termination under this Section 7 shall constitute a Termination Event.

8.      **Adequate Protection.**

a.      The Secured Creditors, shall receive, as adequate protection to the extent of the diminution in value of each of their perfected interests in the Cash Collateral, a replacement lien in post-petition assets of the same character as their respective prepetition collateral and proceeds of post-petition assets of the same character as their respective prepetition collateral (collectively, the "Replacement Liens"), whether now existing or hereafter acquired or arising, and wherever located (the collateral subject to such Replacement Liens, the "Replacement Collateral"). Notwithstanding the foregoing, the Replacement Liens shall not encumber (i) the Debtors' leasehold interests in non-residential real estate (but shall include the proceeds of the sale or disposition of such leases) and (ii) any security deposits (in possession of the landlord) or the Debtors' interests, if any, in pre-paid rent, unless liens on such security deposits or pre-paid rent are expressly permitted pursuant to the underlying lease documents; provided that, the Replacement Liens shall extend to any such security deposits or pre-paid rent upon reversion thereof to the Debtors, or (iii) causes of action arising or recoverable under §§ 544, 545, 547, 548, 549, 550, or 551 of the Bankruptcy Code, all transfers avoided under §§ 544, 545, 547, 548, 549, 550, or 551 of the Bankruptcy Code, and all liens avoided under § 506(d) of the Bankruptcy Code.

b.      The Replacement Liens shall be superpriority claims (in the amount of diminution of value) senior to all other liens and administrative expense claims, except for the DIP

Lenders' superpriority claim as set forth in the DIP Motion[3] and fees and expenses of professionals retained by the Debtors or a committee, if any.

c.    The Replacement Liens shall (i) be supplemental to and in addition to the prepetition liens or interests of each respective Secured Creditor, (ii) be accorded the same validity and priority as enjoyed by the prepetition liens or interests immediately prior to the Petition Date, (iii) be deemed to have been perfected automatically effective as of the entry of this Order without the necessity of filing of any UCC-1 financing statement, state or federal notice, mortgage or other similar instrument or document in any state or public record or office and without the necessity of taking possession or control of any collateral. The foregoing notwithstanding, the Debtors shall execute and deliver to the Secured Parties all such agreements, financing statements, instruments and other documents as the Secured Parties may reasonably request to evidence, confirm, validate or perfect the liens granted pursuant hereto.

9.    **Carve-Out**. Notwithstanding any other provision of this Order, the Replacement Liens of the Secured Creditors granted pursuant to this Interim Order are subject to a carve-out of funds (hereinbefore and hereinafter, the "Carve-Out") for the following administrative expenses: (a) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930; (b) all fees and expenses of the Debtors' bankruptcy counsel or other professionals; and (c) any counsel or other professionals for any official creditors' committee.  Notwithstanding the foregoing, no Carve-Out funds shall be used in connection with the investigation or enforcement of a challenge of the liens, interests, and/or claims of the Secured Creditors.

---

[3] *Debtors' Emergency Motion for Interim and Final Orders (I) Authorizing the Debtors to Obtain Post-petition Financing; (II) Granting Superpriority Administrative Claims; and (III) Scheduling a Final Hearing* filed at **docket no. 12**

---

**In re Abuelo's International, L.P.,** *et al.***, Debtors in Possession**
**Order Authorizing Continued Use of Cash Collateral - Page 8**

10.     **PACA Liens**. Nothing in this Order is intended to affect the rights any creditor may have under the Perishable Agricultural Commodities Act ("PACA Claimants").

11.     ***Ad Valorem* Tax Liens**. Notwithstanding any provisions in the Motion, this Order or any final order, the statutory tax liens held by the Texas Taxing Authorities,[4] or which shall arise during the course of this case pursuant to applicable non-bankruptcy law for prepetition and postpetition taxes (the "Tax Liens"), shall neither be primed by nor subordinated to any liens granted thereby or pursuant to this Interim Order to the extent such Tax Liens are valid, senior, perfected, and unavoidable, and all parties' rights to object to the priority, validity, amount, and extent of the claims and liens asserted by the Texas Taxing Authorities are fully preserved.

