Joseph F. Postnikoff
State Bar No. 16168320
Email: jpostnikoff@romclaw.com
ROCHELLE MCCULLOUGH, LLP
300 Throckmorton Street, Suite 520
Fort Worth, Texas 76102
Telephone: 817.347.5260
Facsimile: 817.347.5269
http://www.romclaw.com

Curt Hochbein
IN Bar No.2984-29
Email: chochbein@romclaw.com
211 North Pennsylvania Street, Suite 1330
Indianapolis, Indiana 46204
Telephone: 317.608.1137
Facsimile: 888.467.5979
http://www.romclaw.com

J. Mark Chevallier
State Bar No. 04189170
Email: mchevallier@romclaw.com
Michael Pipkin
State Bar No. 24122988
Email: mpipkin@romclaw.com
901 Main Street, Suite 3200
Dallas, Texas 75202
Telephone: 214.580.2530
Facsimile: 888.467.5979
http://www.romclaw.com

COUNSEL FOR DEBTORS IN POSSESSSION

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Chapter 11** |
| | § | |
| **ABUELO'S INTERNATIONAL, L.P., *et al.*,**[1] | § | **Case No. 25-43339-elm11** |
| | § | |
| **Debtors.** | § | **Jointly Administered** |

**DEBTORS' APPLICATION
FOR ENTRY OF AN ORDER AUTHORIZING THE
RETENTION AND EMPLOYMENT OF A&G REALTY PARTNERS, LLC
AS A REAL ESTATE CONSULTANT AND ADVISOR TO THE DEBTORS**

**IMPORTANT NOTICE**

**NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT ELDON B. MAHON FEDERAL BUILDING, 501 W. TENTH STREET, FORT WORTH, TX 76102 BEFORE CLOSE OF**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, include: Abuelo's International, LP (1108), Food Concepts International, L.P. (5079) and Food Concepts International Holdings, Inc. (2576).

**BUSINESS ON DECEMBER 1, 2025, WHICH IS AT LEAST TWENTY-ONE (21) DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE MUST BE IN WRITING AND FILED WITH THE CLERK, AND A COPY MUST BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED, A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

**IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

TO THE HONORABLE EDWARD L. MORRIS, UNITED STATES BANKRUPTCY JUDGE:

COME NOW, Abuelo's International, L.P., and its debtor affiliates, as debtors and debtors in Possession in in the above-reference chapter 11 cases (collectively, the "Debtors"), and hereby file this *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of A&R Realty Partners, LLC as a Real Estate Consultant and Advisor to the Debtors* (this "Application") and would respectfully show as follows:

### Relief Requested

1.      The Debtors seek entry of an order (the "Order") authorizing the employment and retention of A&G Realty Partners, LLC  ("A&G"), as real estate consultant and advisor to the Debtors, in accordance with the terms and conditions set forth in that certain real estate services agreement dated as of October 22, 2025 (as amended), a copy of which is attached to the Order as Exhibit 1 (the "Services Agreement"), incorporated by reference herein.

### Jurisdiction and Venue

2.      This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334.

3.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

In re Abuelo's International, L.P., *et al.*, Debtors in Possession
Application for Entry of an order Authorizing the Retention and Employment of A&G Realty Partners, LLC as a
Real Estate Consultant and Advisor to the Debtors - Page 2

4.      The relief requested in this Application is authorized under 11 U.S.C. §§ 327(e), 328, and 704 and Federal Rules of Bankruptcy Procedure 2014 and 2016.

5.      This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

## Bankruptcy

6.      On September 2, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The bankruptcy cases of the Debtors are jointly administered pursuant to this Court's Order Regarding Filing of Pleadings and Directing the Joint Administration of Cases [Docket No. 46] entered September 5, 2025

7.      No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

## Background

8.      Food Concepts International Holdings, Inc. ("FCIH") is the sole member of the general partner of Food Concepts International, L.P., a Texas limited partnership ("FCI").  FCI is the 99.99% limited partner of the Abuelo's International, L.P., a Texas limited partnership ("ABI").

9.      The Debtors are headquartered in Lubbock, Texas where they conduct their restaurant operations.

10.     The Debtors own and operate a chain of full-service, casual dining Mexican restaurants serving made-from-scratch Mexican food. The Debtors' first restaurant opened in 1989, and they now operate a total of 15 restaurants located in 7 states throughout the nation. The Debtors' operations have been impacted by a significant drop in sales, rising food and labor costs,

In re Abuelo's International, L.P., *et al.*, Debtors in Possession
Application for Entry of an order Authorizing the Retention and Employment of A&G Realty Partners, LLC as a
Real Estate Consultant and Advisor to the Debtors - Page 3

continued staffing challenges, and changes in consumer preferences. A detailed description of the

Debtors and their businesses, including the facts and circumstances giving rise to the Debtors'

chapter 11 cases, is set forth in the *Declaration of Robert Lin, President of Food Concepts*

*International Holdings, Inc., in Support of Chapter 11 Petitions and First Day Motions* (the "First

Day Declaration"), filed on September 4, 2025 [Docket No. 34] and incorporated herein by

reference.

11. The Debtors' workforce consists of approximately 1,000 employees including part-

time hourly as well as salaried employees. Legal issues encountered by the Debtors' Human

Resources Department a wide array of employment matters including immigration, worksite

compliance, and labor and employment law. These matters are outside of the expertise of Debtors'

general bankruptcy counsel, Rochelle McCullough, LLP.

### Retention of A&G[2]

12. In consideration of the various issues that have already arisen and will continue to arise

with landlords during these chapter 11 cases, the Debtors have determined that the services of

experienced real estate consultants will substantially enhance their attempts to maximize the value of

their estates.  The Debtors have chosen A&G because A&G is well suited to provide the real estate

services that the Debtors require.  The principals of A&G have over fifty years of commercial real

estate experience and have extensive knowledge and expertise in the retail industry.  A&G is a

well-known, reputable and diversified real estate consulting and advisory firm with offices located

in New York and Illinois.  A&G's professionals have extensive experience in providing services

---

[2] The terms of this Application, as well as the terms of the Order requested by this Application and entered pursuant
hereto, shall apply to any and all affiliates of the Debtors that have not yet filed a voluntary petition for relief
under chapter 11 of the Bankruptcy Code as of the Petition Date, but which subsequently file such a petition
during the pendency of these chapter 11 cases.

In re Abuelo's International, L.P., *et al.*, Debtors in Possession
Application for Entry of an order Authorizing the Retention and Employment of A&G Realty Partners, LLC as a
Real Estate Consultant and Advisor to the Debtors - Page 4

regarding the review, analysis, restructuring, disposition, and negotiation of real property and lease agreements, inside and outside of bankruptcy.

13.     A&G has significant experience in the disposition and renegotiation of leases and properties in bankruptcy.  A&G's professionals have assisted, advised or been retained as real estate consultants in a variety of bankruptcy cases involving issues relating to the review, analysis, renegotiation, and disposition of key real property and lease agreements.

14.     A&G is well qualified to perform all services contemplated by the Services Agreement and to represent the Debtors' interests in these chapter 11 cases in a cost effective, efficient, and timely manner.  The engagement of A&G is critical to the Debtors' efforts to navigate successfully through chapter 11 and provide a maximum recovery to their creditors.

**Scope of Services**

15.     As set forth more fully in the Services Agreement, a true and accurate copy of which is attached hereto and incorporated herein as **Exhibit A**, A&G will provide the following services (collectively, the "Services"):

    a.    assist the Debtors with real estate strategy;

    b.    consult with the Debtors to discuss the Debtors' goals, objectives and financial parameters in relation to the Debtors' Leases;

    c.    provide ongoing advice and guidance related to individual financial and non-financial lease restructuring opportunities;

    d.    negotiate with the landlords of the Leases (collectively, the "Landlords" and, individually, a "Landlord") on behalf of the Debtors to obtain Lease Modifications;

    e.    if requested by the Debtors, negotiate with Landlords on behalf of the Debtors to obtain Early Termination Rights; and

    f.    provide regular update reports to the Debtors regarding the status of the Services.

In re Abuelo's International, L.P., *et al.*, Debtors in Possession
Application for Entry of an order Authorizing the Retention and Employment of A&G Realty Partners, LLC as a
Real Estate Consultant and Advisor to the Debtors - Page 5

16.     The Services are necessary to enable the Debtors to maximize the value of their estates and are in the best interests of the Debtors, their estates, and their creditors.  A&G has stated its desire, willingness, and ability to act as the Debtors' real estate consultant and advisor in these chapter 11 cases.

17.     The Services that will be rendered by A&G in connection with this proposed engagement are not duplicative of the services to be performed by any of the Debtors' other retained professionals or advisors.  A&G will coordinate with the Debtors and the Debtors' other professionals to minimize unnecessary duplication of efforts among the Debtors' professionals.

## Professional Compensation

18.     Subject to the Bankruptcy Court's approval, the Debtors will compensate A&G in accordance with the terms and conditions set forth in the Services Agreement, including Schedule B thereto.  It is contemplated that A&G shall be compensated as follows:

    a.     Monetary Lease Modifications.  For each Monetary Lease Modification[3] obtained by A&G on behalf of the Debtors, A&G shall earn and be paid a fee (a "Monetary Lease Modification Fee"), for each Lease so modified, in the amount of six percent (6%) of the Occupancy Cost Savings.

    b.     Non-Monetary Lease Modifications.  For each Non-Monetary Lease Modification obtained by A&G on behalf of the Debtors, A&G shall earn and be paid a fee of $1,500 per Lease modified.

