# EXHIBIT 2

ABUELO'S #11
16092 N. Arrowhead
Fountain Center Dr.
Peoria, Arizona 85382

Documents:

1. Ground Lease Agreement

2. Ground Lease Subordination, Attornment, and Nondisturbance Agreement

3. Ground Lease Agreement

4. Memorandum of Unsubordinated Ground Lease

5. Non-Disturbance Agreement

6. Declaration of Use Restriction

7. Statutory Discharge of Lien Bond Pursuant to Arizona Revised Statutes

8. Landlords Affidavit

9. Tenant Estoppel Certificate

10. Lawyers Title of Arizona, Inc.

11. Change of Ownership

12. Lawyers Title Insurance Corporation

13. Bank of America

14. Safety Precautions

# GROUND LEASE AGREEMENT

### Between

### ARROWHEAD FOUNTAINS CENTER, L.L.C.

### as Landlord

*earlier of*

*May 1, 2001 or 180 days after*

*approve of building permit*

### and

### FOOD CONCEPTS INTERNATIONAL, INC.

### as Tenant

# TABLE OF CONTENTS

SECTION          DESCRIPTION

                                                                            PAGE

1.        OPENING OF ESCROW ........................................
2.        EFFECTIVE DATE .......................................... 1
3.        PREMISES DEMISED ....................................... 1
4.        USE ..................................................... 1
5.        CONDITIONS PRECEDENT TO LEASE COMMENCEMENT ......... 1
          5.1   Leasehold Policy Commitment ....................... 2
          5.2   Environmental Report .............................. 2
          5.3   Soils Report ...................................... 2
          5.4   Site Plan & Design Review Approval ................ 2
          5.5   Good Faith Deposit ................................ 2
          5.6   Building Permit Application ........................ 2
          5.7   Liquor License Application ......................... 2
          5.8   Landlord's Site Work .............................. 3
          5.9   Tenant's Work ..................................... 3
          5.10  Survey and Land Conditions ........................ 3
          5.11  Vacant Possession ................................. 3
          5.12  Non-disturbance Agreement ......................... 4
          5.13  Close of Escrow ................................... 4
6.        COMMENCEMENT OF TERM AND RENTAL PAYMENTS ........... 4
7.        CONSTRUCTION OF IMPROVEMENTS ....................... 4
8.        RENT .................................................. 5
9.        BUSINESS OPERATION ................................... 6
10.       PROPERTY TAXES ....................................... 6
11.       UTILITY CHARGES ...................................... 6
12.       LIENS ................................................. 7
13.       INDEMNITY AND INSURANCE .............................. 7
14.       REPAIRS ............................................... 7
15.       ALTERATIONS ........................................... 8
16.       DAMAGE TO OR DESTRUCTION OF IMPROVEMENTS ........... 8
17.       COMPLIANCE WITH LAWS ................................. 9
18.       ASSIGNMENT AND SUBLETTING ............................ 9
19.       MORTGAGING OF LEASEHOLD ESTATE ...................... 9
20.       SUBORDINATION ........................................ 10
21.       DEFAULT .............................................. 11
22.       OPTION TO EXTEND ..................................... 12
23.       CONDEMNATION ......................................... 13
24.       QUIET ENJOYMENT ...................................... 13
25.       HOLDING OVER ......................................... 13
                                                                            14

26. END OF TERM .................................................... 14
27. BROKERAGE COMMISSIONS AND REPRESENTATION ......... 14
28. SERVICE OF NOTICE ............................................ 14
29. APPLICATION .................................................... 15
30. FORCE MAJEURE ................................................ 15
31. RESTRICTIVE COVENANT ....................................... 15
32. ATTORNEYS' FEES .............................................. 15
33. ACCESS TO PREMISES .......................................... 16
34. SIGNAGE ........................................................ 16
35. ENTIRE AGREEMENT ............................................ 16
36. RECORDING ..................................................... 16
37. COVENANTS AGAINST CLAIMS .................................. 16
38. ENVIRONMENTAL DISCLOSURE .................................. 16
39. MISCELLANEOUS ................................................ 17
40. OFFER ........................................................... 17

EXHIBITS:       DESCRIPTION

                                                                    PAGE
A        LEGAL DESCRIPTION OF PREMISES . . . . . . . . . . . . . . . . . . . 19

A-1      PREMISES PLAN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

A-2      ARROWHEAD ENTERTAINMENT CENTER SITE PLAN . . . . . 21

A-3      UTILITIES ENTRANCE LOCATION . . . . . . . . . . . . . . . . . . . . . . 22

B        MEMORANDUM OF LEASE . . . . . . . . . . . . . . . . . . . . . . . . . . 23

C        NON-DISTURBANCE AGREEMENT . . . . . . . . . . . . . . . . . . . . 25

D        LANDLORD'S AFFIDAVIT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

E        TENANT'S UTILITIES SPECIFICATIONS . . . . . . . . . . . . . . . . 30

F        SPECIFICATIONS FOR LAND SURVEYS . . . . . . . . . . . . . . . 31

G        LANDLORD'S SITE WORK . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

H        LANDLORD'S CONSENT AND WAIVER OF LIEN . . . . . . . . . 33

## NET GROUND LEASE

THIS GROUND LEASE AGREEMENT made and entered into by and between Arrowhead Fountains Center, L.L.C., an Arizona limited liability company, ("Landlord") whose address is 2929 East Camelback Road, Suite 230, Phoenix, Arizona 85016-4495 and Food Concepts International, Inc., a Texas corporation ("Tenant"), whose address is 7822 Orlando Avenue, Lubbock, Texas 79423.

WHEREAS, Landlord and Tenant entered into a Memorandum of Agreement dated March 23, 2000, which is incorporated into this Net Ground Lease ("Lease"). In the case of any conflict between the Memorandum of Agreement and this Lease, the Lease shall control.

**WITNESSETH:**

1.   OPENING OF ESCROW. Landlord and Tenant agree to open an escrow for this transaction with Lawyers Title of Arizona, Inc., Sandy Butler, Escrow Agent at 40 East Mitchel Drive, Phoenix, Arizona 85012 ("Lawyers Title") and Lawyers Title is hereby employed to handle the escrow. This Lease constitutes escrow instructions to Escrow Agent. Escrow shall be deemed open on the date ("Opening Date") when an original of this Lease, executed by Landlord and Tenant, is delivered to Escrow Agent. Escrow Agent shall advise Buyer and Seller in writing of the Opening Date.

2.   EFFECTIVE DATE. This Lease shall become effective on the date when signed by the last party signing hereunder (herein called the "Effective Date").   6/19

3.   PREMISES DEMISED. Landlord, does by these presents hereby demise and rent unto the Tenant, and Tenant by these presents does take and hire from the Landlord, subject to the terms, covenants and conditions herein, that certain parcel of real estate, the location and dimensions of which are more particularly described in Exhibit "A" attached hereto and made a part hereof and which are approximately set out and shown in the cross hatched area on Exhibit "A-1" attached hereto and made a part hereof and which parcel contains approximately Fifteen Thousand One Hundred Forty Three (15,143) square feet (hereinafter called "Premises"). The Premises is part of the 17.69 acre Arrowhead Entertainment Center. The Tenant shall be provided parking adjacent to Premises to satisfy governmental and ADA requirements. The Premises includes perpetual cross-parking, cross-access, cross-utility, and on-site storm water drainage and retention. Said parcel of real estate is situated in the City of Peoria, County of Maricopa, State of Arizona. A survey will be obtained as hereinafter set forth which will exactly describe the Premises and once prepared will be deemed to be a part of this Lease.

4.   USE. The Tenant intends to construct a building and improvements on the Premises as drawn on the plans and specifications prepared by Tenant's licensed architect and approved by the parties as hereinafter provided. Landlord represents that the Premises is zoned to permit Tenant's contemplated Use. Initially, Tenant shall have the right to use the Premises to operate a restaurant serving prepared food and all legal beverages (including alcoholic beverages) together with incidental carry-out or delivery

AEC Abuelo's Ground Lease3   05/17/2000

Page 1

thereof and any related or ancillary uses under the trade name Abuelo's Mexican Food Embassy or other trade name used in a majority of Tenant's restaurants (hereinafter called "USE"). Tenant shall not change the USE of the Premises, without the written consent of the Landlord, which shall not be unreasonable withheld.

5.   CONDITIONS PRECEDENT TO LEASE COMMENCEMENT. Tenant shall have the right, in its sole discretion, to terminate this Lease for any reason prior to July 28, 2000. Landlord and Tenant agree to cooperate in the pursuit of the satisfaction of the conditions precedent and shall exercise good faith and due diligence in attempting to satisfy all conditions precedent. The following conditions precedent must be satisfied by July 28, 2000.

5.1   Leasehold Policy Commitment. Within ten (10) days of Opening Date, Landlord shall deliver to Tenant a Preliminary Commitment for a Leasehold Policy of Insurance ("Title Report") from Lawyers Title of Arizona, Inc. ("Lawyers Title"). Such Title Report must reveal insurable and marketable title in Landlord and must be free or capable of being made free from all standard ALTA exceptions. In the event the Title Report or survey reveals existing exceptions, defects or conditions or exceptions other than for real estate taxes due but not yet payable that would render title uninsurable or will adversely interfere with the Tenant's contemplated Use, Tenant shall advise Landlord in writing and Landlord shall proceed diligently at its own expense to correct same within thirty (30) days from such notice. Any title exceptions that Tenant does not object to or which shall be waived or otherwise approved and which shall remain as exceptions to such insurance shall be deemed as permitted exceptions to such Title Report.

5.2   Environmental Report. Within ten (10) days of Opening Date, Landlord shall deliver to Tenant a Phase I Environmental Report on the Arrowhead Fountains Center Project and undated Reports that are in the Landlord's possession.

5.3   Soils Report. Within ten (10) days of Opening Date, Landlord shall deliver to Tenant a Preliminary Geotechnical Engineering Report for the Arrowhead Fountains Center that is in the Landlord's possession.

5.4   Site Plan & Design Review Approval. If Tenant has not delivered to Landlord written notice of Site Plan and Design Review Approval by the City of Peoria by July 28, 2000, then this Lease shall become null and void and of no force and effect.

5.5   Good Faith Deposit. Upon Site Plan and Design Review Approval or July 28, 2000, whichever is earlier, Tenant shall deposit Twenty-five Thousand Dollars ($25,000.00) of non refundable money (the "Good Faith Deposit") with Lawyers Title to be deposited in an interest-bearing account pursuant to escrow opened as per Article 1 of this Lease. If Tenant has not delivered the Good Faith Deposit to Lawyers Title by July 28, 2000, then this Lease shall become null and void and of no force and effect.

5.6   Building Permit Application. Within thirty (30) days of Site Plan and Design Review Approval by the City of Peoria, Tenant shall submit its Building Permit Application to the City of Peoria. Tenant shall diligently pursue and cooperate with the

AEC Abuelo's Ground Lease3   05/17/2000

City of Peoria in obtaining approvals for a Building Permit. Landlord shall use its best efforts to assist Tenant to obtain approvals from the City of Peoria.