12.     Except as otherwise provided, the terms of this Order shall be valid and binding upon the Debtors, all creditors of the Debtors and all other parties in interest from and after the entry of this Order by this Court, subject to the final hearing on the Motion.

13.     The entry of this Order shall not prejudice or limit the rights of the Debtors, Secured Creditors or any other party in interest to seek additional relief with respect to the use of Cash Collateral, to seek different or additional adequate protection, or request modification or termination of this Order. This Order shall not limit or otherwise alter the rights of the Debtors, Secured Creditors or other parties in interest, except to the extent specifically provided for herein.

14.     This Order does not find or determine the relationship or existence of any duty between the Secured Creditors and the Debtors. Nothing contained herein shall obligate any Secured Creditor to make further advances to the Debtor on any pre-petition loan or credit facility. Any such relief sought by the Debtors may be authorized by separate order of this Court.

---

[4] Texas Taxing Authorities is defined as Randall County, Harris County ESD #08, Katy ISD, Lewisville Independent School District, Smith County, Tarrant County, Plano ISD, Denton County, Midland CAD, and Taylor County CAD.

**In re Abuelo's International, L.P., *et al.*, Debtors in Possession**
**Order Authorizing Continued Use of Cash Collateral - Page 9**

15.     Within two business days after entry of this Order, Debtors' counsel shall serve a copy of this Order on each of the following parties or its counsel: (a) the U.S. Trustee for the Northern District of Texas; (b) the holders of the 20 largest unsecured claims against the Debtors; (c) the United States Attorney's Office for the Northern District of Texas; (d) the Internal Revenue Service; (e) any creditor known to have filed a UCC-1 financing statement concerning the Debtors' assets with the Secretary of State of Texas as of the Petition Date; (f) the Attorney General and Comptroller of Public Accounts for the State of Texas; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002.

16.     This Order shall be effective as of the date of the signature of the Court and, notwithstanding anything to the contrary in Bankruptcy Rules 4001(a)(3) or 6004(h), shall not be stayed absent the grant of a stay under Bankruptcy Rule 8005 after a hearing upon notice to the Debtors and Secured Creditors.  To the extent of any conflict or inconsistency between or among (a) the express terms of the Motion, any other order of this Court, or any other agreements and (b) the terms of this Order, the terms and provisions of this Order shall govern and control. The Debtors and Secured Creditors are hereby authorized and directed to take all actions necessary or desirable to effectuate this Order.

17.     The Debtors shall maintain insurance of a kind and in an amount sufficient to satisfy the requirements of the United States Trustee for the Northern District of Texas.

18.     This Court retains jurisdiction with respect to all matters arising from or relating to the implementation of this Order.