---

[3]   A "Monetary Lease Modification" is defined as any modification to or inclusion of additional provisions relating to the monetary terms of a Lease agreement, including, but not limited to, reduction in rent/other Lease charges, reduction in Lease Term, reduction in Lease space, termination of/waiver of/deferral of/free rent or other Lease charges (including any previously deferred rent or other Lease charges), reduction or elimination of any outstanding amounts due under a Lease, reduction in square footage of premises covered by a Lease, reduction in the termination/kick out notice provision, the granting of tenant allowance or capital improvement dollars from the Landlord, the waiver of Debtors' capital expenditure obligations to the Landlord of the applicable Lease, extensions of existing rent reductions past their original end date, reduction in CAM charges, taxes, elimination of percentage rent, conversion to percentage rent, reductions in or returns of security deposits and FF&E if otherwise non-refundable (either pursuant to the terms of the Lease or as determined by the Landlord), or any other amendment to a Lease that results in Occupancy Cost Savings to the Debtors.

c. Early Termination Rights. For each Early Termination Right obtained by A&G on behalf of the Debtors, A&G shall earn and be paid a fee of one-third (1/3) of one (1) month's Gross Occupancy Cost[4] per Lease.

19. In addition to any fees payable by the Debtors to A&G, A&G also intends to seek reimbursement for its reasonable, documented out-of-pocket expenses incurred in connection with its retention and performance of the Services. This include, but is not limited to, responding to any litigation or other type of inquiry, deposition or otherwise relating to the Services or the Services Agreement. Any single expense in excess of $500 must be pre-approved by the Debtors. Any reimbursable expense shall be paid to A&G within fifteen (15) business days upon receipt of invoice except as may be approved or directed otherwise by the Bankruptcy Court.

20. To the extent A&G uses the services of independent contractors (the "Contractors") in these chapter 11 cases pursuant to the Services Agreement, A&G shall be responsible for the performance of and payment of any fees to such Contractors independently of the fee structure between the Debtors and A&G. A&G will not pass through the cost of such Contractors to the Debtors and will not seek reimbursement from the Debtors. A&G will ensure that the Contractors are subject to conflict checks with respect to the parties related to their involvement in these chapter 11 cases.

---

[4] A "Gross Occupancy Cost" is defined as the sum of the remaining base rent, any annual increases, percentage rent, CAM, taxes payable directly to the Landlord, insurance, rental tax, marketing and merchants' association charges, utility charges, HVAC usage charges, trash removal charges, sprinkler usage charges, unpaid rents, or any other sums due to the Landlord under a particular Lease as of the Agreement Date. For clarification purposes, Gross Occupancy Cost is calculated using the first date that the Service commences (i.e., the date that the rent reduction commences) through the earlier of the end of the Lease term in effect as of the Agreement Date (or longer if a Lease extension is also requested and negotiated by A&G on behalf of the Debtors) or when the Service is no longer in effect. CAM, taxes, insurance, marketing and merchants' association charges and all other applicable charges will be calculated using the last available full year charge for each item (which may be a calendar year or a lease year, depending upon which is the most recent full year charge available). In the event that a Lease provides that rent thereunder increases periodically based upon the change in the Consumer Price Index (CPI), the assumed annual CPI increase shall be four percent (4%) except as otherwise may be provided in such Lease.

---

In re Abuelo's International, L.P., *et al.*, Debtors in Possession
Application for Entry of an order Authorizing the Retention and Employment of A&G Realty Partners, LLC as a
Real Estate Consultant and Advisor to the Debtors - Page 7

21. A&G may provide additional services requested by the Debtors that are not otherwise specifically provided for in the Services Agreement, as mutually agreed upon by the Parties in writing, without the need for the Court's approval (the "Additional Services").

22. The compensation structure described above and set forth in the Services Agreement is comparable to compensation generally charged by real estate consultants and advisors of similar stature to A&G for comparable engagements, both in and out of bankruptcy. The compensation structure is also consistent with A&G's normal and customary billing practices for cases of comparable size and complexity that require the level and scope of services to be provided in this case.

### No Duplication of Services

23. The real estate consultancy and advisory services provided by A&G will complement, and not duplicate, the services to be rendered by any other professional retained in these chapter 11 cases.

### A&G's Disinterestedness

24. Section 327(a) of the Bankruptcy Code provides that a debtor "may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties . . ." 11 U.S.C. § 327(a).

25. Section 101(14) of the Bankruptcy Code defines a "disinterested person" as a person that:

    a. is not a creditor, an equity security holder, or an insider;

    b. is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

    c. does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or

In re Abuelo's International, L.P., *et al.*, Debtors in Possession
Application for Entry of an order Authorizing the Retention and Employment of A&G Realty Partners, LLC as a
Real Estate Consultant and Advisor to the Debtors - Page 8

indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).

26.     To the best of the Debtors' knowledge, information and belief, and except to the extent disclosed herein and as set forth in more detail in the declaration of Andy Graiser attached hereto and incorporated herein as **Exhibit B** (the "Graiser Declaration"), A&G: (a) is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, (b) has no connection with the Debtors, their creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, or the Office of the U.S. Trustee or any person employed in the Office of the U.S. Trustee; and (c) does not hold or represent an interest adverse to the Debtors or the Debtors' estates.

27.     A&G is not owed any amounts by the Debtors as of the Petition Date and does not hold a claim against the Debtors' estates.  A&G has indicated that if it discovers any information that is contrary to or pertinent to the statements made in the Graiser Declaration, it will promptly disclose such information to this Bankruptcy Court, the Debtors, and the U.S. Trustee.

28.     The Debtors have also been advised that A&G has not shared or agreed to share any of its compensation from the Debtors with any other persons or firm in accordance with section 504 of the Bankruptcy Code.

**Fee Application**

29.     Because A&G's compensation is results-oriented by virtue of their efforts to obtain Monetary Lease Modifications, Non-Monetary Lease Modifications and Early Termination Rights, on the Debtors' behalf, requiring A&G to file monthly fee statements with detailed time records is unnecessary under the circumstances.  A&G intends to file interim and final fee applications pursuant to sections 330 and 331 of the Bankruptcy Code, but the Debtors request that

In re Abuelo's International, L.P., *et al.*, Debtors in Possession
Application for Entry of an order Authorizing the Retention and Employment of A&G Realty Partners, LLC as a
Real Estate Consultant and Advisor to the Debtors - Page 9

A&G be excused from any requirement to keep detailed time records similar to those customarily kept by attorneys and other professionals who are compensated on an hourly basis.

30. A&G is being retained under sections 327(a) and 328 of the Bankruptcy Code and will be employed by the Debtors to perform a highly specialized and discrete task and, accordingly, will not be compensated based upon time and effort expended. Instead, A&G will be compensated based on (a) a percentage of Monetary Lease Modifications and Early Terminations, and (b) flat fee for any Non-Monetary Lease Modifications obtained. Requiring A&G to record and submit detailed time entries in light of the transactional nature of the services to be rendered by A&G herein and the percentage-based/flat fee structure set forth in the Services Agreement would be unduly burdensome to A&G. The Debtors further acknowledge and agree that the ultimate benefit to the Debtors from A&G's services likely could not be measured merely by reference to the number of hours to be expended by the A&G professionals in the performance of such services. Accordingly, the Debtors request that A&G be relieved of the requirement to maintain detailed time records or file interim fee applications.

31. In the event that A&G provides any Additional Services requested by the Debtors that are not otherwise specifically provided for in the Services Agreement, the Debtors will file such amendment(s) with the Court and serve such amendment(s) upon the United States Trustee, counsel for the Secured Creditors, counsel for the DIP Lenders, and the holders of the 20 largest unsecured claims against the Debtors. If any parties object within ten days of such new amendments being served, the Debtors shall promptly schedule a hearing before this Court. All Additional Services shall be subject to order of this Court.

32. With respect to fees and expense reimbursements sought for Additional Services (as defined in the Services Agreement) rendered by A&G, A&G will be compensated in

In re Abuelo's International, L.P., *et al.*, Debtors in Possession
Application for Entry of an order Authorizing the Retention and Employment of A&G Realty Partners, LLC as a
Real Estate Consultant and Advisor to the Debtors - Page 10

accordance with and will file interim and final fee applications for allowance of its compensation and expenses incurred during the applicable retention period and shall be subject to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and applicable law. For these services, A&G will keep reasonably detailed time records in half-hour increments and will submit, with any interim or final fee application, together with the time records, a narrative summary, by project category, of services rendered and will identify each professional rendering services, the category of services rendered and the amount of compensation requested. All fees and expenses paid to A&G are subject to disgorgement until final allowance by the Court.

33.     A&G will disclose any and all facts that may have a bearing on whether A&G, its affiliates, and/or any individuals working on the engagement hold or represent any interest adverse to the Debtors, their creditors, or other parties in interest in these cases. The obligation to disclose identified in this paragraph shall be a continuing obligation.

34.     With respect to controversies or claims arising out of or in any way related to the Services in the Services Agreement notwithstanding any arbitration, dispute resolution, or exclusive jurisdiction provisions contained in the Services Agreement, any disputes arising under the Services Agreement will be heard in this Court during the pendency of these chapter 11 cases.

35.     The applications submitted in the manner set forth herein will provide the Bankruptcy Court and other parties in interest with sufficient information to monitor the amount and type of service rendered by A&G and is necessary and in the best interests of the Debtors, their creditors, and their estates.

36.     Based on the foregoing, the Debtors request that the Bankruptcy Court enter the Order, substantially in the form attached hereto, approving A&G's retention as real estate advisors

In re Abuelo's International, L.P., *et al.*, Debtors in Possession
Application for Entry of an order Authorizing the Retention and Employment of A&G Realty Partners, LLC as a
Real Estate Consultant and Advisor to the Debtors - Page 11

for the Debtors effective as of October 22, 2025, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and approving the terms of the Services Agreement.