5.7     Liquor License Application, Within ten (10) days of submitting Tenant's Building Permit Application, Tenant shall submit an application for Liquor License approval with the appropriate jurisdiction. Tenant shall diligently pursue and cooperate with the appropriate jurisdictions in obtaining approvals for a Liquor License. The Good Faith Deposit shall be fully refundable in the event a liquor license application is not approved due to the non-approval of the Premises. The Good Faith Deposit shall not be refundable in the event a liquor license application is not approved due to the Tenant's inability.

5.8     Landlord's Site Work. All necessary utilities must be made available and shall be within five (5) feet of the Premises, including electricity, water, sanitary and storm sewers, water retention and storage, and gas with capacities in accordance with Tenant's utility specifications as set forth in Exhibit "E" attached hereto and made a part hereof. The scope of work hereto attached as Exhibit "G" and made a part hereof sets forth a specific description of the Arrowhead Entertainment Center site development work which benefits the Premises (hereinafter called "Landlord's Site Work"). Landlord shall be responsible for all costs and expenses related to ADA compliance on the Common Area as described in the Declaration of Covenants, Conditions, and Restriction for the Arrowhead Entertainment Center ("Common Area"). Landlord shall construct and install Landlord's Site Work in coordination with Tenant's construction of its restaurant building on the Premises. Landlord's Site Work shall be completed within ninety (90) days of Peoria's issuance of Tenant's Building Permit. Should the Tenant's Certificate of Occupancy be delayed due to Landlord's Site Work, the Lease Commencement Date shall be extended until the City approves the Landlord's Site Work.

5.9     Tenant's Work. Tenant shall construct a building and/or patio upon the Premises, and provide any and all fixtures, furniture and equipment necessary and appropriate to operate a full service casual dining restaurant ("Tenant's Work"). Tenant further agrees that all buildings, including any roof overhangs and/or decorative signs and decor, together with the trash enclosures, sidewalks and patio area, if any, shall be within the boundaries of the Premises.

5.10    Survey and Land Conditions. Landlord shall provide Tenant with an ALTA survey at Landlord's expense, prepared by a licensed surveyor, within thirty (30) days of the Effective Date of this Lease. In addition, Tenant, at its own expense, shall have the right, any time after the Effective Date and before July 28, 2000 to enter upon the Premises and make tests, borings and other engineering studies to ascertain whether the Premises is suitable for Tenant's Use. Such survey, boring tests, and/or studies must reveal conditions consistent with Tenant's requirements as set forth in Exhibit "G" attached hereto and made a part hereof and with costs for further development including, impact fees satisfactory to Tenant. The disclosure of possible easements, setback lines or other conditions on or near the Premises shall not be construed as acceptance of such conditions by Tenant nor a waiver of Tenant's right to object to such easements as causing the Premises to be unsuitable for Tenant's contemplated Use.

Tenant will repair the Premises to substantially their former condition after performing any tests, borings or other engineering studies. Tenant, at its sole cost and expense, shall indemnify and hold Landlord harmless from and against any claims, losses or damages incurred as a result of the actions of Tenant, its agents, contractors or employees on the Premises in furtherance of this section. This indemnification shall survive the termination or cancellation of the Lease.

5.11   Vacant Possession. Landlord shall deliver vacant, and exclusive possession of the Premises to Tenant at Lease Term Commencement and, in furtherance thereof, shall execute the Landlord's Affidavit attached hereto and made a part hereof as Exhibit "D".

5.12   Non-disturbance Agreement. In the event that there is a mortgage, deed of trust or similar debt agreement in which the Premises is the security, in whole or in part, the Landlord shall obtain, prior to Tenant's Good Faith Deposit, a Non-disturbance agreement in recordable form similar to that which is attached hereto and made a part hereof as Exhibit "C" whereby the secured party recognizes this Lease and Tenant's right hereunder in the event of any foreclosure and Tenant agrees to attorn to such mortgage in furtherance thereof.

5.13   Close of Escrow. On or before September 1, 2000, the closing of this transaction and escrow (the "Close of Escrow") shall occur at the offices of Lawyers Title at 40 East Mitchel Drive, Phoenix, Arizona 85012. Tenant shall have three (3) options to extend the Close of Escrow for thirty (30) days each. Tenant may elect to extend the Close of Escrow by depositing an additional Ten Thousands Dollars ($10,000.00) of non-refundable Good Faith Deposit with Lawyers Title for each extension. If Tenant fails to instruct Lawyers Title to Close the Escrow, Lawyers Title shall pay the initial Good Faith Deposit and additional Good Faith Deposits, if any, and accrued interest to Landlord as liquidated damages and return the copy of the Memorandum of Lease as shown on Exhibit "B" hereto attached to Landlord. Upon Tenant's instruction to Lawyers Title to Close of Escrow, Lawyers Title shall file the Memorandum of Lease as shown on Exhibit "B" hereto attached with the Recorder's Office of Maricopa County, Arizona and, at Landlord's cost and expense, issue a standard Leasehold Policy of Insurance to Tenant. If Tenant elects to receive an ALTA extended coverage Leasehold Policy of Insurance, then Tenant shall pay the cost of such policy in excess of the cost of a Standard coverage policy. Landlord and Tenant shall each pay one-half of the escrow charges. On or before the Close of Escrow, Landlord and Tenant agree to deposit with Escrow Agent an amount sufficient to pay all their respective Closing costs. Upon Close of Escrow, Lawyers Title shall disburse Good Faith Deposit, additional Good Faith Deposits, if any, and accrued interest to Landlord. Landlord shall return the Good Faith Deposit, additional Good Faith Deposits, if any, and accrued interest received from Lawyers Title, together with interest at the rate of five percent (5%) per annum from the receipt of funds from Lawyer Title, to Tenant within seven (7) days of Tenant's opening for business.

## 6.   COMMENCEMENT OF TERM AND RENTAL PAYMENTS.

6.1   Lease Term Commencement. This Lease shall be for a period of sixteen (16) years commencing upon the filing of the Memorandum of Lease with the

Recorder's Office (hereinafter called "Lease Term Commencement"). Lease Year as herein referred to in this Lease shall mean each twelve (12) full calendar month period starting with Lease Term Commencement. If the actual Lease Term Commencement shall occur on a day that is other than the first (1st) day of the month, then the Lease Years shall be determined starting with the first (1st) full month after Lease Term Commencement. Any period less than a full calendar month shall be added to the first and last full month of this Lease and shall be included in the applicable Lease Year. Simultaneously with or just prior to the Lease Term Commencement the Landlord and Tenant shall forward to Lawyers Title a recordable Memorandum of Lease as shown on Exhibit "B" hereto attached and made a part hereof and which will state the exact date of commencement and any restrictions contained herein, if any. Upon receipt of same, the Tenant shall promptly execute and return to Landlord for recordation.

6.2     Rental Commencement. Tenant's obligation to pay Rent, CAM, taxes, insurance, and maintenance shall commence on the first to occur of (i) Tenant's opening for business on the Premises, (ii) one hundred eighty (180) days after the date Peoria notifies Tenant in writing that Tenant's Building Permit Application has been approved, or (iii) May 1, 2001 (hereinafter called "Rental Commencement Date") and terminating on the anniversary date of the Lease Term Commencement date sixteen (16) years thereafter, unless sooner terminated or extended as hereinafter provided.

7.     CONSTRUCTION OF IMPROVEMENTS. Tenant shall submit to Landlord, within thirty (30) days after the Effective Date, one (1) set of Site Plans and Building Elevations for the Tenant's work to be done on the Premises. Landlord shall within ten (10) days from receipt notify Tenant in writing specifying (with reasonable detail) as to such parts of same as shall not meet Landlord's reasonable approval guidelines. Landlord shall have no right to object to Tenant's non-structural, interior alterations or modifications of the Premises. If Landlord shall fail to so object to said proposed exterior and structural changes, its right to do so shall be deemed waived, thereby constituting approval. If Landlord shall so object to said proposed exterior and structural changes, Tenant may, at its option, either (a) terminate this Lease by delivering written notice thereof to Landlord, or (b) undertake to make the changes requested by Landlord as a consequence of said objections. Tenant agrees that its construction of improvements set forth in the approved plans and specifications shall be undertaken in a good and workmanlike manner and shall be in substantial conformity therewith.

Landlord acknowledges that the prompt commencement and diligent completion of Landlord's Site Work, as hereinbefore defined, is of material importance to Tenant for the purpose of Tenant accomplishing its completion of construction and Lease Term Commencement. Landlord agrees to complete Landlord's Site Work prior to Tenant obtaining Tenant's Certificate of Occupancy.

Landlord and Tenant agree that they shall, prior to the commencement of construction, undertake to approve the location of construction trailers on or near the Premises, and the location of tool storage, staging areas and trash facilities during such period. Tenant agrees to keep and maintain the Premises in good condition, sightly and shall regularly remove trash and debris as is reasonable under the circumstances. Tenant shall be

permitted to post any and all appropriate notices required by law or otherwise with respect to the Premises and its Use.

8.   RENT. Tenant shall pay to Landlord at the address first written above, as rental for the Premises the annual rents shown below together with applicable sales tax, if any, payable in advance in equal monthly installments as shown below on or before the first day of each calendar month as provided herein for the term of this Lease with adjustments for fractional months:

| | Annual Rent | Mon. Installment |
|---|---|---|
| Lease Years  1 - 5 | $ 90,000,00 | $ 7,500.00 |
| Lease Years  6 - 10 | $ 99,000,00 | $ 8,250.00 |
| Lease Years 11 - 15 | $108,900,00 | $ 9,075.00 |

In addition, Tenant shall pay any and all taxes assessed or levied as sales or business use taxes on the rentals hereunder.  Tenant shall pay eight percent (8%) of the total Common Area Maintenance ("CAM") assessments as provided and described in the Arrowhead Entertainment Center Declaration of Covenants, Conditions, and Restrictions. It is the intention of the parties hereto that this is a Net Lease, including, but not limited to CAM charges, rental taxes, property taxes, insurance, and maintenance.  Any payment paid beyond ten (10) days of when due shall incur a late service charge of five percent (5%) of the amount of the payment.

9.   BUSINESS OPERATION. Tenant shall (a) keep and maintain the Premises in good order and repair; (b) store garbage, trash, rubbish and other refuse in dumpsters on the Premises; (c) keep all mechanical equipment free of vibrations and noise and in good working order and condition; (d) not commit or permit waste or a nuisance upon the Premises; (e) not permit or cause odors to emanate or be dispelled from the Premises other than its normal cooking aromas; (f) comply with all applicable laws, ordinances, rules and regulations of governmental, public, private and other authorities and agencies, with respect to the Use or occupancy of the Premises; (g) light its signs during its business hours as necessary; (h) not permit any noxious, toxic or corrosive fuel, gas, dust, dirt or fly ash on the Premises; (i) police its Premises; (j) use the sewer system in a proper manner so as to reasonably avoid clogging; and (k) shall have the right to install a rooftop antenna for cable or similar video and recording availability to the Premises.  Tenant shall be open for business a minimum of five (5) hours per day for a minimum of two hundred eighty (280) days per year.  Tenant shall pay a Rent Concession of an additional twenty-five percent (25%) of their current Rent for each day of closure in excess of Ninety (90) days per calendar year, except for closure resulting from damage or destruction as differentiated in Article 16 hereof.