### End of Order ###

---

# EXHIBIT A

# BUDGET

**EXHIBIT A**

CONFIDENTIAL DRAFT - SUBJECT TO CHANGE

**FCI**
DIP Cash Flow Forecast
*(shown in USD thousands)*
Distribution Date: 09/19/25

| Line Item | Actual 08/25–08/29 | 1 Actual 09/01–09/05 | 2 Actual 09/08–09/12 | 3 Fcst 09/15–09/19 | 4 Fcst 09/22–09/26 | 5 Fcst 09/29–10/03 | 6 Fcst 10/06–10/10 | 7 Fcst 10/13–10/17 | 8 Fcst 10/20–10/24 | 9 Fcst 10/27–10/31 | 10 Fcst 11/03–11/07 | 11 Fcst 11/10–11/14 | 12 Fcst 11/17–11/21 | 13 Fcst 11/24–11/28 | 14 Fcst 12/01–12/05 | 15 Fcst 12/08–12/12 | 16 Fcst 12/15–12/19 | 17 Fcst 12/22–12/26 | 18 Fcst 12/29–01/02 | Fcst 18-Week Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Operating Receipts** | | | | | | | | | | | | | | | | | | | | |
| Deposits | 1,424 | 1,502 | 1,197 | 1,339 | 1,313 | 1,324 | 1,302 | 1,335 | 1,319 | 1,246 | 1,285 | 1,803 | 1,356 | 1,351 | 1,491 | 1,598 | 1,765 | 1,226 | 1,344 | 25,095 |
| Costco | 27 | 3 | - | 10 | - | 17 | 30 | 30 | 7 | 14 | - | 21 | 24 | 13 | 48 | 10 | 107 | 31 | - | 366 |
| Draw | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Other amounts | 500 | - | - | 5 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 5 |
| Polvo-Austin | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Rebates | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Receipts** | 1,951 | 1,505 | 1,197 | 1,355 | 1,313 | 1,341 | 1,332 | 1,365 | 1,326 | 1,260 | 1,285 | 1,824 | 1,380 | 1,364 | 1,539 | 1,608 | 1,872 | 1,257 | 1,344 | 25,466 |
| **Operating Disbursements** | | | | | | | | | | | | | | | | | | | | |
| BEK | 294 | - | 87 | 12 | 144 | 201 | 210 | 206 | 208 | 204 | 210 | 207 | 196 | 202 | 283 | 213 | 212 | 234 | 251 | 3,281 |
| GFS | 38 | - | 36 | 22 | 57 | 28 | 32 | 31 | 31 | 31 | 32 | 31 | 30 | 30 | 43 | 32 | 32 | 35 | 38 | 572 |
| Produce | 38 | - | 11 | 5 | 19 | 19 | 16 | 17 | 16 | 17 | 17 | 16 | 16 | 19 | 19 | 18 | 18 | 19 | 21 | 280 |
| Shamrock | 11 | - | 12 | 22 | 22 | 45 | 18 | 20 | 20 | 20 | 20 | 20 | 20 | 19 | 20 | 28 | 21 | 21 | 23 | 371 |
| Ed Don | 12 | - | 5 | 6 | 10 | 16 | 9 | 10 | 10 | 10 | 9 | 10 | 10 | 9 | 9 | 13 | 10 | 21 | 11 | 165 |
| Bc/Bs | 10 | - | - | 56 | 65 | 30 | 30 | 30 | 30 | 65 | 30 | 30 | 30 | 65 | 30 | 30 | 30 | 10 | - | 616 |
| FCI p/r | 91 | - | 12 | 92 | - | 118 | - | 118 | - | 118 | 118 | - | 118 | - | 118 | - | 118 | - | 118 | 927 |
| Instant draws | 152 | 120 | 156 | 149 | 155 | 159 | 157 | 161 | 158 | 148 | 154 | 159 | 160 | 161 | 176 | 186 | 209 | 148 | 197 | 2,913 |
| Sales / Liquor Tax | 10 | - | 1 | 421 | - | - | - | - | 525 | - | - | - | 419 | - | - | - | 415 | - | - | 1,782 |
| Fintech | 31 | 8 | 38 | 24 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 670 |
| Utilities | 33 | 35 | 58 | 46 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 1,339 |
| Supplies, R&M, IT, & Telcom | 157 | 102 | 62 | 79 | 91 | 91 | 91 | 91 | 91 | 91 | 91 | 91 | 91 | 91 | 91 | 91 | 91 | 91 | 91 | 1,602 |
| All p/r | 659 | 1 | 245 | 896 | 15 | 841 | 15 | 891 | 15 | 841 | 15 | 891 | 15 | 841 | 15 | 891 | 15 | 841 | 91 | 7,283 |