### Indemnification

37.     The Services Agreement contains standard indemnification language with respect to A&G's services including, without limitation, an agreement by the Debtors to indemnify A&G and its affiliates, officers, directors, employees, agents and independent contractors from and against all third party claims, demands, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses arising out of or in connection with the engagement of A&G that is the subject of the Services Agreement, except to the extent that such claims or liabilities arise as a direct result of A&G's fraud, gross negligence, or willful misconduct.

38.     The Debtors and A&G believe that the indemnification provision contained in section 22 of the Services Agreement (the "Indemnification Provision") is customary and reasonable for A&G and comparable firms providing real estate consultancy and advisory services.

a.      The terms and conditions of the Indemnification Provision were fully negotiated between the Debtors and A&G at arm's length and in good faith as part of the overall compensation payable to A&G under the Services Agreement. The Indemnification Provision, viewed in conjunction with the other terms of A&G's proposed retention, is reasonable and in the best interest of the Debtors, their estates, and creditors in light of the fact that the Debtors require A&G's services to successful reorganize. The Debtors request that this Court approve the Indemnification Provision as set forth in the Services Agreement.

In re Abuelo's International, L.P., *et al.*, Debtors in Possession
Application for Entry of an order Authorizing the Retention and Employment of A&G Realty Partners, LLC as a
Real Estate Consultant and Advisor to the Debtors - Page 12

## Applicable Authority

39.    The Debtors seek authority to retain and employ A&G as their real estate consultant and advisor Section 327(a) of the Bankruptcy Code, which provides that a debtor, subject to court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under this title.

11 U.S.C. § 327(a).

40.    Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

41.    Further, the Debtors seek approval of the fee arrangement under the Services Agreement pursuant to section 328(a), which provides, in relevant part, that a debtor, "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

42.    The fee structure set forth in the Services Agreement is reasonable under section 328(a) of the Bankruptcy Code in light of:  (a) the nature and scope of services to be provided by A&G; (b) industry practice with respect to the fee structure proposed by A&G; (c) market rates charged for comparable services both in and out of chapter 11; and (d) A&G's substantial experience with respect to real estate issues.

In re Abuelo's International, L.P., *et al.*, Debtors in Possession
Application for Entry of an order Authorizing the Retention and Employment of A&G Realty Partners, LLC as a
Real Estate Consultant and Advisor to the Debtors - Page 13

43. Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

44. Sections 327(a) and 328 of the Bankruptcy Code permits the Debtors to hire a professional firm like A&G to undertake an advisory role in these chapter 11 cases. Furthermore, the requirements set forth by Bankruptcy Rule 2014 are satisfied by this Application. The retention of A&G as real estate consultant and advisor in these chapter 11 cases is in the best interests of the Debtors' estates, creditors, and the parties in interest.

45. The Debtors' proposed form of Order approving this Application is attached hereto and incorporated herein as **Exhibit C**.

**WHEREFORE, PREMISES CONSIDERED,** the Debtors pray for an order of this Court authorizing the employment of A&R Realty Partners, LLC as a Real Estate Consultant and Advisor for the purposes and upon the terms and conditions contained herein, and for such other and further relief, at law or in equity, to which the Debtors may be shown justly entitled.

Dated this the 10th day of November 2025.

Respectfully submitted,

ROCHELLE MCCULLOUGH, LLP
300 Throckmorton, Suite 520
Fort Worth, Texas 76102
Telephone: 817.347.5260
Facsimile: 817.347.5269
http://www.romclaw.com

In re Abuelo's International, L.P., *et al.*, Debtors in Possession
Application for Entry of an order Authorizing the Retention and Employment of A&G Realty Partners, LLC as a
Real Estate Consultant and Advisor to the Debtors - Page 14

By: \_\_\_\_/s/ Joseph F. Postnikoff_____
Joseph F. Postnikoff
State Bar No. 16168320
Email: jpostnikoff@romclaw.com

and

Curt Hochbein
IN Bar No.2984-29
Email: chochbein@romclaw.com
211 North Pennsylvania Street, Suite 1330
Indianapolis, Indiana 46204
Telephone: 317.608.1137
Facsimile: 888.467.5979
http://www.romclaw.com

and

J. Mark Chevallier
State Bar No. 04189170
Email: mchevallier@romclaw.com
Michael Pipkin
State Bar No. 24122988
Email: mpipkin@romclaw.com
901 Main Street, Suite 3200
Dallas, Texas 75202
Telephone: 214.953.0182
Facsimile: 888.467.5979
http://www.romclaw.com

COUNSEL FOR DEBTORS IN POSSESSION

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 10th day of November 2025, a copy of the foregoing Application was served via ECF on all parties designated to receive service by ECF and by first-class United States mail, postage prepaid, on the persons named on the attached service list.

\_\_\_\_/s/  Joseph F. Postnikoff_____
Joseph F. Postnikoff

In re Abuelo's International, L.P., *et al.*, Debtors in Possession
Application for Entry of an order Authorizing the Retention and Employment of A&G Realty Partners, LLC as a
Real Estate Consultant and Advisor to the Debtors - Page 15

# <u>Exhibit A</u>

## Services Agreement

Docusign Envelope ID: B79AF8D6-EE7B-4CF3-9045-07E3AFED7DC7



# REAL ESTATE SERVICES AGREEMENT WITH FOOD CONCEPTS INTERNATIONAL, LP

Docusign Envelope ID: B79AF8D6-EE7B-4CF3-9045-071E3AFD7CD7

This Real Estate Services Agreement including the Schedules attached hereto and incorporated herein (collectively the "Agreement") is made as of October 22, 2025 (the "Agreement Date"), by and between **A&G REALTY PARTNERS, LLC**, a New York limited liability company, with its principal place of business at 445 Broadhollow Road, Suite 420, Melville, New York 11797 ("A&G"), and **FOOD CONCEPTS INTERNATIONAL, LP**, a Texas limited partnership, with its principal place of business at 4413 82nd Street, Suite 250, Lubbock, Texas 79424-3366 (including its affiliates and subsidiaries, collectively the "Company" and, together with A&G, collectively, the "Parties" and, individually, a "Party").

## WITNESSETH:

**WHEREAS**, the Company is the lessee or sublessee of certain non-residential real property leases identified on Schedule A (collectively, the "Leases" and, individually, a "Lease"):

**WHEREAS**, on September 2, 2025, the Company filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the Northern District of Texas, under Case No. 25-43341-mxm11 (jointly administered) (the "Bankruptcy Court"):

**WHEREAS**, the Company desires to: (i) reduce or amend its obligations under the Leases by modifying the terms and conditions thereof or reduce risk and provide optionality under certain Leases; and (ii) obtain other real estate consulting and advisory services as set forth herein; and

**WHEREAS**, under the terms and conditions contained in this Agreement, the Company desires to retain A&G and A&G is willing to provide the Services (as defined below).

**NOW THEREFORE**, in consideration of the mutual covenants and conditions contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. Services to be Provided. In accordance with the terms and conditions of this Agreement, A&G will provide the following services (the "Services"):

    a) assist the Company with real estate strategy:

    b) consult with the Company to discuss the Company's goals, objectives and financial parameters in relation to the Leases:

    c) provide ongoing advice and guidance related to individual financial and non-financial lease restructuring opportunities:

    d) negotiate with the landlords of the Leases (collectively, the "Landlords" and, individually, a "Landlord") on behalf of the

2

Company to obtain Lease Modifications (as defined below) acceptable to the Company;

e) Negotiate with Landlords on behalf of the Company to obtain Early Termination Rights (as defined below) acceptable to the Company; and

f) provide regular update reports to the Company regarding the status of the Services.

2.  Term of Agreement.  Subject to Section 15 herein, this Agreement shall be for a term of one (1) year following the Agreement Date (the "Term"). In the event the Services are not completed at the end of the Term, the Agreement may be extended or renewed by written agreement of the Parties.

3.  Compensation.  The compensation for the Services is set forth on Schedule B, which is attached hereto and incorporated herein (the "Compensation"). The Company acknowledges that the calculations necessary to determine Compensation are predicated on Company Information (as that term is defined below) provided by the Company to A&G. Any material discrepancies, inaccuracies or omissions in the Company Information may affect the Compensation payable to A&G.

4.  Additional Services.  A&G may provide additional services requested by the Company that are not otherwise specifically provided for in this Agreement. Any additional services will be agreed upon mutually by the Parties and documented in a separate agreement.

5.  Recordkeeping.  The Services to be provided by A&G pursuant to this Agreement are, in general, transactional in nature. Accordingly, A&G will not bill the Company by the hour or maintain time records.

6.  Expenses and Disbursements.  The Company shall reimburse A&G for A&G's reasonable out-of-pocket expenses incurred in connection with its retention and provision of Services. This includes, but is not limited to, responding to any litigation or other type of inquiry, deposition or otherwise relating to the Services or this Agreement. Any single expense in excess of $500 must be pre-approved by the Company. Any reimbursable expenses shall be paid to A&G within fifteen (15) business days upon receipt of invoice except as may be approved or directed otherwise by the Bankruptcy Court.

7.  Exclusive.  During the Term of this Agreement, A&G shall have the sole and exclusive authority to perform the Services for the Leases set forth on Schedule A The Company shall forward to A&G all relevant inquiries regarding the Leases made to the Company, its representatives or related parties. Schedule A may be amended from time to time during the term of this Agreement to add additional Leases or to delete any Leases upon mutual written consent by the Parties.