10.   PROPERTY TAXES. The owner of the Premises will own an undivided eight percent (8%) ownership percentage of the Common Area.  Each parcel owner will own an undivided ownership percentage of the Common Area and the real estate taxes for each separately assessed parcel will include the owner's undivided portion of the taxes on the Common Area.  Tenant shall pay promptly and before they become delinquent, all real estate taxes, assessments and other impositions, (including, but not limited to, taxes levied on the rentals or business use of the Premises in lieu of such real estate taxes) general and special, direct or indirect, that become due and payable at any time during the term

of this Lease upon or against the Premises including the land and all buildings, and Tenant's furniture, fixtures, equipment now or hereafter thereon which may be or are lawfully assessed either in the name of the Landlord or Tenant. Tenant shall be liable for penalties, interest or other charges imposed upon delinquent payment provided Tenant has received the applicable tax bills on a timely basis. The tax obligation shall be prorated from Lease Term Commencement to date of expiration or sooner termination of this Lease.

If the Premises is a part of a larger tax parcel, Landlord shall have the Premises designated as a separate tax parcel. In the event Landlord shall be unable in good faith to obtain a separate tax parcel designation, the taxes applicable to the Premises shall be payable to Landlord and prorated, and Landlord shall pay the applicable real estate taxes. Landlord shall provide Tenant with reasonable documentation with respect to the tax obligations hereunder.

The Tenant shall have the right, at its own cost and expense, to initiate and prosecute any proceedings permitted by law for the purpose of obtaining an abatement or of otherwise contesting the validity or amount of taxes assessed to or levied upon the Premises. If required by law, Tenant may take such action in the name of the Landlord, who shall cooperate with the Tenant to such extent as reasonably required to the end that such proceedings may be brought to a successful conclusion. Tenant agrees that in the event of any such election to contest, that it will (i) pay the tax (unless such payment would operate to bar its right to contest), and (ii) assure Landlord as reasonably necessary that the Premises and any mortgage lien thereon, if any, will not be subject to forfeiture or foreclosure, as the case may be.

11. **UTILITY CHARGES**. Tenant shall pay promptly as and when the same becomes due and payable all rents, rates and charges for water, sewer, electricity, gas, fuel, heat and power and other utilities supplied to the Premises or used by Tenant in connection therewith. All utilities shall be separately metered or sub-metered to the Premises. In the event a utility easement is necessary to provide any utility service necessary for the Tenant's Use, the Landlord agrees to execute any reasonable utility easement grant.

12. **LIENS**. The Landlord and Tenant covenant each with the other that each party ordering labor or materials for use on or about the Premises or any parcel wherein any lien shall affect the Premises shall hold the other harmless against any loss or damage due to any lien filed against the Premises or Landlord's adjoining parcels, if any, as the case may be, on account of nonpayment or dispute with respect to labor or materials furnished in connection with construction referred to herein or any other construction on the Premises or any such adjoining parcels and such party shall cause no judgment to lien against the Premises. The party against whom such lien is filed shall notify the other within fifteen (15) days of its notice of filing and said lien shall be removed within thirty (30) days.

13. **INDEMNITY AND INSURANCE**. Except for Landlord's, or Landlord's employees, agents and contractors willful misconduct or negligence, Tenant covenants and agrees to indemnify and save and hold harmless Landlord from and against any and all claims and demands for damages to persons or property or for loss of life, including but not limited to any and all claims or demands against Tenant and all loss, cost, damages

AEC Abuelo's Ground Lease3 05/17/2000

charges, fines, penalties, causes of action, suits and judgments, including reasonable legal expenses in connection with defending any such action arising from any matter or thing growing out of the occupation or use of the Premises including, but not limited to, the sale of alcoholic beverages from the Premises by Tenant, its agents, employees, Tenants, licensees, customers, guests and invitees. In particular, Tenant agrees to maintain liability insurance insuring Tenant and Landlord as their interests may appear, against all claims, demands or actions for injury to or death of any one person or for injury to or death of more than one person in any one accident including damage to property in an aggregate, amount of not less than Two Million Dollars and No/100 ($2,000,000.00) or arising from, relating to, or connected with the conduct and operation of Tenant's Use.  Tenant's public liquor/liability/dram-shop policies shall be maintained at coverage limits as are applicable to similar uses made of the Premises in the metropolitan area in which the Premises is located.  Tenant agrees to maintain policies of fire and extended coverage, vandalism, water leakage from sprinkler systems, and malicious mischief insurance with "all risk" endorsement on all of Tenant's building and improvements, in and on the Premises.  Such insurance on the building and improvements shall be payable to Tenant and shall be in an amount equal to the full replacement cost thereof (excluding footers and foundations).  All of said insurance shall provide that it will not be subject to cancellation, termination or change except after at least thirty (30) days prior notice to Landlord of the expiration of the term of such coverage.  If Tenant fails to comply with such requirement hereunder, Landlord may obtain such insurance and keep the same in effect and Tenant shall pay Landlord the premium cost thereof upon demand.  Tenant shall have the right to use "blanket" insurance coverage and may self insure as to its personal property, furniture, fixtures and equipment.  All insurance required hereunder shall name Landlord and/or its mortgagee as an additional insured and Tenant shall furnish certificates evidencing the coverage required hereunder.

Tenant and Landlord each release each other from and against any and all claims, demands, liabilities, or obligations whatsoever for damage to the property, and for loss of rents or profits, of the releasing party resulting from or in any way connected with any fire, accident, or other casualty to the Premises that is coverable by property insurance commercially available.  The all risk policies carried by the parties hereunder shall contain a provision whereby the respective carriers shall waive all rights of recovery by way of subrogation, as applicable, to the extent of any insurance proceeds.

14.    REPAIRS.  Except for Landlord's, or Landlord's employees, agents and contractors willful misconduct or negligence, wherein such action shall be at Landlord's cost and expense, Tenant shall, at all times, and at its own cost and expense, put, keep, replace and maintain in thorough repair and good, safe, and substantial order and operating condition, all buildings and improvements erected on the Premises, including, but not limited to, plate glass, signage, walkways and landscaping on the Premises in a reasonably diligent manner to maintain a first-class, high quality facility (including all building equipment which is an integral part of the building structure), including all structural and non-structural components, and Tenant shall likewise at all times and at its own costs and expense, put, keep, replace and maintain all personal property and equipment attached to or used in connection with the Premises in operating condition.  The parties agree that under no circumstances shall Landlord have any repair obligations, except as

a result of Landlord's, or Landlord's employees, agents and contractors willful misconduct or negligence.

15.   ALTERATIONS.  Tenant may make interior alterations, additions and improvements to the Premises from time to time necessary or advisable in the sole opinion of Tenant. Any exterior or structural alterations and improvements shall require Landlord's prior written approval, which shall not be unreasonably withheld, of Tenant's plans and specifications which if not approved or reasonably objected to within fifteen (15) days of Tenant's submittal to Landlord, shall be deemed approved.

16.   DAMAGE TO OR DESTRUCTION OF IMPROVEMENTS.  Within ten (10) days of any damage or destruction of improvements, Tenant shall notify Landlord of the damage or destruction.

16.1   Tenants Option and Notification.  If the Premises shall be damaged by fire or other casualty during the last three (3) years of the term of this Lease or during the last three (3) years of any extension of the term, to the extent of fifty percent (50%) or more of the insurable value of the building, Tenant may, at Tenant's option, elect to restore the Premises or terminate this Lease.  Tenant shall notify Landlord in writing within thirty (30) days after the occurrence of such damage or destruction of Tenant's election.

16.2   Restoration of Premises.  In the event Tenant does not elect to terminate or shall have no such right, Tenant shall be under an affirmative obligation to restore the Premises within six (6) months of such damage or destruction, and Tenant shall be entitled to all proceeds of insurance and right of recovery against insurers on policies covering such damage or destruction.  Tenant's obligation to pay rent under this Article shall be reduced to one-third (1/3) of the then present monthly rental and continue during the restoration of Premises, but shall not exceed a period of six (6) months.  Tenant's shall have two (2) thirty (30) day options to extend the obligation to pay rent on a "as needed" basis for circumstances beyond the Tenant's reasonable control.

16.3   Termination of Lease.  In the event Tenant elects to terminate, Landlord, at Landlord's option, shall remove all debris and return the building area to a clean and graded condition, and Landlord shall be entitled to all proceeds of insurance and shall have the right to negotiate and settle the claim for recovery against insurers on policies covering such damage or destruction.

17.   COMPLIANCE WITH LAWS.  Tenant shall use and occupy the Premises so as to comply with all applicable laws and regulations of governmental bodies having jurisdiction. Landlord represents and warrants that the Premises, the Common Area, and the Landlord's Site Work  shall be in compliance with all applicable laws and regulations as of the Tenant's opening for business.

18.   ASSIGNMENT AND SUBLETTING.  Except to its parent, subsidiary or affiliate wherein no consent shall be necessary, Tenant shall have the right to assign its rights herein or sublet the Premises subject to Landlord's consent, not to be unreasonably withheld or delayed. As long as Tenant is not in Default, Tenant shall have the right to sell all of Tenant's assets to a buyer with equal or greater experience and substance than Tenant without the consent of the Landlord. No assignment or subletting by Tenant shall affect or diminish the obligation of Tenant to perform all of the covenants required to be

AEC Abuelo's Ground Lease3   05/17/2000

performed by Tenant under the terms of the Lease. Any Assignment or Sublease permitted under this Section without the Landlord's consent shall expressly provide, and shall be permitted solely upon the condition that, each such transferee, assignee or sublessee shall be fully bound to Landlord, its successors or assigns, by full privity of contract, as well as by privity of estate; and that each such transferee, assignee or sublessee shall be fully bound to perform all covenants of this Lease.

Landlord shall have the right to assign this Lease to any party acquiring title to the Premises and shall thereafter be relieved of all liability under the Lease accruing from and after the date of closing provided such successor or assign shall assume Landlord's obligation hereunder. Tenant shall within ten (10) days following any written request from Landlord or any Mortgagee, execute, acknowledge and deliver to Landlord a written estoppel statement executed by Tenant certifying (i) whether or not this Lease is in full force and effect and stating the nature of any modification hereto; (ii) the dates to which the Rent and other charges are paid in advance, if any; (iii) the amount of any Security and Damage Deposit paid to Landlord, if any; (iv) whether or not, to Tenant's knowledge, there are any defaults on the part of the Tenant or Landlord hereunder, and specifying such defaults if they are claimed; and (v) the status of such other matters as may reasonably be requested by Landlord or Mortgagee.