| All rent | - | 23 | 271 | 18 | - | 312 | 25 | 21 | - | - | 312 | - | - | - | 312 | 90 | 15 | 31 | - | 1,416 |
| Insurance Premiums | 4 | 4 | - | 76 | - | - | 81 | - | - | - | - | 81 | - | - | - | 81 | - | - | - | 323 |
| Misc | 48 | - | - | 69 | 60 | - | 81 | - | - | 60 | - | - | - | 60 | - | - | - | 60 | - | 309 |
| **Total Operating Disbursements** | 1,587 | 293 | 996 | 1,991 | 758 | 1,977 | 803 | 1,715 | 1,224 | 1,606 | 1,127 | 1,656 | 1,224 | 1,617 | 1,236 | 1,792 | 1,290 | 1,674 | 868 | 23,848 |
| **Net Cash Flow from Operations** | 365 | 1,212 | 200 | (636) | 555 | (636) | 529 | (350) | 102 | (346) | 158 | 168 | 156 | (253) | 304 | (184) | 582 | (418) | 476 | 1,618 |
| **Non-Operating Disbursements** | | | | | | | | | | | | | | | | | | | | |
| Debtor Restructuring Fees | - | - | - | - | 100 | - | - | - | 100 | - | - | - | 100 | - | - | - | - | - | - | 350 |
| DIP Loan Interest and Fees | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| FBT Loan Interest | - | - | - | - | 65 | - | - | - | 52 | - | - | - | 52 | - | - | - | 50 | 65 | - | 235 |
| UST Fees | - | - | - | - | - | - | - | - | 71 | - | - | - | - | - | - | - | - | - | - | 71 |
| Critical Vendor | - | - | - | 414 | 367 | 311 | 154 | 82 | 77 | 66 | 66 | 52 | 45 | - | - | - | - | - | - | 1,635 |
| **Total Non-Operating Disbursements** | - | - | - | 414 | 533 | 311 | 154 | 82 | 300 | 66 | 66 | 52 | 198 | - | - | - | 50 | 65 | - | 2,291 |
| **Net Cash Flow** | 365 | 1,212 | 200 | (1,050) | 22 | (947) | 374 | (432) | (198) | (412) | 92 | 115 | (41) | (253) | 304 | (184) | 532 | (483) | 476 | (672) |
| **Liquidity Summary** | | | | | | | | | | | | | | | | | | | | |
| Beginning Cash Balance | 158 | 522 | 1,734 | 1,934 | 885 | 1,407 | 460 | 1,334 | 902 | 1,204 | 792 | 884 | 1,000 | 958 | 705 | 1,009 | 825 | 1,357 | 874 | 522 |
| Net Cash Flow | 365 | 1,212 | 200 | (1,050) | 22 | (947) | 374 | (432) | (198) | (412) | 92 | 115 | (41) | (253) | 304 | (184) | 532 | (483) | 476 | (672) |
| DIP Advances / (Paydowns) | - | - | - | - | 500 | 1,000 | 500 | 500 | 500 | - | - | - | - | - | - | - | - | - | - | 1,500 |
| **Ending Cash Balance** | 522 | 1,734 | 1,934 | 885 | 1,407 | 460 | 1,334 | 902 | 1,204 | 792 | 884 | 1,000 | 958 | 705 | 1,009 | 825 | 1,357 | 874 | 1,350 | 1,350 |
| DIP Loan Commitment | - | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| DIP Loan Availability | - | 1,500 | 1,500 | 1,500 | 1,000 | 1,000 | 500 | 500 | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Liquidity (Cash + DIP)** | 522 | 3,234 | 3,434 | 2,385 | 2,407 | 1,460 | 1,834 | 1,402 | 1,204 | 792 | 884 | 1,000 | 958 | 705 | 1,009 | 825 | 1,357 | 874 | 1,350 | 1,350 |
| Available Cash | 522 | 1,734 | 1,934 | 885 | 1,407 | 460 | 1,334 | 902 | 1,204 | 792 | 884 | 1,000 | 958 | 705 | 1,009 | 825 | 1,357 | 874 | 1,350 | 1,350 |
| Hearts Cash | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 |
| 6991 Balance | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |

*Week 1 designated "Petition" week.*