3

Docusign Envelope ID: B79AF8D6-EE7B-4CF3-9045-07YE9APD7CD7

The Company acknowledges that A&G may be engaged to provide the same or similar services as those referenced herein to other persons or entities and that any such engagement shall not constitute or be deemed to be a violation of this Agreement, provided that it is not a conflict of interest or otherwise does not materially interfere with A&G's ability to provide the Services.

8.    <u>Company Representative</u>. Robert Lin will be the Company's representative (the "<u>Company Representative</u>") in dealing with A&G. The Company reserves the right, at any time and from time to time, upon written notice to A&G, to designate a successor representative or an additional representative and to limit the authority of the Company Representative in any respect. A&G will report regularly to the Company Representative in order to keep him fully apprised of A&G's performance. The designated principal representative for A&G will be Andy Graiser. If A&G seeks to change its principal representative, the Company agrees to reasonably consent to any proposed replacement.

9.    <u>Company Cooperation</u>. The Company shall provide A&G with all information concerning the Leases reasonably necessary for the performance of A&G's obligations hereunder, including, but not limited to (a) copies of the Leases and any Lease abstracts, (b) populating an Excel spreadsheet provided by A&G with, among other things, current rents, taxes and other charges relating to the Leases, rent bumps, percentage rent and breakpoints, premises size, the commencement and expiration dates of the Leases, any Lease options, up to date Landlord contact information (including name, email and phone number information for each Landlord), any outstanding or deferred rent, any deferred maintenance reports, and any default letters sent by Landlords, and (c) such other information as A&G requests for the performance of its Services (collectively, the "<u>Lease Information</u>"). The Company agrees to utilize its own financial analysts to prepare financial models relative to rent reduction requests, while A&G will provide guidance and assumptions to assist the Company in the preparation of the requests to Landlords.

All information provided by the Company to A&G, including, but not limited to, the Company's goals and objectives, financial information and the Lease Information referenced above, shall collectively be referred to as "<u>Company Information</u>." It is understood and agreed by the Parties that A&G shall have no obligation to verify the accuracy of such information and that A&G shall have no liability whatsoever resulting from, whether directly or indirectly, the inaccuracy or incompleteness of the Company Information. Both Parties understand and agree that A&G bases its Services on the Company Information and any material inaccuracies, discrepancies or omissions in the information may delay or impede A&G's ability to render the Services. If any of the Company Information turns out to be inaccurate, the Company shall provide such internal personnel and administrative support as necessary to correct the information. Furthermore, both Parties understand and agree that the commencement of this Agreement and the continuation of its Services are contingent upon A&G's receipt of the Company Information.

4

Docusign Envelope ID: B79AF8D6-EE7B-4CF3-9045-07YE3APD7CD7

The Company Information will be used solely for the purpose of A&G's Services hereunder and not in any way directly or indirectly detrimental to the Company or its affiliates and such information will be kept confidential by A&G.

Additionally, the Company agrees to assist A&G in the performance of its Services, including but not limited to, by providing (i) a response, within three (3) business days of A&G's transmittal to the Company of a Deal Sheet (as defined below) for each Lease, which states whether a proposed Service is approved or not, and (ii) all necessary legal support to review expeditiously Documents (as defined below) submitted by A&G in connection with a Service and getting all Documents in form and substance acceptable to the Company executed accurately and expeditiously. The Company acknowledges and agrees that time is of the essence with respect to the foregoing. In addition, the Company shall track the status of all Documents through an A&G legal tracking report provided by A&G.

10.     Use of Company Name. A&G may use the Company's name and logo to identify the Company as one of A&G's clients.

11.     No Authority to Execute Agreements. A&G shall have no right or power to enter into any agreement in the name, or on behalf of, the Company or to otherwise obligate the Company in any manner unless authorized in writing.

12.     Meetings. After the commencement of the Agreement, A&G shall meet with, in a manner agreed to by the Parties, the Company's Representative(s) to review the Company's goals, objectives and financial parameters. Thereafter, A&G will meet with or participate in telephone conferences with the Company's Representative(s) regarding the status of the Services as mutually agreed to by the Parties.

13.     Disclosures/Reports. All information, advice, recommendations (whether written or oral) or any reports, presentations or other communications that A&G provides under the terms of this Agreement are solely for the benefit of the Company in connection with the Services rendered by A&G hereunder and no such opinion, advice, recommendations or reports shall be used for any other purpose, or reproduced, disseminated, quoted or referred to at any time, in any manner, other than as provided herein, without the prior written consent of A&G. Notwithstanding the foregoing, the Company may provide such information, advice and recommendations to its Board of Directors, attorneys and other retained professionals (the "Company Representative Group") as required to effectuate the Services; provided, however, the Company acknowledges that the reports generated and supplied to the Company by A&G in connection with the Services contain proprietary work product of A&G and agrees that it will not reverse engineer such work product or use/disclose it to any person other than in connection with said person's evaluation of the Services; and provided, further, that both Parties understand and agree that A&G shall have no liability to the Company Representative Group and that no member of the Company Representative Group is intended to be a third-party beneficiary to this Agreement.

5

Docusign Envelope ID: B79AF8D6-EE7B-4CF3-9045-07E9AFD7CD7

If the Company receives a subpoena, summons or court order by any federal, state or other regulatory agency having jurisdiction over the Company relating in any respect to A&G or its Services, the Company shall promptly notify A&G, if legally permissible, so that A&G may obtain, at its sole cost, a protective order for such information. If A&G is unable to obtain a protective order and the Company is required to provide information regarding A&G and/or the Services, the Company agrees to provide only that information which is legally required and to use reasonable efforts to ensure the confidentiality of such information and documentation.

14. Independent Contractor. Each Party acknowledges and agrees that the arrangements contemplated herein are and will be for the provision of the Services and that nothing contained herein shall create or be construed as creating a contract or other arrangement of employment between the Company and A&G. A&G shall provide the Services as an independent contractor and not as an employee, agent, partner or joint venture of the Company.

15. Early Termination. Either Party may terminate this Agreement without cause upon thirty (30) days' prior written notice in accordance with the notice provision below. Additionally, if either Party fails to perform its obligations in accordance with the terms herein and does not cure such failure within ten (10) days after written notice of default, the other Party will have the right to terminate this Agreement by notice of termination to the non-performing Party, effective ten (10) days after the date of such notice. Additionally, if for any reason either Party becomes unable to perform its duties as a result of a legal, contractual or regulatory restriction, such Party shall have the right to terminate this Agreement. Any rights or obligations incurred or accrued by either Party prior to termination shall survive termination of this Agreement.

16. Assignment. Neither Party may delegate or assign its rights and obligations under this Agreement in whole or in part to an unaffiliated third party without the prior written consent of the other Party.

17. Bankruptcy. The Company agrees to apply promptly to the Bankruptcy Court for an order, in a form acceptable to A&G, authorizing the Company to retain A&G effective as of the filing date and to compensate A&G in accordance with the terms of this Agreement, and to use its best efforts to obtain such order. The Company agrees to (a) seek the hiring and retention of A&G under sections 327 and 328 of the Bankruptcy Code and (b) file any applications necessary and otherwise assist A&G in obtaining Bankruptcy Court approval of the payment of its fees and costs hereunder. The Company agrees to provide A&G with a copy of the pleadings requesting retention of A&G prior to submission to the Bankruptcy Court for A&G's review and comments and advise A&G of any objection or hearings pertaining to A&G's retention. The order authorizing A&G's retention must be acceptable to A&G and A&G's obligations hereunder are conditioned upon the grant of such order. Furthermore, if such order is not obtained within sixty (60) days from the date that it is filed, A&G shall have the right to terminate this

Docusign Envelope ID: B79AF8D6-EE7B-4CF3-9045-07VE8AFD7CD7

Agreement at any time thereafter. If an acceptable order is not obtained authorizing A&G's services and fees as set forth herein, the Company agrees to amend the application in conjunction with, and the approval of, A&G and request a hearing to review the application. If the Company is unable to obtain an acceptable order authorizing the hiring and retention of A&G under the terms of this Agreement and the Agreement is terminated, A&G reserves the right to seek a substantial contribution claim for any rights or obligations incurred or accrued prior to such termination.

18. <u>Notices.</u> Unless otherwise expressly provided herein or waived in writing by the Party to whom notice is given, any notice or other communication required or permitted hereunder will be effective if given in writing (i) when delivered by hand; (ii) three days after sent by certified mail, return receipt requested; (iii) when delivered by electronic email communication to the email address set forth below and verified by confirmed receipt; or (iv) one day after delivery to a commercial overnight courier, and addressed to the Parties as follows:

To the Company:

Abuelo's International, LP
4413 82nd Street, Suite 250
Lubbock, Texas 79424-3366
Attn: Robert Lin
Email: robertl@food-concepts.com

With a copy to G. Randall Andrews at
Email: grandall@gracorealestate.com

To A&G:

A&G Realty Partners, LLC
445 Broadhollow Road, Suite 420
Melville, New York 11747
Attn: Andy Graiser
Email: andy@agrep.com

19. <u>Representations, Warranties and Covenants</u>. Subject to paragraph 17: (1) each Party has all requisite power and authority to enter into this Agreement; (2) this Agreement has been validly authorized by all necessary corporate action and constitutes a legal, valid and binding agreement of the Company and A&G; and (3) each Party represents that this Agreement does not and will not violate any applicable law or conflict with any agreement, instrument, judgment, order or decree to which it is a party or by which it is bound. Furthermore, each Party represents and agrees that it will comply with all applicable laws, rules, regulations, orders or decrees during the term of this Agreement in performing its obligations hereunder. Each Party agrees to deal with the other fairly and in good faith so as to allow each Party to perform their duties and earn the benefit of this Agreement. A&G agrees to utilize commercially reasonable efforts and diligence to achieve the purpose of this Agreement.