19. **MORTGAGING OF LEASEHOLD ESTATE**. Upon prior notice to Landlord of its intent to do so, Tenant shall have the right to mortgage and pledge this Lease to any institutional Lender or financial entity subject, however, to the limitations herein contained. Any such mortgage or pledge shall be subject and subordinate to the rights of the Landlord hereunder and the holder of any mortgage or deed of trust of the fee in and/or upon which the Premises is located (hereinafter called "Mortgagee"). No holder of a mortgage on this Lease (hereinafter called "Leasehold Mortgage and/or Leasehold Mortgagee") shall have the rights or benefits mentioned in this Article, nor shall the Landlord or its Mortgagee be bound by this Article unless and until an executed counterpart of such Leasehold Mortgage and of each assignment thereof or a duly authenticated copy shall have been delivered to Landlord and its Mortgagee.

If Tenant shall mortgage this Lease in compliance herewith, then so long as any such mortgage shall remain unsatisfied of record, the following provisions shall apply:

19.1   Landlord, shall serve a copy of any notice of default sent to Tenant upon the holder of such Leasehold Mortgage at the last address of which Landlord is given by said Leasehold Mortgagee.

19.2   The holder of the Leasehold Mortgage shall, within the same period and otherwise as herein provided, have the right to remedy such default, or cause the same to be remedied. Landlord shall accept such performance by or at the instance of such holder as if the same had been made by Tenant.

19.3   No event of default shall be deemed to exist under the terms of this Lease in the performance of work required to be performed, of acts to be done, or of conditions to be remedied, if steps shall, diligently and in good faith, have been

AEC Abuelo's Ground Lease3   05/17/2000

commenced and completed by or for the Leasehold Mortgagee within the time permitted to do so with diligence and continuity as provided in this Lease.

19.4 In the event of the termination of this Lease prior to the expiration of the term, except by eminent domain, damage or destruction as herein provided, Landlord shall serve notice to the Leasehold Mortgagee that the Lease has been terminated. Such notice shall include a statement of any and all sums which would at that time have been due under this Lease but for such termination. The Leasehold Mortgagee shall thereupon have the option to obtain a new Lease in accordance with and upon the following:

19.4.1 The new Lease shall be effective as of the date of termination of this Lease, and shall be for the remainder of the term of this Lease including options periods and at the rent and upon all of the original agreements, terms, covenants and conditions hereof, including any rights of renewal. Such new Lease shall require the Leasehold Mortgagee, as Tenant, to perform any unfulfilled obligation of Tenant under this Lease.

19.4.2 Upon the execution of such new Lease, the Tenant named therein shall pay any and all sums which would at the time of the execution thereof be due under this Lease but for such termination and shall pay all reasonable expenses including, but not limited to, reasonable counsel fees, court costs and disbursements incurred by Landlord in connection with any default and termination, the recovery of possession of said Premises, and the preparation, execution and delivery of the new Lease.

19.5 Any notice or other communication which Landlord shall desire or is required to give to or serve upon the holder of a Leasehold Mortgage on this Lease shall be in writing and shall be served in the same manner as upon Tenant as provided in Article 28, addressed to such holder at the address as set forth in such Leasehold Mortgage or in the last assignment thereof delivered to Landlord or at such other address as shall be designated by such holder by notice in writing given to Landlord.

19.6 The union of the interests of Landlord and Tenant herein shall not result in a merger of this Lease into the fee interest until expiration of the Leasehold Mortgagee's option, and then only upon Landlord's affirmative election.

19.7 Landlord shall execute any reasonable document required by the Leasehold Mortgagee to perfect its interest in the property subject to the Leasehold Mortgagee's interest including, but not limited to, such instruments as may be appropriate under the Uniform Commercial Code to reflect same and subordination of any Landlord's lien upon Tenant's Leasehold interest and/or personal property.

If any Leasehold Mortgagee shall acquire title to Tenant's interest in this Lease, by foreclosure of a Leasehold Mortgage thereon or by assignment in lieu of foreclosure or by an assignment from a designee or wholly owned subsidiary corporation of such Leasehold Mortgagee, or under a new Lease pursuant to this Article, then such Leasehold Mortgagee shall be otherwise bound by this Lease. As long as Lease is not in Default, Leasehold Mortgagee shall have the right to assign this Lease to a qualified assignee without the

consent of the Landlord, and Leasehold Mortgagee shall thereupon be released from any and all liability for the performance or observance of the covenants and conditions in such Lease contained on Tenant's part to be performed and observed from and after the date of such assignment, provided that Landlord shall have received an executed counterpart of said assignment, together with the name and address of the assignee and further provided that Landlord also be sent an assumption by the assignee, all in recordable form.

20.    SUBORDINATION.  Tenant shall, upon the written request of Landlord, subordinate this Lease to the lien of any present or future mortgage upon the Premises provided that the holder of any such mortgage (the "Mortgagee") shall enter into a written subordination, Non-disturbance and attornment agreement ("SNDA") with Tenant that is reasonably acceptable to the Mortgagee and Tenant and providing that (i) in the event of foreclosure or other action taken by Mortgagee, this Lease and the rights of Tenant hereunder shall not be disturbed, but shall continue in full force and effect so long as Tenant is not in default hereunder; and (ii) Tenant shall provide such Mortgagee with simultaneous notice of any default of Landlord hereunder and shall also provide the Mortgagee the opportunity to cure such default. As used herein, "mortgage" shall include mortgages, deeds of trust, deeds to secure debt or other similar instruments, and any modifications, extensions, renewals and/or replacements of same.  If Landlord fails to provide such SNDA as specified above, then this Lease shall not be subordinated to the lien of any Mortgagee.

Should Landlord sell, convey or transfer its interest in the Premises or should any Mortgagee of Landlord succeed to Landlord's interest through foreclosure or deed in lieu thereof, then Tenant shall attorn to such succeeding party as its Landlord under this Lease promptly upon any such succession, duties and obligations under this Lease.  Such succeeding party shall not be liable for any of Landlord's obligations and duties hereunder prior to its assumption of Landlord's duties and obligations hereunder, except for continuing violations of Landlord.

21.    DEFAULT.

21.1    In the event the Tenant (i) fails to pay the rent at the times and in the manner herein above provided or (ii) fails to promptly perform any other covenant or obligation pursuant to this Lease which, in any of the aforesaid events, Landlord shall notify Tenant, in writing, of the alleged default. The notification shall be sent as herein provided, and evidenced by an appropriate receipt therefor.  Upon receipt of said notice, the Tenant shall have ten (10) days thereafter to cure non-payment of rent and thirty (30) days thereafter to cure any other alleged default pursuant to subsection (ii). If, upon expiration of any of the above time periods, any of the above defaults are not cured or in the event any default pursuant to subsection (ii) is such that it is unable to be cured within thirty (30) days and Tenant has not started to cure the default, and/or is not diligently proceeding to cure, then and in that event, the Landlord may at its option terminate this Lease and/or reenter and repossess itself of the Premises and remove all persons and parties therefrom with or without legal process and without being deemed guilty of trespass, forcible entry or detainer or other tort; and the Landlord may, at its option, relet the Premises or any part thereof for the balance of the Lease term either on its own account or as agent for Tenant. In addition, Landlord shall have the right to undertake such action at law or in equity for its

benefit as may be permitted, but in no event shall Landlord accelerate the rentals due hereunder, nor shall Tenant be liable for consequential or punitive damages.  Landlord shall make all reasonable efforts to mitigate the damage caused by any Tenant default.

The Tenant, in the event of default, shall be responsible for all reasonable expenses of reletting the Premises and any amount expended to enforce the terms of this Lease, including but not limited to reasonable attorneys' fees.  Tenant's liability hereunder shall include all sums due and owing under the Lease for the remainder of the term less any rentals actually received by Landlord pursuant to any reletting.  Any rentals received by Landlord in excess of Tenant's contingent rent liability hereunder shall be credited against same.

21.2  In the event Landlord defaults in the performance of any of its obligations, covenants and warranties hereunder, and if such default continues for a period of ten (10) days after written notice to Landlord from Tenant specifying the nature of such default, Tenant may, at its option, cure the same on behalf of the Landlord, whereupon the cost of such curing and any out-of-pocket expenses reasonably and necessarily arising as a consequence thereof, shall be due and payable to Tenant from Landlord upon demand therefor by Tenant along with interest at the rate of twelve percent (12%).  Failure of Landlord to so remit to Tenant shall entitle Tenant to deduct the costs thereof from the rents due hereunder.  The foregoing shall be for Tenant's protection only and exercisable only at its option.  The foregoing shall not limit or preclude Tenant from any other rights and remedies available at law or in equity.

22.    OPTION TO EXTEND.  Provided Tenant is not in default (beyond applicable notice and cure periods) under the terms of this Lease at the time of its exercise hereunder, Landlord does hereby grant to Tenant the right, privilege and option to extend this Lease for four (4) additional terms of five (5) years each upon the same terms and conditions as herein contained at such exercise, except rent, which shall be payable as follows:

|  | Annual Rent | Mo. Installment |
|---|---|---|
| Option Years 16 - 20 | $ 120,000.00 | $ 10,000.00 |
| Option Years 21 - 25 | $ 132,000.00 | $ 11,000.00 |
| Option Years 26 - 30 | $ 145,200.00 | $ 12,100.00 |
| Option Years 31 - 35 | $ 160,200.00 | $ 13,350.00 |

Such option(s) to extend may be exercised by Tenant giving at least one hundred eighty (180) days written notice to Landlord as herein provided, prior to the expiration of the then current term.

23.    CONDEMNATION.  In the event that part of the Premises shall be taken by eminent domain or condemned pursuant to applicable law or all or any part shall be conveyed in lieu thereof, both parties shall have the right to pursue a condemnation award and shall cooperate with each other to do so with the Tenant being entitled to any award for lost business, moving expenses and the taking of the improvements on the Premises, and the Landlord being entitled to all other amounts awarded, including, but not limited to, all amounts awarded for land value.

AEC Abuelo's Ground Lease3   05/17/2000

24.    QUIET ENJOYMENT. Landlord covenants that Landlord has full right and lawful authority to enter into this Lease for the full term hereof, and that Landlord is lawfully seized of the entire Premises hereby demised and that at all times when Tenant is not in default under the terms and conditions of the Lease beyond applicable notice and cure periods, Tenant's quiet and peaceable enjoyment of the Premises shall not be disturbed.

Landlord shall obtain no right or interest vested or inchoate in any permit, license or other authorization as a consequence of Tenant's Use thereof at the Premises or any identification or connection therewith.