7

Docusign Envelope ID: B79AF8D6-EE7B-4CF3-9045-07TE9APD7CD7

20. <u>Survival of Fee</u>. In the event that following the termination or earlier expiration of this Agreement, the Company or its successors or assigns, enters into a transaction with a Landlord or other third party and A&G has substantially performed the Services, which is the proximate cause of the transaction being entered into with such Landlord or other third party and the result of which would have entitled A&G to a Fee pursuant to this Agreement, then in that event, A&G shall be entitled to and paid its Fee pursuant to the terms of this Agreement notwithstanding the fact that the Agreement has terminated (the "<u>Survival of Fee</u>"). Such Survival of Fee will terminate 120 days after the termination or earlier expiration of this Agreement.

21. <u>Intellectual Property</u>. A&G may use data, software, designs, utilities, tools, models, systems and other methodologies that it owns or licenses in performing the Services hereunder. Notwithstanding the delivery of any reports by A&G to the Company, A&G shall retain all intellectual property rights in such materials (including any improvements or knowledge developed while performing the Services) and in any working papers compiled in connection with the Services.

22. <u>Indemnification</u>. The Company agrees to indemnify A&G and its affiliates, officers, directors, employees, agents and independent contractors, and hold each of them harmless from and against all third party claims, demands, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses, asserted against, resulting from (directly or indirectly), or related to the Services or actions or omissions of A&G or the Company taken pursuant to this Agreement or in any written agreement entered into in connection herewith except to the extent that such claims or liabilities arise as a direct result of A&G's fraud, gross negligence or willful misconduct.

23. <u>Limitation on Liability</u>.   Neither Party shall be responsible for any indirect, incidental, consequential, exemplary, punitive or other special damages (including, but not limited to, loss of profits and damage to reputation or business) arising under or by reason of this Agreement, the Services or any act or omission hereunder. Neither Party shall be liable if it is unable to perform its responsibilities hereunder as a result of events beyond its control.  Furthermore, in no event shall A&G's liability for a default or breach of this Agreement exceed the amount of fees paid to A&G hereunder.

24. <u>Binding Effect. No Third-Party Beneficiaries</u>. This Agreement binds and inures to the benefit of the Parties hereto and their respective successors and permitted assigns and except as expressly provided herein, is not intended to confer any rights or remedies upon any person not a party to this Agreement.

25. <u>Waivers and Amendments</u>. Waiver by either Party of any default by the other Party shall not be deemed a waiver of any other default. This Agreement (including the Schedule (s) attached hereto) may not be waived, amended, or modified by either Party unless in writing and signed by the Parties hereto.

8

Docusign Envelope ID: B79AF8D6-EE7B-4CF3-9045-07B3AFD7C0CC

26. <u>Severability</u>.  If any provision, or any portion of any provision, contained in this Agreement is held to be invalid or unenforceable by a court of competent jurisdiction, then it is the intent of the Parties to modify or limit such provision or portion thereof so as to be valid and enforceable to the extent permitted under applicable law. In the event that such provision or portion thereof cannot be modified, then such provision or portion thereof shall be deemed omitted, and this Agreement shall be construed as if such invalid or unenforceable provision had never been contained herein.

27. <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof. All prior agreements, representations, statements, negotiations, understandings, and undertakings are superseded by this Agreement.

28. <u>Counterpart Execution/Facsimile and Electronic Signatures</u>.  This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original and all of which together shall constitute one document.  Facsimile and electronic signatures on this Agreement and any document contemplated hereby shall be deemed to be original signatures.

29. <u>Governing Law</u>.  The Bankruptcy Court shall have exclusive jurisdiction over any matters arising out of or relating to this Agreement.

30. <u>Waiver of Jury Trial</u>.  Each of the Parties unconditionally waives, to the fullest extent allowed by law, the right to a jury trial in connection with any claim arising out of or related to this Agreement.

31. <u>Headings/Tenses</u>.  The section headings and use of defined terms in the singular or plural or past or present tenses in this Agreement are solely for the convenience of the Parties.  To the extent that there may be any inconsistency between the headings and/or the tenses and the intended meaning, the intent of the Parties or the provision, the terms of such provision shall govern.

32. <u>No Presumptions</u>.  This Agreement shall be deemed drafted by both Parties and there shall be no presumption for or against either Party in the interpretation of this Agreement.

[SIGNATURES ON THE FOLLOWING PAGE]

Docusign Envelope ID: B79AF8D6-EE7B-4CF3-9045-07 1E3AF D7CD7

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their respective duly authorized representatives effective as of the Agreement Date.

FOOD CONCEPTS INTERNATIONAL, LP

By: _____

Name: Robert Lin

Title: Vice President

A&G REALTY PARTNERS, LLC

DocuSigned by:

By: Andrew Graiser

Name: Andrew Graiser

Title: Co-President

## Schedules

Schedule A     Leases
Schedule B     Compensation

## SCHEDULE A
## Leases

| | | | | |
|---|---|---|---|---|
| Abuelo's Amarillo | 3501 45th Avenue | Amarillo | TX | 79109 |
| Abuelo's Lubbock | 4401 82nd Street | Lubbock | TX | 79424 |
| Abuelo's Midland | 2908 W. Loop 250 | Midland | TX | 79705 |
| Abuelo's Abilene | 4782 South 14th Street | Abilene | TX | 79605 |
| Abuelo's Hurst | 824 Airport Freeway | Hurst | TX | 76054 |
| Abuelo's Arlington | 1041 West I-20 | Arlington | TX | 76017 |
| Abuelo's Peoria | 16092 N. Arrowhead Fountains Center Dr. | Peoria | AZ | 85382 |
| Abuelo's Rogers | 4005 West Walnut | Rogers | AR | 72756 |
| Abuelo's Lakeland | 3700 Lakeside Village Blvd. | Lakeland | FL | 33803 |
| Abuelo's Hulen | Hulen Mall | Fort Worth | TX | 76132 |
| Abuelo's Tyler | Village at Cumberland Park | Tyler | TX | 75703 |
| Abuelo's W Wichita | 452 S Ridge Road | Wichita | KS | 67209 |

## SCHEDULE B
## Compensation

## A.     Definitions

"Document" – shall be defined as an amendment or agreement generated by the Company, a Landlord or third party, which modifies a Lease or the Company's obligations under a Lease in any manner. A Document also shall include any letter agreement relating to a Lease or any other written communication (including, but not limited to, an email communication) from a Landlord or third party consenting to the applicable Service. For the avoidance of doubt, a Document can be generated by the Landlord, a third party or the Company.

"Early Termination Right" - shall be defined as the tenant's exclusive right to terminate the Lease prior to the expiration date thereof.

"Gross Occupancy Cost" – shall be defined as the sum of the remaining base rent, any annual increases, percentage rent, CAM, taxes payable directly to the Landlord, insurance, rental tax, marketing and merchants' association charges, utility charges, HVAC usage charges, trash removal charges, sprinkler usage charges, unpaid rents, or any other sums due to the Landlord under a particular Lease as of the Agreement Date. For clarification purposes, Gross Occupancy Cost is calculated using the first date that the Service commences (i.e., the date that the rent reduction commences) through the earlier of the end of the Lease term in effect as of the Agreement Date (or longer if a Lease extension is also requested and negotiated by A&G on behalf of the Company) or when the Service is no longer in effect. CAM, taxes, insurance, marketing and merchants' association charges and all other applicable charges will be calculated using the last available full year charge for each item (which may be a calendar year or a lease year, depending upon which is the most recent full year charge available). In the event that rent increases periodically based upon

11

the change in the Consumer Price Index (CPI), the assumed annual CPI increase shall be four percent (4%).

"Lease Modification" – shall be defined as any alteration, amendment or modification to the terms and conditions of a Lease agreement as in effect as of the Agreement Date.

"Monetary Lease Modification" – shall be defined as any modification to or inclusion of additional provisions relating to the monetary terms of a Lease, including, but not limited to, reduction in Lease Term, reduction in Lease space, reduction of/abatement of/waiver of/free rent or other Lease charges (including any previously deferred rent payment due or other Lease charges), reduction or elimination of any outstanding monetary amounts due under a Lease (whether or not incurred as of the date of this Agreement), reduction in square footage of premises covered by a Lease, the granting of tenant allowance or capital improvement dollars from the Landlord, the waiver of Company's capital expenditure obligations, extensions of existing rent reductions past their original end date, reduction in CAM charges, taxes, elimination of percentage rent, conversion to percentage rent, reductions in or returns of security deposits and FF&E if otherwise non-refundable (either pursuant to the terms of the Lease or as determined by the Landlord), or any other amendment to a Lease that results in Occupancy Cost Savings to the Company.

"New Gross Occupancy Cost" – shall be defined as the reduced Gross Occupancy Cost which results from a Monetary Lease Modification or any other amendment to the Lease.

"Non-Monetary Lease Modification" – shall be defined as any modification to the non-monetary terms of a Lease agreement, including, but not limited to, change of use, co-tenancy clause, sublease rights, the negotiation of a lease extension, the granting of an additional option term or terms, an amendment to the current option term or terms, relocation of Lease spaces that do not result in a reduction in Gross Occupancy Cost and any other amendments to the Lease that is or would be beneficial to the Company that do not fall within the above definition of Monetary Lease Modifications. Non-Monetary Lease Modifications shall not include an Early Termination Right.