25.    HOLDING OVER. Except as provided hereinafter, upon the expiration or earlier termination of this Lease, Tenant, shall quit and surrender the Premises, in good condition and repair (reasonable wear and tear excepted).   If the Premises is not surrendered at the end of the Term, Tenant shall indemnify Landlord against any loss or liability resulting from delay by Tenant in so surrendering the Premises, including without limitation, any claims made by any succeeding Tenant based on such delay.  If Tenant or any successor-in-interest of Tenant, should remain in possession of the Premises after the expiration of this Lease, then such holding over shall be construed as a tenancy from month-to-month, subject to all the covenants, terms, provisions and obligations of this Lease except that Annual Rent shall be subject to an automatic increase of fifteen percent (15%), over and above the amounts paid in the last full calendar month of the Term for the first ninety (90) days of such hold over period and twenty-five percent (25%) over and above the amounts paid in the last full calendar month of the Term for any hold over period in addition to the ninety (90) day period. Tenant shall pay Landlord in the event this Lease becomes a month-to-month tenancy, the above adjusted Annual Rent amount together with all other sums due and owing to Landlord under all other terms and conditions of this Lease presently set forth herein.   Nothing contained herein shall be construed as Landlord's permission for Tenant to hold over or as limiting Landlord's remedies against a holdover Tenant.

26.    END OF TERM. Upon completion of the term or any extended term, the Tenant shall peacefully and quietly surrender possession of the Premises to the Landlord. Provided Tenant is not then in default, Tenant shall have the right to remove all equipment that is not considered a fixture, decorations, antiques, artifacts and inventory from the Premises, and shall repair any damage occasioned thereby. All keys shall be turned over to Landlord upon surrender. Failure of Tenant to turn over all keys shall obligate Tenant to pay all necessary costs in re-keying the locks pertaining to the Premises. Title to the building, improvements and fixtures remaining on the Premises following vacating thereof by Tenant shall at Landlord's option exercisable upon written notice at any time thereafter to Tenant, transfer to and vest in Landlord or its designee. All other property remaining on the Premises after the expiration of the Term shall be deemed to have been abandoned and will become the property of the Landlord.

27.    BROKERAGE COMMISSIONS AND REPRESENTATION. Landlord shall be responsible for commissions arising from this Lease through a separate agreement. Charles J. Speros is a licensed Real Estate Broker in the State of Arizona and is a Principal in the Landlord's entity, and is representing the Landlord in this transaction. The Anz Company, L.L.C., a Texas limited liability company, Bret Anz, Broker, is representing

AEC Abuelo's Ground Lease3   05/17/2000

Page 14

the Tenant in this transaction. Except for the aforementioned, Landlord and Tenant do hereby hold and save each other harmless from any loss, cost, damage or expense, including attorneys' fees due by virtue of any claim for a brokerage commission claimed or arising as a consequence of this Lease. Each of the parties hereto represents and warrants to the other that it has not caused any other broker, agent, finder, or other party to be entitled to a fee or commission by reason of this Lease except for the aforesaid brokers.

28.    SERVICE OF NOTICE.  All notices, demands and communications as provided herein shall be sent by United States registered mail, return receipt requested or available, nationally recognized express mail carrier (such as Federal Express, UPS Next Day Air, etc.), and shall be deemed delivered on the day after deposit with the express mail carrier, addressed to the following address or to such other addressees) as Landlord and Tenant may advise each other in writing upon at least ten (10) days' prior notice.

Landlord:                          Arrowhead Fountains Center, L.L.C.
                                   an Arizona limited liability company
                                   2929 East Camelback Road, Suite 230
                                   Phoenix, Arizona 85016-4495
                                   Attn: Charles J. Speros, Managing Member

Tenant:                            Food Concepts International, Inc.
                                   A Texas corporation
                                   7822 Orlando Avenue
                                   Lubbock, Texas 79423
                                   Attn: Chuck Anderson

29.    APPLICATION. This Lease shall inure to the benefit of and is binding on the heirs, executors, administrators, successors, and assigns of the Landlord and Tenant. In the event a conflict between the printed body of the Lease and the typewritten modifications or addenda, the typewritten modifications or addenda shall control.

30.    FORCE MAJEURE.    Anything contained herein to the contrary notwithstanding, Landlord and/or Tenant shall be excused for the period of delay in the performance of any and all of their obligations under this Lease other than the obligation to pay rent as same shall fall due, and shall not be considered in default when prevented from so performing by cause or causes beyond Landlord's or Tenant's control, including, but not limited to, all labor disputes, civil commotion, war, fire or other casualty, shortage of supplies and materials, government regulations or through act of God.

31.    RESTRICTIVE COVENANT. So Long as Tenant operates an Abuelo's restaurant on the Premises, Landlord will not Lease, sublease or otherwise operate, or permit, or contract, by conveyance or otherwise, within Lots one (1) through ten (10), both inclusive of the Arrowhead Entertainment Center (see Exhibit "A-2"), to any full service Mexican Food Restaurant whose building exceeds six thousand (6,000) square feet. Excluded from the restriction in this Article is a Mexican Style Cantina Restaurant whose beverage sales shall exceed forty percent (40%) of its annual gross revenues. The restrictions in this Article shall automatically terminate on December 31, 2004.

AEC Abuelo's Ground Lease3   05/17/2000

32.   ATTORNEYS' FEES. Any attorney fees incurred by a successful party to the enforcement of this Lease shall be paid by the unsuccessful party, which shall include court costs and other reasonable fees.

33.   ACCESS TO PREMISES. Landlord shall have the right to inspect the Premises, to undertake to perform Tenant's obligations then in default and gain access with respect thereto during all reasonable business hours of Tenant, except during Tenant's typical lunch or dinner service hours except in an emergency. Except in an emergency and/or to save life or property, Landlord agrees to provide at least twenty-four (24) hours notice of such access or inspection. The provisions of Article 13 herein shall be applicable to this Article.

34.   SIGNAGE. Tenant, at Tenant's sole cost and expense, shall be entitled to erect building signs subject to the approval of the City of Peoria. Tenant shall be entitled to install a freeway pole sign, subject to availability, with other users thereon and proportionally share in the costs thereof. Landlord and Tenant shall agree on the terms and conditions of Tenant's use of a pole sign prior to July 1, 2000.

35.   ENTIRE AGREEMENT. This Lease is the entire agreement between the parties and no modification thereof shall be made except in writing, signed by the parties.

36.   RECORDING. Landlord and Tenant shall not cause this Lease to be recorded, except that a short form Memorandum of Lease attached hereto as Exhibit "B" , shall be entered into by and between the parties and placed of record provided that it will not include any provisions of this Lease with respect to rentals or other economic or financial terms herein.

37.   COVENANTS AGAINST CLAIMS. The Landlord hereby warrants and represents to Tenant that to the best of its knowledge that as of the Effective Date there are no pending or threatened condemnation matters, or administrative hearings affecting the Premises or any portion thereof. Landlord further represents and warrants to Tenant that Landlord has not received any notice of, nor is there any outstanding violation of any governmental regulation affecting the Premises.

38.   ENVIRONMENTAL DISCLOSURE. Landlord represents that it has no knowledge of any deposit, storage, disposal, removal, burial, discharge, spillage, uncontrolled loss, seepage or filtration of oil, petroleum or chemical liquids or solids, liquid or gaseous products or any hazardous wastes or hazardous substances (collectively "Hazardous Substances"), as those terms are used in any appropriate and applicable law, code or ordinance including, but not limited to, the Comprehensive Environmental Response, Compensation and Liability Act of 1980 at, upon, under or within the Arrowhead Entertainment Center.

Landlord agrees that it shall take any and all appropriate steps to register, file or disclose, in such manner and at such time as required pursuant to any applicable state or federal law, code or ordinance if required to do so with respect to the Premises or any property of Landlord for which a registration is required which may affect the Premises,

Tenant shall not knowingly cause or permit any Hazardous Substance to be used, stored, generated, or disposed of on, in or about the Premises (except those commonly or properly used in connection with the operation of a restaurant and which are used in accordance with all applicable governmental laws and regulations) without obtaining Landlord's prior written consent. If the Premises become contaminated in any manner in violation of applicable law as a result of any breach of the foregoing covenant or any act or omission of Tenant or any of its agents, employees or contractors, Tenant shall indemnify, defend, and hold harmless Landlord from any and all claims, demands, actions, damages, fines, judgments, penalties, costs (including attorneys', consultants', and experts' fees), liabilities, losses (including without limitation, any decrease in value of the Premises, damages due to loss or restriction of rentable or usable space, or any damages due to adverse impact on marketing of Premises), and expenses arising during or after the term of this Lease and arising as a result of such contamination. This indemnification includes, without limitation, any and all costs incurred due to any investigation of the Premises or any cleanup, removal, or restoration mandated by a federal, state, or local agency or political subdivision. Without limitation of the foregoing, if Tenant causes or permits the presence of any Hazardous Substance on, in, or about the Premises that results in unlawful contamination, Tenant, at its sole expense, shall promptly take any and all necessary actions to return the Premises to substantially the same condition that existed prior to the presence of any such Hazardous Substance on, in, or about the Premises taking into account any remediation activities. Tenant shall first obtain Landlord's approval for such remedial action which shall not be withheld if such action shall have been approved by the applicable governmental authority having jurisdiction. Notwithstanding the foregoing, this indemnification shall only apply to contamination by Hazardous Substances resulting from Tenant's Use and operation of the Premises. In all other cases, Landlord shall defend, hold harmless and indemnify Tenant from any loss or damage caused by Hazardous Substances on, in or about the Premises.

39.    MISCELLANEOUS. TIME IS OF THE ESSENCE! The laws of the State of Arizona shall govern and control the interpretation and enforcement of the terms and provisions of this Lease.

40.    OFFER. This Lease supercedes all previous agreements, oral and written, and must be executed by all parties on or before May 31, 2000.

IN WITNESS WHEREOF, the Parties have executed this Lease on the date hereinafter written.

**Landlord:**
Arrowhead Fountains Center, L.L.C.
an Arizona limited liability company

By: Charles J. Speros
Its: Managing Member
Date: 5/17/2000

**Tenant:**
Food Concepts International, Inc.
a Texas corporation

By: Charles L. Anderson
Its: President
Date: 6/19/2000

AEC Abuelo's Ground Lease3   05/17/2000

STATE OF ARIZONA )
) ss
County of Maricopa )

BEFORE ME personally appeared Charles J. Speros to me well known and known to me to be the Managing Member of Arrowhead Fountains Center, L.L.C., an Arizona limited liability company and who executed the foregoing instrument, and acknowledged to and before me that he executed said instrument for the purposes therein expressed.

WITNESS my hand and official seal, this _17th_ day of _May_ 2000.

My Commission Expires: _____



NOTARY PUBLIC
STATE OF ARIZONA
Maricopa County
ROZANNE MACINTYRE
My Commission Expires 07/08/03

STATE OF TEXAS )
) ss
County of Lubbock )

BEFORE ME personally appeared Charles L. Anderson  to me well known and known to me to be the President of Food Concepts International, Inc, a Texas corporation and who executed the foregoing instrument, and acknowledged to and before me that he executed said instrument for the purposes therein expressed.

WITNESS my hand and official seal, this _24th_ day of _June_ 2000.

My Commission Expires: _10.6.2001_



TRACY D. AUTRY
Notary Public, State of Texas
My Commission Expires
10-6-2001

STATE OF ARIZONA          )
                          ) ss
County of Maricopa        )

BEFORE ME personally appeared Charles J. Speros to me well known and known to me to be the Managing Member of Arrowhead Fountains Center, L.L.C., an Arizona limited liability company and who executed the foregoing instrument, and acknowledged to and before me that he executed said instrument for the purposes therein expressed.