"Occupancy Cost Savings" – shall be defined as the difference between the original Gross Occupancy Cost and the New Gross Occupancy Cost for the period from the date in which the Monetary Lease Modification or other Service becomes effective through the end of the Lease Term or the Revised Lease Term pursuant to the terms of the Services, less any payment(s) or costs payable by the Company to effectuate the Monetary Lease Modification or other Service, excluding legal fees. "Lease Term" shall be defined as the commencement date and expiration date of the Lease as set forth in the Lease as of the Agreement Date. "Revised Lease Term" shall be defined as the new Lease expiration date pursuant to any Lease extensions obtained by A&G on behalf of the Company. For example, if a Service includes a Monetary Lease Modification and an extension of the Lease, the Occupancy Cost Savings shall be applicable through the duration of the Lease extension (i.e., the Revised Lease Term).

Occupancy Cost Savings include, but are not limited to, reduction in term, reduction in

12

Docusign Envelope ID: B79AF8D6-EE7B-4CF3-9045-07E6AFD20C

Lease space, deferral of/reduction of/abatement of/waiver of/free rent or other Lease charges (including any previously deferred rent or other Lease charges), reduction or elimination of any outstanding monetary amounts due under a Lease (whether or not incurred as of the date of this Agreement), reduction of unamortized tenant allowance, reduction or elimination of the obligation to repay tenant allowance to the Landlord, reduction or elimination of the requirement to improve the Lease space that have a direct monetary benefit to the Company, the granting of tenant allowance or capital improvement dollars from Landlord or Landlord improvements to the property, the waiver of Company's capital expenditure obligations, reduction in square footage of premises covered by a Lease, extensions of existing rent reductions past their original end date, any lease extensions that result in a rent decrease, reduction in CAM charges, taxes, elimination of percentage rent (calculated on the amount of percentage rent paid in the prior 12 months ended September 30, 2025), conversion to percentage rent, or any or any other modification to/of the Company's obligations under a Lease that results in direct monetary savings to the Company.

For Occupancy Cost Savings resulting from the extension of a rent reduction past the Lease Term in effect as of the Agreement Date, the savings shall be based upon the original rent and option rent set forth in the Lease, allocated proportionately to the time period during the Lease Term and the extended term, as the case may be. For example purposes only, if A&G obtains a 4-year rent reduction and only 2 years remain on the Lease Term and the Lease Term is extended by 2 years, A&G's fee will be based upon the blended Occupancy Costs Savings resulting from the reduced rent as compared to the rent in effect during the Term for a period of 2 years, and the Occupancy Costs Savings resulting from the reduced rent as compared to the option rent set forth in the Lease, as if the Company exercised such option. For Occupancy Cost Savings resulting from lease extensions where there is no rent increase, the savings shall be based upon the option price for the period of the duration of the extension or if there is no option price, the rent price for the immediately preceding period increased by an assumed annual CPI increase of four percent (4%). Notwithstanding the foregoing, Occupancy Cost Savings will not include any option periods unless there is an immediate extension of Lease Term.

In the event base or gross rent (i.e., contract rent) is converted to percentage rent or the percentage rent percent is reduced or breakpoint increased based on sales, Occupancy Cost Savings will be calculated based on the difference between the contract rent and the percentage rent using sales figures for the twelve (12) months ended September 30, 2025.

B.   **Fees**

A&G shall be compensated for the Services as follows (the "Fees"):

1.   Monetary Lease Modifications.   For each Monetary Lease Modification obtained by A&G on behalf of the Company, A&G shall earn and be paid a fee, per Lease, in the amount of six percent (6%) of the Occupancy Cost Savings.

13

2. Non-Monetary Lease Modifications. For each Non-Monetary Lease Modification obtained by A&G on behalf of the Company, A&G shall earn and be paid a fee in the amount of $1,500 per Lease modified.

3. Early Termination Rights. For each Early Termination Right obtained by A&G on behalf of the Company, A&G shall earn and be paid a fee of one-third (⅓) of one (1) month's Gross Occupancy Cost, per Lease.

C.   **Payment of Fees.**

A&G shall provide the Company with a deal sheet with the terms of the proposed Lease Modification or Early Termination Right (the "Deal Sheet"). A&G will include with the Deal Sheet an estimate of the Fees that would be owed. For clarification purposes, a Deal Sheet can include, but not be limited to, an email or other written communication from A&G setting forth the terms of the proposed Service.

If: (i) the Company approves the terms of the Deal Sheet and the Landlord or other third party (if applicable) submits, approves or executes a Document that reflects the Company accepted Deal Sheet; (ii) the Company approves a Document that embodies a Lease Modification or Early Termination Right to be transmitted to a Landlord and that Landlord agrees to all the material terms of such Document with no contingencies pursuant to Landlord's signature to the Document or confirming email; or (iii) the Company begins to receive the benefit of the terms set forth in the Deal Sheet, A&G shall be entitled to, and be paid, its fees in accordance with the above fee structure. For the avoidance of doubt, A&G shall be entitled to its fees notwithstanding the fact that the Service transaction is not fully executed by the Company. A Service may incur more than one fee.

The Company shall pay all fees to A&G within five (5) business days of the receipt of an invoice therefor, except as may be approved or directed otherwise by the Bankruptcy Court.

14

# Exhibit B

# Declaration of Andrew Graiser

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| IN RE: | § | **Chapter 11** |
| | § | |
| **ABUELO'S INTERNATIONAL, L.P.,** *et al.,*[1] | § | **Case No. 25-43339-elm11** |
| | § | |
| **Debtors.** | § | **Jointly Administered** |

**DECLARATION OF ANDREW GRAISER IN SUPPORT OF
DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE
RETENTION AND EMPLOYMENT OF A&G REALTY PARTNERS, LLC
AS A REAL ESTATE CONSULTANT AND ADVISOR TO THE DEBTORS**

I, Andrew Graiser, make this declaration (this "Declaration") pursuant to 28 U.S.C. §1746, and state:

1.      I am a Co-President of A&G Realty Partners, LLC ("A&G"), a real estate consulting and advisory firm, with its principal place of business located at 445 Broadhollow Road, Suite 410, Melville, New York 11797.

2.      I am authorized to execute and submit this Declaration on behalf of A&G in support of the *Debtors' Application for an Order Authorizing the Retention and Employment of A&G Realty Partners, LLC as a Real Estate Consultant and Advisor to the Debtors* (the "Application")[2] by which the Debtors seek retention of A&G on the terms and conditions set forth in the Application and the Services Agreement between the Debtors and A&G attached to the Application as **Exhibit A**.

3.      I submit this Declaration in accordance with sections 327(a), 328(a), and 330 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Bankruptcy

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, include: Abuelo's International, LP (1108), Food Concepts International, L.P. (5079) and Food Concepts International Holdings, Inc. (2576).

[2] Capitalized terms used in this Declaration and not immediately defined have the meanings given to such terms in the Application.

Docusign Envelope ID: 5DC209F4-A116-47C5-A9EB-69ED64466ADA

Rules 2014 and 2016, and rules 2014-1 and 2016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules").

4. The facts set forth in this Declaration are based upon my personal knowledge, information and belief, or client matter records kept in the ordinary course of business that were reviewed by me or other employees of A&G under my supervision and direction. If called and sworn as a witness, I could and would testify competently to the facts set forth herein.

### A&G's Qualifications

5. A&G is well suited to provide the real estate services that the Debtors require and have requested that A&G provide in these chapter 11 cases. A&G is a well-known, reputable, and diversified real estate consulting and advisory firm with offices located in New York and Illinois. A&G's professionals have extensive experience in providing services regarding the review, analysis, optimization, restructuring, disposition, and negotiation of real property and lease agreements. A&G also has significant experience facilitating the renegotiation and sale of retail leases for many large retail chains.

6. A&G's principals have over fifty years combined of commercial real estate experience and A&G has significant experience in the disposition and renegotiation of leases and properties in bankruptcy.

7. I believe A&G is well qualified to perform all services contemplated by the Services Agreement, and to represent the Debtors' interests in these chapter 11 cases in a cost-effective, efficient, and timely manner.

8. I also believe that the Services are necessary to enable the Debtors to maximize the value of their Leases and enable them to reorganize their financial affairs; accordingly, the Services will be complementary rather than duplicative of the services to be performed by the Debtors' other

---

In re Abuelo's International, L.P., *et al.*, Debtors in Possession
Order Authorizing the Retention and Employment of A&G Realty Partners, LLC as a Real Estate Consultant and
Advisor to the Debtors - Page 2

Docusign Envelope ID: 5DG209F4-A146-47C5-A9EB-69FD64466ADA

professionals retained in these chapter 11 cases.  A&G will use reasonable efforts to coordinate with

the Debtors and their other professionals retained in these chapter 11 cases to avoid any unnecessary

duplication of services.

## Services to be Performed

9. As set forth more fully in the Services Agreement, A&G will provide the following

services for the Debtors (the "Services"):[3]

a. assist the Debtors with real estate strategy;

b. consult with the Debtors to discuss the Debtors' goals, objectives and
financial parameters in relation to the Debtors' Leases;

c. provide ongoing advice and guidance related to individual financial and
non-financial lease restructuring opportunities;

d. negotiate with the landlords of the Leases (collectively, the "Landlords"
and, individually, a "Landlord") on behalf of the Debtors to obtain Lease
Modifications;

e. if requested by the Debtors, negotiate with Landlords on behalf of the
Debtors to obtain Early Termination Rights;

f. if requested by the Debtors, market the Leases designated by the Debtors
for Lease Sales in a manner and form as determined between A&G and
assist the Debtors with Lease Sales; and

g. provide regular update reports to the Debtors regarding the status of the
Services.

## Professional Compensation

10. Subject to the Bankruptcy Court's approval, the Debtors will compensate A&G in

accordance with the terms and conditions set forth in the Services Agreement, including Schedule

B thereto.  It is contemplated that A&G shall be compensated as follows:

---

[3] Any description of the terms of the Services Agreement contained herein is a summary provided for
convenience purposes only.  In the event of any inconsistency between the summary of the Services as set forth
herein and the Services Agreement, the Services Agreement shall control.