WITNESS my hand and official seal, this _____ day of _____ 2000.

_____

My Commission Expires: _____

STATE OF TEXAS           )
                         ) ss
County of Lubbock        )

BEFORE ME personally appeared Charles L. Anderson  to me well known and known to me to be the President of Food Concepts International, Inc, a Texas corporation and who executed the foregoing instrument, and acknowledged to and before me that he executed said instrument for the purposes therein expressed.

WITNESS my hand and official seal, this _____ day of _____ 2000.

_____

My Commission Expires: _____

AEC Abuelo's Ground Lease3   05/17/2000

## EXHIBIT "A" LEGAL DESCRIPTION OF PREMISES

A 15,143 square foot portion of Lot Ten (10), Arrowhead Entertainment Center, according to the plat of record in the office of the County Recorder of Maricopa County, Arizona, in Book _____ of Maps, page _____, and more particularly described as follows:

(Exact Legal to be attached at a later date)

AEC Abuelo's Ground Lease3    05/17/2000

Page 19

JUN-27-2000    11:16    THE SPEROS GROUP    P.02/03
95-15-88 89:89 FOOD CONCEPTS    ID=800 7858856    P02/03



HWY 101

ABUELO'S

PRELIMINARY
SITE PLAN
04/11/00

0 3' 15' 30'

24' DRIVE AISLE TYPICAL

NEW FIRE HYDRANT

DRIVE AISLE TYPICAL

18' STANDARD PARKING STALLS

86-15-88 12:22    TO:FOOD CONCEPTS    FROM:972 367 2933    P62

Exhibit "A-1"



ARROWHEAD ENTERTAINMENT CENTER SITE PLAN

EXHIBIT "A-2"

Case 25-43339-elm11    Doc 231-2    Filed 03/26/26    Entered 03/26/26 14:43:09    Desc
Exhibit 2    Page 28 of 51

JUN-27-2000  11:16

06-15-00 09:09 FOOD CONCEPTS

ID#895 /858868

P.03/03

P03/03



ABUELO'S

06-15-00 12:23  TO:FOOD CONCEPTS          FROM:972 387 2553          P03

TOTAL P.03

Exhibit "A-3"

EXHIBIT "B"
MEMORANDUM OF LEASE

This Memorandum of Lease is dated the _____ day of _____ 2000 and is between Arrowhead Fountains Center, L.L.C., an Arizona limited liability company whose post office address is 2929 East Camelback, Suite 230, Phoenix, Arizona 85016-4495 ("LANDLORD "), and Food Concepts International, Inc., a Texas corporation, whose post office address is 7822 Orlando Avenue, Lubbock, Texas 79423 ("Tenant").

WHEREAS, Landlord and Tenant entered into a Net Ground Lease (the "Lease") with an Effective Date of April 28, 2000 for certain Premises situated in the City of Peoria, County of Maricopa, and State of Arizona as more particularly set forth in the Lease and described on Exhibit "A" attached hereto and made a part hereof as if fully rewritten herein; and

WHEREAS, the parties are desirous of placing their interests therein as a matter of record.

NOW, THEREFORE, in consideration of the mutual covenants herein contained and the parties intending to be legally bound thereby, the parties hereto hereby agree as follows:

1.    The term of the Lease shall commence on the _____ day of _____ 2000, and terminate on the _____ day of _____ _____.

2.    Tenant has the right and option to renew the Lease for four (4) additional period(s) of five (5) years each upon the terms, covenants and conditions set forth therein.

3.    So Long as Tenant operates an Abuelo's restaurant on the Premises, Landlord will not Lease, sublease or otherwise operate, or permit, or contract, by conveyance or otherwise, within Lots one (1) through ten (10), both inclusive, of the Arrowhead Entertainment Center Plat, to any full service Mexican Food Restaurant whose building exceeds six thousand (6,000) square feet. Excluded from the restriction in this Article is a Mexican Style Cantina Restaurant whose beverage sales shall exceed forty percent (40%) of its annual gross revenues. This restriction shall automatically terminate on December 31, 2004.

IN WITNESS WHEREOF, the parties have executed this Memorandum of Lease the day and year first above written.

Landlord:                                        Tenant:

Arrowhead Fountains Center, L.L.C.               Food Concepts International, Inc.
an Arizona limited liability company             a Texas corporation

_____                  _____
By: Charles J. Speros                            By: Charles L. Anderson
Its: Managing Member                             Its: President

AEC Abuelo's Ground Lease3   05/17/2000

STATE OF ARIZONA )
) ss
County of Maricopa )

BEFORE ME personally appeared Charles J. Speros to me well known and known to me to be the Managing Member of Arrowhead Fountains Center, L.L.C., an Arizona limited liability company and who executed the foregoing instrument, and acknowledged to and before me that he executed said instrument for the purposes therein expressed.

WITNESS my hand and official seal, this _____ day of _____ 2000.

_____

My Commission Expires: _____

STATE OF TEXAS )
) ss
County of Lubbock )

BEFORE ME personally appeared Charles L. Anderson to me well known and known to me to be the President of Food Concepts International, Inc, a Texas corporation and who executed the foregoing instrument, and acknowledged to and before me that he executed said instrument for the purposes therein expressed.

WITNESS my hand and official seal, this _____ day of _____ 2000.

_____

My Commission Expires: _____

AEC Abuelo's Ground Lease3   05/17/2000

EXHIBIT "C"
NON-DISTURBANCE AGREEMENT

This Non-disturbance Agreement is dated the _____ day of _____ 2000 and is between Food Concepts International, Inc., a Texas corporation, whose post office address is 7822 Orlando Avenue, Lubbock, Texas 79426 ("Tenant"), and National Bank of Arizona, a national banking association, whose post office address is 3101 North Central Avenue, Phoenix, Arizona 85012 ("Mortgagee").

WHEREAS, on the _____ day of _____ 2000, Arrowhead Fountains, Center, L.L.C., an Arizona limited liability company, ("Landlord") and Tenant entered into a written Net Lease (hereinafter called "Lease") for certain Premises in the City of Peoria, County of Maricopa and State of Arizona which is more particularly described in Exhibit "A" attached hereto and made a part hereof as if fully rewritten herein; and

WHEREAS, Mortgagee is the holder of a lien and encumbrance thereon as security for the obligation of Landlord thereunder; and

WHEREAS, the parties desire to acknowledge Tenant's interest in the Premises and its right thereto so long as Tenant is not in default thereunder.

NOW, THEREFORE, in consideration of the mutual covenants herein contained and the parties intending to be legally bound thereby, the parties hereto hereby agree as follows:

1. Non-disturbance. So long as the Tenant is not in default in the payment of rent or additional rent or in the performance of any of the terms of the Lease, beyond any cure period, the Tenant's possession of the Leased property and the Tenant's rights and privileges under the Lease or any renewal thereof shall not be diminished or interfered with by the Mortgagee and Mortgagee recognizes said Lease.

2. Attornment. In the event the mortgage is foreclosed for any reason, and the Mortgagee succeeds to the interest of the Landlord under the Lease, the Tenant shall be bound to the Mortgagee under all of the terms of the Lease for the balance of the term thereof remaining with the same force and effect as if the Mortgagee were the Landlord under the Lease, the Tenant hereby attorns to the Mortgagee as its Landlord, such attornment to be effective and self-operative, without the execution of any further instrument on the part of either of the parties hereto, immediately upon the Mortgagee succeeding to the interest of the Landlord under the Lease. Notwithstanding anything herein to the contrary, the Tenant shall be under no obligation to pay rent to the Mortgagee until Mortgagee has succeeded to the interest of the Landlord under the Lease. The respective rights and obligations of the Tenant and the Mortgagee upon such attornment shall to the extent of the then remaining balance of the term of the Lease be the same as now set forth therein, it being the intention of the parties hereto for this purpose to incorporate the Lease in this agreement by reference with the same force and effect as if set forth at length herein.

3.     <u>Landlord's Obligations</u>.  In the event that the mortgage is foreclosed for any reason and the Mortgagee succeeds to the interest of the Landlord under the Lease, the Mortgagee shall be bound to the Tenant under all of the terms of the Lease, and the Tenant shall, from and after such event, have the same remedies against the Mortgagee for the breach of an agreement contained in the Lease that the Tenant might have had under the Lease against the prior Landlord thereunder.  In no event shall the Mortgagee be liable for any act or omission of any prior Landlord, be subject to any offsets or defenses which the Tenant might have against any prior Landlord, or be bound by any rent or additional rent which the Tenant might have paid to any prior Landlord for more than the current month.

4.     <u>Binding Effect</u>.  The rights and obligations hereunder of the Tenant and the Mortgagee shall bind and inure to the benefit of their respective successors and assigns.

**Mortgagee:**

National Bank of Arizona
a national banking association

By: _____
Its: _____

**Tenant:**

Food Concepts International, Inc.
a Texas corporation

By: Charles L. Anderson
Its: President

AEC Abuelo's Ground Lease3   05/17/2000

STATE OF ARIZONA    )
    ) ss
County of Maricopa    )

BEFORE ME personally appeared _____ to me well known and known to me to be the person(s) described therein and who executed the foregoing instrument, and acknowledged to and before me that (he) (she) (they) executed said instrument for the purposes therein expressed.

WITNESS my hand and official seal, this _____ day of _____ 2000.

_____

My Commission Expires: _____

STATE OF TEXAS    )
    ) ss
County of Lubbock    )

BEFORE ME personally appeared Charles L. Anderson to me well known and known to me to be the President of Food Concepts International, Inc, a Texas corporation and who executed the foregoing instrument, and acknowledged to and before me that he executed said instrument for the purposes therein expressed.

WITNESS my hand and official seal, this _____ day of _____ 2000.

_____

My Commission Expires: _____

AEC Abuelo's Ground Lease3  05/17/2000

EXHIBIT "D"
LANDLORD'S AFFIDAVIT

STATE OF ARIZONA      )
                      ) ss
County of Maricopa    )

BEFORE ME, the undersigned authority, on this _____ day of _____ 2000 personally appeared Charles J. Speros, Managing Member of Arrowhead Fountains Center, L.L.C., an Arizona limited liability company (hereinafter referred to singularly or collectively as "Affiant"), who being by me first duly sworn, deposes and says:

1.    That Affiant is the owner and has exclusive possession of the property described in Exhibit "A" attached hereto and made a part hereof.

2    That there are no mechanics' liens filed against the above-described property; that no cautionary notices of any kind have been served with respect to labor performed or materials furnished upon said property; that there has been no repairs or materials or other work done to or labor, materials or services bestowed upon the above-described property or any portion thereof, for which any or all of the cost of same remains unpaid; that no person, firm or corporation is entitled to a lien.

3    That there are no violations of city, county or state ordinances, laws, or governmental regulations that pertain to the above-described property.

4.    That there are no unsatisfied federal, state or county tax deficiencies that are or could become a lien against the above-described property, except taxes for the current year.