In re Abuelo's International, L.P., *et al.*, Debtors in Possession
Order Authorizing the Retention and Employment of A&G Realty Partners, LLC as a Real Estate Consultant and
Advisor to the Debtors - Page 3

(a) <u>Monetary Lease Modifications</u>.  For each Monetary Lease Modification[4] obtained by A&G on behalf of the Debtors, A&G shall earn and be paid a fee (a "<u>Monetary Lease Modification Fee</u>"), for each Lease so modified, in the amount of six percent (6%) of the Occupancy Cost Savings.

(b) <u>Non-Monetary Lease Modifications</u>.   For each Non-Monetary Lease Modification obtained by A&G on behalf of the Debtors, A&G shall earn and be paid a fee of $1,500 per Lease modified.

(c) <u>Early Termination Rights</u>.  For each Early Termination Right obtained by A&G on behalf of the Debtors, A&G shall earn and be paid a fee of one-third (1/3) of one (1) month's Gross Occupancy Cost[5] per Lease.

11.     In addition to any fees payable by the Debtors to A&G, A&G also intends to seek reimbursement for its reasonable, documented out-of-pocket expenses incurred in connection with its retention and performance of the Services. This include, but is not limited to, responding to any litigation or other type of inquiry, deposition or otherwise relating to the Services or the Services Agreement. Any single expense in excess of $500 must be pre-approved by the Debtors. Any

---

[4]       A "<u>Monetary Lease Modification</u>" is defined as any modification to or inclusion of additional provisions relating to the monetary terms of a Lease agreement, including, but not limited to, reduction in rent/other Lease charges, reduction in Lease Term, reduction in Lease space, termination of/waiver of/deferral of/free rent or other Lease charges (including any previously deferred rent or other Lease charges), reduction or elimination of any outstanding amounts due under a Lease, reduction in square footage of premises covered by a Lease, reduction in the termination/kick out notice provision, the granting of tenant allowance or capital improvement dollars from the Landlord, the waiver of Debtors' capital expenditure obligations to the Landlord of the applicable Lease, extensions of existing rent reductions past their original end date, reduction in CAM charges, taxes, elimination of percentage rent, conversion to percentage rent, reductions in or returns of security deposits and FF&E if otherwise non-refundable (either pursuant to the terms of the Lease or as determined by the Landlord), or any other amendment to a Lease that results in Occupancy Cost Savings to the Debtors.

[5]       A "<u>Gross Occupancy Cost</u>" is defined as the sum of the remaining base rent, any annual increases, percentage rent, CAM, taxes payable directly to the Landlord, insurance, rental tax, marketing and merchants' association charges, utility charges, HVAC usage charges, trash removal charges, sprinkler usage charges, unpaid rents, or any other sums due to the Landlord under a particular Lease as of the Agreement Date.  For clarification purposes, Gross Occupancy Cost is calculated using the first date that the Service commences (i.e., the date that the rent reduction commences) through the earlier of the end of the Lease term in effect as of the Agreement Date (or longer if a Lease extension is also requested and negotiated by A&G on behalf of the Debtors) or when the Service is no longer in effect. CAM, taxes, insurance, marketing and merchants' association charges and all other applicable charges will be calculated using the last available full year charge for each item (which may be a calendar year or a lease year, depending upon which is the most recent full year charge available).  In the event that a Lease provides that rent thereunder increases periodically based upon the change in the Consumer Price Index (CPI), the assumed annual CPI increase shall be four percent (4%) except as otherwise may be provided in such Lease.

In re Abuelo's International, L.P., *et al.*, Debtors in Possession
Order Authorizing the Retention and Employment of A&G Realty Partners, LLC as a Real Estate Consultant and
Advisor to the Debtors - Page 4

Docusign Envelope ID: 5DC209F4-A146-47C5-A9EB-69FD64466ADA

reimbursable expense shall be paid to A&G within fifteen (15) business days upon receipt of invoice except as may be approved or directed otherwise by the Bankruptcy Court.

12.      To the extent A&G uses the services of independent contractors (the "Contractors") in these chapter 11 cases pursuant to the Services Agreement, A&G shall be responsible for the performance of and payment of any fees to such Contractors independently of the fee structure between the Debtors and A&G.  A&G will not pass through the cost of such Contractors to the Debtors and will not seek reimbursement from the Debtors.  A&G will ensure that the Contractors are subject to conflict checks with respect to the parties related to their involvement in these chapter 11 cases.

13.      A&G may provide additional services requested by the Debtors that are not otherwise specifically provided for in the Services Agreement, as mutually agreed upon by the Parties in writing, without the need for the Court's approval (the "Additional Services").

14.      The compensation structure described above and set forth in the Services Agreement is comparable to compensation generally charged by real estate consultants and advisors of similar stature to A&G for comparable engagements, both in and out of bankruptcy. The compensation structure is also consistent with A&G's normal and customary billing practices for cases of comparable size and complexity that require the level and scope of services to be provided in this case.

15.      A&G has not shared or agreed to share any of its compensation from the Debtors with any other persons or firm in accordance with section 504 of the Bankruptcy Code.

**Payment of Compensation and Expenses**

16.      A&G understands that fees and expenses in these chapter 11 cases shall be subject to final approval of the Bankruptcy Court upon proper application by A&G in accordance with

In re Abuelo's International, L.P., *et al.*, Debtors in Possession
Order Authorizing the Retention and Employment of A&G Realty Partners, LLC as a Real Estate Consultant and
Advisor to the Debtors - Page 5

procedures for the allowance of final compensation applicable to professionals in these chapter 11 cases and in accordance with the requirements of the Bankruptcy Code. However, because A&G's compensation is results-oriented and directly based on the benefits received by the Debtors' estates as a result of Lease Modifications and Early Termination Rights, it is not A&G's regular practice to keep detailed time records similar to those customarily kept by attorneys and other professionals who are compensated on an hourly basis. It is standard practice in A&G's industry for professionals providing services relating to lease restructurings and real property/lease dispositions to be compensated on a flat fee or percentage basis, rather than on an incremental hourly basis, for such services.

17. Requiring A&G to record and submit detailed time entries in light of the transactional nature of the services to be rendered by A&G herein and the percentage-based/flat fee structure proposed under the Services Agreement would be unduly burdensome to A&G.

18. To the extent that A&G provides any Additional Services compensated on an hourly basis, A&G will file interim and final fee applications in accordance with the Bankruptcy Code, the Bankruptcy Rules, the local rules of this Court, and any applicable orders of the Bankruptcy Court, *provided however*, A&G requests that A&G and its professionals be permitted to submit time records setting forth the hours spent on each activity and a description of the services provided without breaking out the time records into tenth-of-an-hour increments.

### **Disinterestedness of Professionals**

19. The Debtors have numerous creditors and other parties in interest with which they maintain business relationships. In connection with the Debtors' proposed retention of A&G in these chapter 11 cases, A&G has reviewed the list of parties in interest provided by the Debtors. A&G undertook a comprehensive review of these parties to determine whether it had any conflicts

In re Abuelo's International, L.P., *et al.*, Debtors in Possession
Order Authorizing the Retention and Employment of A&G Realty Partners, LLC as a Real Estate Consultant and
Advisor to the Debtors - Page 6

Docusign Envelope ID: 5DC209F4-A116-47C5-A9EB-69ED64466ADA

or other relationships that might cause it to not be disinterested or to hold or represent an interest adverse to the Debtors. There are no connections to disclose.

20. Thus, to the best of my knowledge and belief, A&G: (a) is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, (b) has no connection with the Debtors, their creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, or the Office of the United States Trustee for the Northern District of Texas (the "U.S. Trustee") or any person employed in the Office of the U.S. Trustee; and (c) does not hold or represent an interest adverse to the Debtors or the Debtors' estates.

21. To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, A&G has not been retained to assist any entity or person other than the Debtors on matters relating to, or in direct connection with, these chapter 11 cases. A&G will, however, continue to provide professional services to entities or persons that may be creditors of the Debtors or parties in interest in these chapter 11 cases, *provided that* such services do not relate to, or have any direct connection with, these chapter 11 cases or the Debtors.

22. Neither I nor any other professional of A&G who will work on this engagement, to the best of my knowledge after reasonable inquiry, is related or connected to the United States Bankruptcy Judge assigned to these chapter 11 cases, the U.S. Trustee, or any persons employed by the U.S. Trustee.

23. As part of its diverse practice, A&G appears in numerous cases, proceedings, and transactions that involve many different professionals, including attorneys, accountants, and financial consultants, who may represent claimants and parties in interest in these chapter 11 cases. Also, A&G has performed in the past, and may perform in the future, real estate consulting and

In re Abuelo's International, L.P., *et al.*, Debtors in Possession
Order Authorizing the Retention and Employment of A&G Realty Partners, LLC as a Real Estate Consultant and Advisor to the Debtors - Page 7

advisory services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of whom may be involved in this proceeding. In addition, A&G may have in the past, may currently, and may in the future work with or against other professionals involved in these cases in matters unrelated to the Debtors and these chapter 11 cases.

24.    I do not believe that A&G is a "creditor" of the Debtors within the meaning of section 101(10) of the Bankruptcy Code. Further, neither I nor any other member of the A&G team serving the Debtors, to the best of my knowledge, is a holder of any outstanding debt instrument of the Debtors.