5.    That there are no pending tax deficiency proceedings against Affiant or relating to the property that could adversely affect title to the property.

6.    This Affidavit is made for the purpose of inducing Tenant to Lease the above-described property and Lawyers Title Insurance Company of Arizona, Inc. to issue title insurance thereon.

**Landlord:**

Arrowhead Fountains Center, L.L.C.
an Arizona limited liability company

_____
By: Charles J. Speros, Managing Member

AEC Abuelo's Ground Lease3    05/17/2000

STATE OF ARIZONA           )
                           ) ss
County of Maricopa         )

BEFORE ME personally appeared Charles J. Speros to me well known and known to me to be the Managing Member of Arrowhead Fountains Center, L.L.C., an Arizona limited liability company and who executed the foregoing instrument, and acknowledged to and before me that he executed said instrument for the purposes therein expressed.

WITNESS my hand and official seal, this _____ day of _____ 2000.

_____

My Commission Expires: _____

AEC Abuelo's Ground Lease3   05/17/2000

06-09-00   FRI 15:40 FAX 972 387 2553   RUNYON ARCHITECTS   @002



**RUNYON**
**Architects**
AND ASSOCIATES
ARCHITECTURAL DESIGN
PLANNING
PROJECT MANAGEMENT

June 9, 2000

## UTILITY REQUIREMENTS FOR ABUELO'S- PEORIA

| | |
|---|---|
| ELECTRICAL- | 1200 AMP SERVICE |
| GAS- | 4,000 CFH  DEMAND |
| WATER- | 2" METER |
| SANITARY SEWER- | 6" LINE |
| FIRE RISER- | 4" LINE |
| TELEPHONE- | 2" CONDUIT |

EXHIBIT "E"

Distribution as follows:

Submitted by:
RAA Document: RAA-blk.dot

2033 CHENAULT DRIVE, SUITE 150
CARROLLTON, TEXAS 75006
Ph. (972)233-7705 Fax (972)387-2553

JUN-13-2000  15:32

P.02/07

## EXHIBIT "F"

# SPECIFICATIONS FOR LAND SURVEYS

The ALTA Survey shall specify and meet all "Minimum Standard Detail Requirements for ALTA/ACSM Land Title Surveys" as adopted by the (1) American Land Title Association on October 6, 1999, (2) Board of Direction, American Congress on Surveying and Mapping on October 20, 1999, and (3) Board of Directors, National Society of Professional Surveyors on October 19,1999, which by this reference is incorporated herein.

AEC Abuelo's Ground Lease3   05/17/2000

JUN-14-2000   13:57          THE SPEROS GROUP                                    P.03/03

EXHIBIT "G"

# ARROWHEAD ENTERTAINMENT CENTER
## SCOPE OF WORK
To be Completed by Arrowhead Fountains Center, L.L.C.

Arrowhead Fountains Center, L.L.C. ("AFC") will provide the following improvements. The costs for these improvements are included in the Purchase Price:

1. Earth work including compaction of the Lots to 95% and grading of the Lots to within 6 inches of final grade.

2. Installation of parking lot paving and lighting, curbing, gutters, and parking stall striping.

3. Installation of Common Area landscape and irrigation.

4. Installation of dry and wet utilities to within 5 feet of the Lots, including water, sewer, electricity, natural gas, telephone and cable TV, all with sufficient sizes and capacities to service a restaurant seating 200 guests.

5. Installation of perimeter site screen walls.

6. Installation of site concrete for water drainage and ingress and egress.

7. Installation of Arrowhead Fountains Center Drive street scape improvements.

All such work shall be done in a good and workmanlike manner, in accordance with engineering/architectural and design standards for comparable developments, and in compliance with all applicable City, County, State and Federal rules, requirements and regulations required for Buyer to secure its Occupancy Certificate.

AEC Scope of Work Master.03/08/2000

EXHIBIT "H"
## LANDLORD'S CONSENT AND WAIVER OF LIEN

THIS Landlord's WAIVER is made and entered into this _____ day of _____ by Arrowhead Fountains Center, L.L.C., an Arizona limited liability company, ("Landlord") in favor of _____, a national banking association, as agent for certain banks ("Banks") (in such capacity, "Agent").

WHEREAS, on the _____ day of _____ 2000, Landlord and _____, ("Tenant") entered into a written Net Lease (hereinafter called "Lease") for certain Premises in the City of Peoria, County of Maricopa and State of Arizona which is more particularly described in Exhibit "A" attached hereto and made a part hereof as if fully rewritten herein; and

WHEREAS, Agent and Banks entered into financing arrangements with Tenant or its affiliates under which Tenant has granted to Agent, for itself and the benefit of Banks, a security interest in property used by Tenant in the conduct of its business and which is or may from time to time hereafter be located at the Property (all such property and the records relating thereto shall be hereafter called "Collateral").

NOW, THEREFORE, to induce Agent and Banks to continue their respective financing arrangements with Tenant, Landlord hereby irrevocably waives any claim against or lien upon Collateral described in any credit or security agreements) between Tenant and Agent and Banks in which a security interest has been granted to Agent by Tenant in property installed or located on the Property. Landlord agrees that the Collateral (a) shall remain personal property notwithstanding the manner or mode of the attachment of the Collateral to the Property, and (b) shall not become or be considered fixtures. Landlord agrees that all equipment not necessary or used for the operation of the building itself shall not be considered a fixture by Landlord and shall not be subject to Landlord's lien. Landlord also agrees to refrain from taking any action to bar, restrain or otherwise prevent Agent, or its successors or assigns, from entering the Property for the purpose of inspecting or taking possession of the Collateral in the event of Tenant's default under the provisions of any of said credit or security agreements).

Landlord represents to Agent that Tenant is not in default under the Lease or under any other agreement with Landlord, and that Landlord has no knowledge and has received no notice of any other lien or security interest in any property of Tenant. Landlord further agrees and consents that Agent may occupy the Property for the purpose of maintaining possession of the Collateral and preparing for and conducting a sale of the same whether private or public (including, without limitation, the finishing of work in process). In the event that Agent enters into occupation of the Property for the purpose set forth above, Agent shall be liable to Landlord for only reasonable use and occupancy charges for all such use and occupation, which charges shall not exceed the rental then paid by Tenant to Landlord for the Property.

AEC Abuelo's Ground Lease3    05/17/2000

Signed and sealed by Landlord on behalf of Landlord and the successors and assign s of Landlord this _____ day of _____, 2000.

**Landlord:**

Arrowhead Fountains Center, L.L.C.
an Arizona limited liability company

_____
By: Charles J. Speros, Managing Member

## MEMORANDUM
### (Unsubordinated Ground Lease)

This Memorandum of Unsubordinated Ground Lease is dated the _13th_ day of _December_ 2000 and is between Arrowhead Fountains Center, L.L.C., an Arizona limited liability company whose post office address is 2929 East Camelback, Suite 230, Phoenix, Arizona 85016-4495 ("LANDLORD "), and Food Concepts International, Inc., a Texas corporation, whose post office address is 7822 Orlando Avenue, Lubbock, Texas 79423 ("Tenant").

WHEREAS, Landlord and Tenant entered into a Net Ground Lease (the "Lease") with an Effective Date of April 28, 2000 for certain Premises situated in the City of Peoria, County of Maricopa, and State of Arizona as more particularly set forth in the Lease and described on Exhibit "A" attached hereto and made a part hereof as if fully rewritten herein;

WHEREAS, the fee title to the Premises can never be subordinated to any encumbrance of Tenant, but is subject to present and future encumbrances by Landlord; and

WHEREAS, the parties are desirous of placing their interests therein as a matter of record.

NOW, THEREFORE, in consideration of the mutual covenants herein contained and the parties intending to be legally bound thereby, the parties hereto hereby agree as follows:

1.      The term of the Lease shall commence on the _13th_ day of _December_ 2000, and terminate on the _31st_ day of _December_ _2016_.

2.      Tenant has the right and option to renew the Lease for four (4) additional period(s) of five (5) years each upon the terms, covenants and conditions set forth therein.

3.      So Long as Tenant operates an Abuelo's restaurant on the Premises, Landlord will not Lease, sublease or otherwise operate, or permit, or contract, by conveyance or otherwise, within Lots one (1) through ten (10), both inclusive, of the Arrowhead Entertainment Center Plat, to any full service Mexican Food Restaurant whose building exceeds six thousand (6,000) square feet.  Excluded from the restriction in this Article is a Mexican Style Cantina Restaurant whose beverage sales shall exceed forty percent (40%) of its annual gross revenues. This restriction shall automatically terminate on December 31, 2004.

IN WITNESS WHEREOF, the parties have executed this Memorandum of Unsubordinated Ground Lease the day and year first above written.

**Landlord:**

Arrowhead Fountains Center, L.L.C.
an Arizona limited liability company

By: Charles J. Speros
Its: Managing Member

**Tenant:**

Food Concepts International, Inc.
a Texas corporation

By: Charles L. Anderson
Its: President

AEC / Abuelo's / Memo of Ground Lease / 12/05/2000

STATE OF ARIZONA )
) ss
County of Maricopa )

BEFORE ME personally appeared Charles J. Speros to me well known and known to me to be the Managing Member of Arrowhead Fountains Center, L.L.C., an Arizona limited liability company and who executed the foregoing instrument, and acknowledged to and before me that he executed said instrument for the purposes therein expressed.

WITNESS my hand and official seal, this _7th_ day of _December_ 2000.

My Commission Expires: _____

NOTARY PUBLIC
STATE OF ARIZONA
Maricopa County
ROZANNE MACINTYRE
My Commission Expires 07/08/03

STATE OF TEXAS )
) ss
County of Lubbock )

BEFORE ME personally appeared Charles L. Anderson to me well known and known to me to be the President of Food Concepts International, Inc, a Texas corporation and who executed the foregoing instrument, and acknowledged to and before me that he executed said instrument for the purposes therein expressed.

WITNESS my hand and official seal, this _6th_ day of _December_ 2000.

My Commission Expires: _6-12-2004_

Diane L. Lindell
Notary Public, State of Texas
My Commission Expires
JUNE 12 2004

AEC / Abuelo's / Memo of Ground Lease / 12/05/2000

# EXHIBIT "A"

# DESCRIPTION

Being portions of Lot 10 and Tract M of ARROWHEAD ENTERTAINMENT CENTER, as recorded in Book 535 of Maps, page 27, records of Maricopa County, Arizona, being located in the Northeast quarter of Section 3, Township 3 North, Range 1 East of the Gila and Salt River Base and Meridian, Maricopa County, Arizona, being more particularly described as follows:

COMMENCING at the Northeast corner of said Lot 10;

THENCE South 18 degrees 24 minutes 12 seconds West along the East line of said Lot 10 a distance of 51.55 feet;

THENCE North 78 degrees 47 minutes 07 seconds West along the boundary of said Lot 10 a distance of 111.51 feet;

THENCE South 11 degrees 12 minutes 53 seconds West along the boundary of said Lot 10 a distance of 16.50 feet;

THENCE North 78 degrees 47 minutes 07 seconds West along the boundary of said Lot 10 a distance of 42.00 feet to the POINT OF BEGINNING;

THENCE South 11 degrees 12 minutes 53 seconds West 103.50 feet to the South line of said Lot 10;

THENCE North 78 degrees 47 minutes 07 seconds West along said South line and the Westerly prolongation thereof 137.88 feet to the Southerly prolongation of the West line of said Lot 10 from which the Southwest corner of said Lot 10 bears South 78 degrees 47 minutes 07 seconds East 0.66 feet;

THENCE North 17 degrees 16 minutes 53 seconds East along said West line and the Northerly prolongation thereof 129.40 feet;

THENCE South 78 degrees 28 minutes 10 seconds East 124.21 feet;

THENCE South 11 degrees 12 minutes 53 seconds West 24.49 feet to the POINT OF BEGINNING.