25.    To the best of my knowledge, A&G is "disinterested" as that term is defined in section 101(14) of the Bankruptcy Code as modified by section 1107(b) of the Bankruptcy Code, because:

(a) neither A&G nor any professional at A&G working on this engagement is or was a creditor, equity security holder, or insider of the Debtors;

(b) neither A&G nor any professional at A&G working on this engagement is or was, within two (2) years before the commencement of these chapter 11 cases, a director, officer, or employee of the Debtors; and

(c) A&G has no interest materially adverse to the interests of the estates or of any class of creditors, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors.

26.    Given the large number of parties in interest in these cases, despite the efforts described above to identify and disclose A&G's relationships with parties in interest in these cases, I am unable to state with absolute certainty that every client relationship or other connection has been disclosed in this Declaration. If A&G discovers additional information requiring disclosure, A&G will file supplemental disclosures with the Bankruptcy Court as promptly as possible. A&G further understands that it has a duty to continue to check for conflicts and connections, and in the event that any new facts or relationships subsequently are discovered during the pendency of these chapter 11 cases, A&G will supplement this Declaration and file the same with the Bankruptcy Court.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: November _7_, 2025

DocuSigned by:

*Andrew Graiser*

1EA4BAF90E624FF...

ANDREW GRAISER
Co-President
A&G Realty Partners, LLC

In re Abuelo's International, L.P., *et al.*, Debtors in Possession
Order Authorizing the Retention and Employment of A&G Realty Partners, LLC as a Real Estate Consultant and Advisor to the Debtors - Page 9

# Exhibit C

# Proposed form of Order Approving Application

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Chapter 11** |
| | § | |
| **ABUELO'S INTERNATIONAL, L.P., *et al.,*[1]** | § | **Case No. 25-43339-elm11** |
| | § | |
| **Debtors.** | § | **Jointly Administered** |

**ORDER AUTHORIZING THE RETENTION
AND EMPLOYMENT OF A&G REALTY PARTNERS, LLC
AS A REAL ESTATE CONSULTANT AND ADVISOR TO THE DEBTORS**

Upon the application (the "<u>Application</u>")[2] of the Debtors for entry of an order (this "<u>Order</u>")

under sections 327(a), 328, and 330 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and

Local Rules 2014-1 and 2016-1 authorizing the retention and employment of A&G Realty

Partners, LLC ("<u>A&G</u>"), as real estate consultant and advisor to the Debtors as of the Petition Date,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, include: Abuelo's International, LP (1108), Food Concepts International, L.P. (5079) and Food Concepts International Holdings, Inc. (2576).

[2] Capitalized terms not otherwise defined herein have the definitions ascribed to them in the Application.

in accordance with the terms and conditions set forth in that certain real estate services agreement dated as of October 22, 2025 (as amended), a copy of which is attached hereto as **Exhibit 1** (the "Service Agreement"); and upon the Court having reviewed the Application, the First Day Declaration, and the Declaration of Andrew Graiser, Co-President of A&G (the "Graiser Declaration"); and the Court being satisfied with the representations made in the Application, the First Day Declaration and the Graiser Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate and no other notice need be provided; and this Court having reviewed the Application; and this Court having determined that the legal and factual bases set forth in support of the Application establish just cause for the relief granted herein, including that A&G does not hold or represent any interest adverse to the Debtors or their estates and is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

The Debtors are authorized, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rules 2014 and 2016, to employ and retain A&G as their real estate advisors, effective as of October 22, 2025, on the terms and conditions set forth in the Services Agreement as modified by this Order.

A&G's compensation, as set forth in the Services Agreement and the expense reimbursement, as well as the indemnification provisions, all as modified herein, are approved pursuant to section 328(a) of the Bankruptcy Code, and A&G is excused from any requirement to keep detailed time records for the afore-mentioned Services.

Notwithstanding any provision to the contrary in the Application, the Services Agreement or this Order, the United States Trustee (the "U.S. Trustee") shall have the right to object to A&G's request(s) for compensation based on any ground, including the reasonableness standard provided in section 330 of the Bankruptcy Code. This Order and the record relating to the Court's consideration of the Application shall not prejudice or otherwise affect the rights of the U.S. Trustee to challenge the reasonableness of A&G's fees and expenses. Accordingly, nothing in this Order or the record shall constitute a finding of fact or conclusion of law binding the U.S. Trustee, on appeal or otherwise, with respect to the reasonableness of A&G's fees and expenses.

In the event that A&G provides any Additional Services requested by the Debtors that are not otherwise specifically provided for in the Services Agreement, the Debtors will file such amendment(s) with the Court and serve such amendment(s) upon the United States Trustee, counsel for the Secured Creditors, counsel for the DIP Lenders, and the holders of the 20 largest unsecured claims against the Debtors. If any parties object within ten days of such new amendments being served, the Debtors shall promptly schedule a hearing before this Court. All Additional Services shall be subject to the provisions of this Order.

With respect to fees and expense reimbursements sought for Additional Services (as defined in the Services Agreement) rendered by A&G, A&G shall be compensated in accordance with and will file interim and final fee applications for allowance of its compensation and expenses incurred during the applicable retention period and shall be subject to sections 330 and 331 of the

In re Abuelo's International, L.P., *et al.*, Debtors in Possession
Order Authorizing the Retention and Employment of A&G Realty Partners, LLC as a Real Estate Consultant and
Advisor to the Debtors - Page 3

Bankruptcy Code, the Bankruptcy Rules, the Local Rules and applicable law. For these services, A&G is hereby authorized to keep reasonably detailed time records in half-hour increments and will submit, with any interim or final fee application, together with the time records, a narrative summary, by project category, of services rendered and will identify each professional rendering services, the category of services rendered and the amount of compensation requested. All fees and expenses paid to A&G are subject to disgorgement until final allowance by the Court.

A&G shall disclose any and all facts that may have a bearing on whether A&G, its affiliates, and/or any individuals working on the engagement hold or represent any interest adverse to the Debtors, their creditors, or other parties in interest in these cases. The obligation to disclose identified in this paragraph shall be a continuing obligation.

With respect to controversies or claims arising out of or in any way related to the Services in the Services Agreement notwithstanding any arbitration, dispute resolution, or exclusive jurisdiction provisions contained in the Services Agreement, any disputes arising under the Services Agreement shall be heard in this Court during the pendency of these chapter 11 cases.

Paragraph 23 of the Services Agreement relating to the Limitation on Liability shall be null and void during the pendency of these chapter 11 cases.

The indemnification and related provisions set forth in the Services Agreement are approved, subject during the pendency of the chapter 11 cases to the following:

a.   The indemnified parties shall not be entitled to indemnification, contribution, or reimbursement for services other than those described in the Services Agreement and the Application, unless such services and indemnification therefor are approved by the Court after notice and hearing;

b.   The Debtors shall have no obligation to indemnify any indemnified party, or provide contribution or reimbursement to any indemnified party, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from such indemnified party's gross negligence, fraud, breach of fiduciary duty (if any), bad faith or willful misconduct; or (ii) for a contractual

In re Abuelo's International, L.P., *et al.*, Debtors in Possession
Order Authorizing the Retention and Employment of A&G Realty Partners, LLC as a Real Estate Consultant and
Advisor to the Debtors - Page 4

dispute in which the Debtors allege the breach of such indemnified party's contractual obligations, unless the Court determines that indemnification, contribution or reimbursement would be permissible; or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) immediately above, but determined by the Court, after notice and a hearing to be a claim or expense for which the indemnified parties should not receive indemnity, contribution, or reimbursement under the terms of indemnified party's retention by the Debtors pursuant to the terms of the Services Agreement, as modified by this Order; and

c. If, before the earlier of: (i) the entry of an order confirming a chapter 11 plan in this case (that order having become a final order no longer subject to appeal); and (ii) the entry of an order closing these chapter 11 cases, any indemnified party believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Services Agreement (as modified by this Order) and the Application, including without limitation the advancement of defense costs, such indemnified party must file an application therefor in this Court, and the Debtors may not pay any such amounts to such indemnified party before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by indemnified parties for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify any Indemnified Party. All parties in interest shall retain the right to object to any demand by any Indemnified Party for indemnification, contribution, or reimbursement.

A&G shall provide ten business days' notice to the Debtors, the U.S. Trustee, and any official committee before any changes or increases in the compensation set forth in the Application or the Services Agreement are implemented. The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in section 330 of the Bankruptcy Code, and the Court may review any rate increase pursuant to section 330 of the Bankruptcy Code.

To the extent there is inconsistency between the terms of the Services Agreement, the Application, the Graiser Declaration and this Order, the terms of this Order shall govern.

In re Abuelo's International, L.P., *et al.*, Debtors in Possession
Order Authorizing the Retention and Employment of A&G Realty Partners, LLC as a Real Estate Consultant and Advisor to the Debtors - Page 5

Notice of the Application as provided therein is deemed good and sufficient notice of such

Application and the requirements of Bankruptcy Rule 6004(a) and the local rules of this Court are

satisfied by such notice.

This Order is immediately effective and enforceable upon its entry.

The Debtors and A&G are authorized to take all actions necessary to effectuate the relief

granted in this Order in accordance with the Application.

This Court retains exclusive jurisdiction with respect to all matters arising from or related

to the implementation, interpretation, and enforcement of this Order.

### END OF ORDER ###

In re Abuelo's International, L.P., *et al.*, Debtors in Possession
Order Authorizing the Retention and Employment of A&G Realty Partners, LLC as a Real Estate Consultant and
Advisor to the Debtors - Page 6

**Exhibit 1**
**Services Agreement**

In re Abuelo's International, L.P., *et al.*, Debtors in Possession
Order Authorizing the Retention and Employment of A&G Realty Partners, LLC as a Real Estate Consultant and
Advisor to the Debtors - Page 7