# GROUND LEASE TENANT ESTOPPEL CERTIFICATE

**STANCORP MORTGAGE INVESTORS, LLC**
**19225 TANASBOURNE DRIVE**
**HILLSBORO, OR 97124**                                    **SIC Loan No. B4062502**
**Jeannette Kimber, T3A**

Wherever the terms landlord, tenant or lease are used herein they shall be understood to mean Ground Landlord, Ground Tenant and Ground Lease.

|  |  |  |
|---|---|---|
| RE: | Lease dated: | April 28, 2000 |
|  | Landlord: | GRNOBL, L.C., a Utah limited liability company |
|  | Tenant: | Food Concepts International, ~~Inc.,~~ LP a Texas ~~corporation~~ limited partnership |
|  | Property Address: | 16092 N. Arrowhead Drive, Peoria, AZ 85382 |
|  | Square Footage Leased: | Approximately 16,822 square feet (0.39 acres) |
|  | Rent: | $9,075.00 per month |
|  | Lease Term: | 16 Years with Four 5-Year Options to Renew |
|  | Start Date: | December 13, 2000 |
|  | End Date: | December 31, 2016 |

Gentlemen and Ladies:

The undersigned, Tenant under the above-described lease (the "Lease"), hereby confirms and certifies to StanCorp Mortgage Investors, LLC **or its assigns** ("Lender"), as of the date hereof, the following:

1.      It has accepted possession and is in full and complete occupancy of the demised premises, such possession having been delivered by the Landlord pursuant to the terms of the Lease.

2.      The improvements required to be furnished by the terms of the Lease have been completed in all respects to the satisfaction of the undersigned and are open for the use of the undersigned, its customers, employees and invitees.  If applicable, certificates of occupancy have been issued.

3.      All duties of an inducement nature required of the Landlord in the Lease have been fulfilled.

4.      The Lease is in full force and effect, there is no existing default on the part of the Landlord or Tenant in the terms thereof, and the Lease has not been amended, modified, supplemented, assigned, sublet, cancelled or superseded, except as follows:

_____

5.      No rents have been prepaid except as provided by the Lease in the amount of $ NA . The undersigned does not have or hold any claim against Landlord that might be set off or credited against future accruing rents.

6.      Rents provided in the Lease commenced to accrue and have been paid to the first day of the current month. All additional rent has been paid and collected in a current manner. The amount of the security deposit is $ NA . There are no free rent or reduced rent concessions in the Lease, except as follows:

_____

7.      If Tenant is a corporation, the undersigned is a duly appointed officer of the corporation signing this certificate and is the incumbent in the office indicated under his or her name. The undersigned individual is duly authorized to execute this certificate.

8.      There are no other agreements written or oral between the undersigned and the Landlord with respect to the Lease and/or the leased premises and building.

This confirmation and certification is given to Lender with the understanding that Lender will be relying upon the accuracy of this confirmation in connection with the loan to be made by Lender to Landlord. This confirmation and certification shall inure to the benefit of the successors and assigns of Lender in ownership of the loan.

DATED this 28 day of July , 2014

Food Concepts International, Inc., LP
a Texas corporation limited partnership

By: _____

Its: President _____

By: _____

Its: _____

Exhibit A

PARCEL NO. 1:

A Portion of Lot 10 and Tract M, ARROWHEAD ENTERTAINMENT CENTER, according to the plat of record in the office of the County Recorder of Maricopa County, Arizona, in Book 535 of Maps, page 27, more particularly described as follows:

COMMENCING at the Northeast corner of said Lot 10;

Thence South 18 degrees 24 minutes 12 seconds West along the East line of said Lot 10, a distance of 51.55 feet;

Thence North 78 degrees 47 minutes 07 seconds West along the boundary of said Lot 10, a distance of 111.51 feet;

Thence South 11 degrees 12 minutes 53 seconds West along the boundary of said Lot 10, a distance of 16.50 feet;

Thence North 78 degrees 47 minutes 07 seconds West along the boundary of said Lot 10, a distance of 42.00 feet to the POINT OF BEGINNING;

Thence South 11 degrees 12 minutes 53 seconds West, a distance of 103.50 feet to the South line of said Lot 10;

Thence North 78 degrees 47 minutes 07 seconds West along said South line and Westerly prolongation thereof 137.88 feet to the Southerly prolongation of the West line of said Lot 10 from which the Southwest corner of said Lot 10 bears South 78 degrees 47 minutes 07 seconds East, a distance of 0.66 feet;

Thence North 17 degrees 16 minutes 53 seconds East, along the west line and the northerly prolongation thereof, a distance of 129.40 feet;

Thence South 78 degrees 28 minutes 10 seconds East, a distance of 124.21 feet;

Thence South 11 degrees 12 minutes 53 seconds West, a distance of 24.49 feet to the point of beginning

PARCEL NO. 2:

A nonexclusive easement for ingress and egress and parking purposes as created, granted and more particularly described in that certain instrument entitled "Restrictions and Easements" recorded October 28, 1999, in Document No. 19990994023, Maricopa County Records.

PARCEL NO. 3:

The exclusive and nonexclusive easements and rights of ingress and egress, parking, utilities and other purposes by or pursuant to that certain instrument entitled "Declaration of Covenants, Conditions and Restrictions for Arrowhead Entertainment Center" recorded June 26, 2000, in Document No. 20000484710, Maricopa County Records.

**FIRST AMENDMENT TO GROUND LEASE AGREEMENT**

THIS FIRST AMENDMENT TO GROUND LEASE AGREEMENT (this "**First Amendment**") is made and entered into effective this 16th day of June, 2020 (the "**Effective Date**") by and between Gmobl, L.C., a Utah limited liability company ("**Landlord**") and Food Concepts International, LP, a Texas limited partnership ("**Tenant**") collectively the "**Parties.**"

**RECITALS:**

A.       Landlord's predecessor in interest, Arrowhead Fountains Center, L.L.C., and Tenant entered into that certain Ground Lease Agreement with an effective date on or about June 19, 2000  (the "**Lease**") with respect to the premises located at 16092 N. Arrowhead Fountains Center Dr., Peoria, Arizona 85382 601 (the "**Premises**").

B.       On March 13, 2020, President Donald J. Trump issued a proclamation declaring a national emergency concerning the novel Coronavirus Disease (COVID-19) Outbreak and both federal and state governments took actions to respond to the threat of COVID-19.

C.       Tenant has failed to pay rent for the months of April, May and June of 2020.

D.       The Parties desire to amend the Lease to provide some temporary relief to Tenant due to the effects of COVID-19.

**AGREEMENT:**

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.       **Deferred Rental**.  The Parties agree that one half (1/2) of the Monthly Rent Installments due in April, May, and June of 2020 under Section 22 of the Lease shall be deferred and the total amount of Monthly Rent Installments deferred for those three months shall be paid in nine (9) monthly installments of $1,702.02 beginning on April 1, 2021 with the final installment being paid on or before December 1, 2021 in addition to the other rent due and owing each month under the Lease. Tenant shall remain responsible for all other amounts due and owing under the Lease and shall pay the other half of the Monthly Rent Installment payments for April, May and June 2020 (totaling $15,318.17) within seven (7) days of the Tenant's execution of this First Amendment.

2.       **No Default**.  Landlord expressly agrees that so long as Tenant complies with the terms and conditions set forth herein, Landlord will not claim, for any purpose of the Lease, that an event of default has occurred under the Lease due to Tenant's failure to pay all or any part of rent otherwise due for the months of April 2020, May 2020 or June 2020.  As such, Landlord will not seek to impose any late fees or interest as may have otherwise been permitted under the Lease.

3.       **No Other Changes**.  Except as amended in this First Amendment, all of the terms, conditions, agreements and provisions set forth in the Lease, remain unaffected, and they hereby are reaffirmed, ratified, confirmed and approved in their entirety and shall remain in full force and effect.

1

4.      **Capitalized Terms**. Any capitalized term not defined herein shall have the same meaning as set forth in the Lease.

5.      **Effective Date**. The "Effective Date" of this First Amendment shall be the date set forth above.

6.      **Counterparts and Electronic Signatures**.    This First Amendment may be executed in a number of identical counterparts which, taken together, shall constitute collectively one and the same document; but in making proof of this First Amendment, it shall not be necessary to produce or account for more than one such counterpart.  Additionally, (i) the signature pages taken from separate individually executed counterparts of this First Amendment may be combined to form multiple fully-executed counterparts; and (ii) a facsimile signature or an electronically scanned signature, shall be deemed to be an original signature for all purposes.  All executed counterparts of this First Amendment shall be deemed to be originals, but all such counterparts, when taken together, shall constitute one and the same document.

EXECUTED by the parties hereto in multiple copies, each of which shall be deemed to be an original, on the dates set forth below.

*Signatures on following page*

**LANDLORD:**

GRNOBL, L.C.,
a Utah limited liability company

By: _____

Name: _____

Title: _____

Date of Execution: _____ , 2020

**TENANT:**

FOOD CONCEPTS INTERNATIONAL, LP, a
Texas limited partnership,
By: Food Concepts GPH, LLC, a Delaware limited
liability company, its General Partner

By: _____

Name: _____

Title: _____

Date of Execution: _____ , 2020

3



# FOOD CONCEPTS

## INTERNATIONAL

May 17, 2021

GRNOBL, LC
150 North 1050 West
Centerville, UT 84014
Attention:  Mr. Mark Green

Re:  Lease Option Exercise for Food Concepts International, LP

Reference is made to the Lease dated April 28, 2000 ("Lease") between Arrowhead Fountain Center, LLC (the "Original Landlord") and Food Concepts International, Inc. (now Food Concepts international, LP through statutory conversion, "Tenant"). GRNOBL, LC, a Utah limited liability company is now the successor landlord (the "Landlord").

Pursuant to Section 22 of the Lease, Tenant hereby notifies Landlord that it is exercising its option to extend the term of the Lease for 5 years as provided therein.

Very truly yours,

FOOD CONCEPTS INTERNATIONAL, LP

By: _____

Robert Lin
President

4413 82nd St., Ste. 250    Lubbock, TX  79424    806.785.8686    F: 806.785.8866