Joseph F. Postnikoff
State Bar No. 16168320
Email: jpostnikoff@romclaw.com
ROCHELLE MCCULLOUGH PLLC
300 Throckmorton Street, Suite 520
Fort Worth, TX 76102
Telephone: 817.347.5260
Facsimile: 817.347.5269
http://www.romclaw.com

Curt Hochbein
IN Bar No.2984-29
Email: chochbein@romclaw.com
ROCHELLE MCCULLOUGH PLLC
300 North Meridian Street, Suite 1260
Indianapolis, IN 46204
Telephone: 317.608.1137
Facsimile: 888.467.5979
http://www.romclaw.com

J. Mark Chevallier
State Bar No. 04189170
Email: mchevallier@romclaw.com
Michael T. Pipkin
State Bar No. 24122988
Email: mpipkin@romclaw.com
ROCHELLE MCCULLOUGH PLLC
901 Main Street, Suite 3200
Dallas, TX 75202
Telephone: 214.953.0182
Facsimile: 888.467.5979
http://www.romclaw.com

COUNSEL FOR DEBTORS IN POSSESSSION

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Chapter 11** |
| | § | |
| **ABUELO'S INTERNATIONAL, LP, *et al.*,[1]** | § | **Case No. 25-4339-elm11** |
| | § | |
| **Debtors.** | § | **Joint Administration Requested** |

---

# DEBTORS' AMENDED JOINT PLAN OF REORGANIZATION

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, include: Abuelo's International, LP (1108), Food Concepts International, L.P. (5079) and Food Concepts International Holdings, Inc. (2576).

# ARTICLE I

# <u>INTRODUCTION</u>

Abuelo's International, LP, Food Concepts International, L.P. and Food Concepts International Holdings, Inc., jointly administered debtors and debtors-in-possession in the above-referenced cases (the "**Debtors**"), propose this *Amended Joint Plan of Reorganization* (the "**Plan**") for the reorganization of their business and resolution of the outstanding Claims against them, and Interests in them, under Chapter 11 of the Bankruptcy Code.

Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in Article I.A of the Plan. Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, business, assets, results of operations, historical financial information, events during the Chapter 11 Case, and projections of future operations, as well as a summary and description of the Plan and certain related matters. The Debtor is the proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS THAT ARE ENTITLED TO VOTE ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

1.1.     **Background of the Debtors**. Food Concepts International Holdings, Inc. ("FCIH") is the sole member of the general partner of Food Concepts International, L.P., a Texas limited partnership ("FCI").  FCI is the 99.99% limited partner of the Abuelo's International, L.P., a Texas limited partnership ("ABI").  The Debtors own and operate a chain of full-service, casual dining restaurants serving made-from-scratch Mexican food.  The Debtors' first restaurant opened in 1989, and as of the Petition date they operated a total of 16 restaurants located in 7 states throughout the nation.

On September 2, 2025 (the "**Petition Date**"), the Debtors commenced this Chapter 11 Case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code. The Debtors have remained debtors-in-possession during the pendency of this Chapter 11 Case and now moves to reorganize.

1.2.     **Summary of the Plan**. The Plan is a comprehensive proposal by the Debtors to address the Claims against them and reorganize their business. In general, the Plan provides as follows:

(a)     **Continuation of Business**. The Plan provides for (i) the continuation of the business of the Debtors following a downsizing of operations to a core number of stores (ii) conversion of the DIP Loan to equity in the Reorganized Debtors and (iii) payments to creditors with Allowed Claims as set forth herein. Upon confirmation of the Plan, the Reorganized Debtors will be well-positioned to take the actions necessary to continue the existing business, maximizing their cash flow and using the income from the business to make the required Plan payments.

**ARTICLE II**

**DEFINED TERMS, RULES OF INTERPRETATION,
COMPUTATION OF TIME, AND GOVERNING LAW**

**A.      Defined Terms**

2.1.    "**Administrative Expense Claim**" means any claim for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code, including the actual, necessary costs and expenses, incurred on or after the Petition Date, of preserving the Debtors' Estate and operating the Debtors' business, including wages or salaries for services rendered after the Petition Date and through the Plan Effective Date, claims under section 503(b)(9) of the Bankruptcy Code, any Professional Claim approved for payment by the Debtors' Estate to the extent allowed under sections 330 or 503 of the Bankruptcy Code, all fees and charges assessed against the Debtors. Estate under section 1930 of chapter 123 of title 28 of the United States Code, and all Claims that are entitled to be treated as Administrative Expense Claims pursuant to a Final Order of the Bankruptcy Court (under section 546(c)(2)(A) of the Bankruptcy Code or otherwise).

2.2.    "**Affiliate**" has the meaning set forth in section 101(2) of the Bankruptcy Code.

2.3.    "**Allowed**" means, with reference to any Claim or Interest, a Claim or Interest (a) arising on or before the Plan Effective Date as to which (i) no objection to allowance or priority, and no request for estimation or other challenge, including, pursuant to section 502 of the Bankruptcy Code or otherwise, has been interposed and not withdrawn within the applicable period fixed by the Plan or applicable law, or (ii) any objection or dispute has been determined in favor of the Holder of the Claim or Interest by a Final Order, (b) that is compromised, settled, or otherwise resolved pursuant to the authority of the Debtors or the Reorganized Debtors, (c) as to which the liability of the Debtors or the Reorganized Debtors, as applicable, and the amount thereof is determined by a Final Order of a court of competent jurisdiction, or (d) expressly allowed hereunder; provided, that notwithstanding the foregoing, (x) unless expressly waived by the Plan, the Allowed amount of Claims or Interests shall be subject to (and shall not exceed) all limitations or maximum amounts permitted set forth in the Bankruptcy Code, including sections 502, 503 or 510 of the Bankruptcy Code, to the fullest extent applicable, and (y) the Reorganized Debtors shall retain all claims and defenses with respect to Allowed Claims that are Reinstated or otherwise Unimpaired pursuant to the Plan.

2.4.    "**Assumed Contracts Schedule**" means that certain schedule of assumed Executory Contracts and Unexpired Leases attached as an exhibit to the Plan Supplement.

2.5.    "*Bankruptcy Case*" means the above-captioned voluntary chapter 11 cases commenced by the Debtors on the Petition Date.

2.6.    "**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101- 1532.

2.7.    "**Bankruptcy Court**" means the United States Bankruptcy Court for the Northern District of Texas or such other court having jurisdiction over the Chapter 11 Case.

---

2.8.    "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure promulgated by the United States Supreme Court pursuant to 28 U.S.C. § 2075, as amended from time to time and as applicable to the Chapter 11 Case, and the general, local, and chamber rules of the Bankruptcy Court.

2.9.    "**Bar Date**" means the deadline by which a Claim must have been timely filed. The general Bar Date is January 6, 2026, as to Creditors with prepetition Claims and is March 1, 2026, for Governmental Units.

2.10.    "**Business Day**" means any day other than a Saturday, Sunday, "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or day on which commercial banks in Texas are required or authorized by law to remain closed.

2.11.    "**Cash**" means legal tender of the United States of America and equivalents thereof.

2.12.    "**Causes of Action**" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertible, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise, including without limitation: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

2.13.    "**Claim**" means any "claim," as such term is defined in section 101(5) of the Bankruptcy Code, against the Debtor.

2.14.    "**Class**" means a category of Holders of Claims or Interests under section 1122(a) of the Bankruptcy Code.

2.15.    "**Confirmation**" means the entry of the Confirmation Order on the docket of the Bankruptcy Case.

2.16.    "**Confirmation Date**" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Case within the meaning of Bankruptcy Rules 5003 and 9021.

2.17.    "**Confirmation Hearing**" means the hearing held by the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Debtors seek entry of the Confirmation Order, as such hearing may be continued from time to time.

2.18.    "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

2.19.    "**Consummation**" means the occurrence of the Plan Effective Date.

2.20.    **"Convenience Class Claim"** means an Unsecured Claim (i) Scheduled or Filed in an amount less than or equal to $2,500.00, or (ii) Allowed in an amount less than or equal to $2,500.00.

2.21.    "**Cure**" means a Claim (unless waived or modified by the applicable counterparty) for cure of Debtors' default under an Executory Contract assumed by the Debtors pursuant to section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

2.22.    "**Debtors**" means Abuelo's International, LP, Food Concepts International, L.P. and Food Concepts International Holdings, Inc.

2.23.    **"DIP Lenders"** means G. Randall Andrews and David Sharbutt.

2.24.    **"DIP Loan"** means the convertible super priority Debtor in Possession loan made to FCIH and FCI by the DIP Lenders in the principal amount of $1,500,000.

2.25.    "**Disallowed**" means with respect to any Claim or Interest, such Claim or Interest or portion thereof that (i) has been disallowed or expunged by a Final Order or by a specific provision of the Plan, or (ii) has been agreed to by the Holder of such Claim or Interest and the applicable Debtor to be equal to $0 or to be expunged.

2.26.    "**Disclosure Statement**" means the disclosure statement for the Plan, including any exhibits, appendices, schedules, ballots, and related documents thereto, as amended, supplemented or modified in accordance with applicable law, and any procedures related to the solicitation of votes to accept or reject the Plan.

2.27.    "**Disputed**" means, with respect to any Claim or Interest, a Claim or Interest that is not yet Allowed, including (a) any Proof of Claim or request for payment of an Administrative Expense Claim filed after the Plan Effective Date or the deadline for filing Proofs of Claim based on the Debtors' rejection of Executory Contracts, and (b) any Claim that is subject to an objection or a motion to estimate, in each case that has not been withdrawn, resolved, or ruled on by a Final Order of the Bankruptcy Court.

2.28.    "**Distribution Date**" means, except as otherwise set forth herein, the date or dates determined by the Debtors, on or after the Plan Effective Date, upon which the Reorganized Debtors shall begin to make distributions to Holders of Allowed Claims and/or Interests entitled to receive distributions under the Plan.

2.29.    "**Distribution Record Date**" means the Confirmation Date.

2.30.    "**Entity**" means any "entity," as such term is defined in section 101(15) of the Bankruptcy Code.

2.31.    "**Estate**" means the estate of the Debtors created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the Debtors' Bankruptcy Case.

2.32.    "**Exculpated Party**" means, collectively, (a) the Debtors; (b) the Debtors' Professionals; (c) the official committees appointed in the Bankruptcy Case (if any) and each of

their respective members and any Professional; and (d) with respect to each of the foregoing, such Entities' current officers, managers, directors, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, and other professionals, and such persons' respective heirs, executors, estates, servants and nominees.

2.33.   "**Executory Contract**" means a contract or lease to which any Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

2.34.   "**Exit Financing**" means a secured loan to the Reorganized Debtors from _____, in an amount sufficient to pay the FBT Payoff amount on the Effective Date.

2.35.   "**Final Decree**" means the decree contemplated under Bankruptcy Rule 3022 closing the Bankruptcy Case.

2.36.   "**FBT**" means First Bank & Trust, Lubbock, Texas, a state bank.

2.37.   "**FBT Notes**"  means (i) that certain Promissory Note dated December 12, 2013 in the original principal amount of $3,500,000 ("Construction Note") and all amendments thereto, (ii) that certain Promissory Note dated May 18, 2017 in the original principal amount of $2,857,083 ("2017 Term Note") and all amendments thereto, (iii) that certain Promissory Note dated May 18, 2018 in the original principal amount of $2,000,000 ("2018 Term Note), (iv) that certain Promissory Note dated October 21, 2019 in the original principal amount of $2,500,000 ("2019 Term Note") and all amendments thereto, and (v) that certain revolving loan evidenced by a Promissory Note dated August 18, 2024, and amended August 26, 2025, in the principal amount of $2,000,000.00, all having a combined principal balance of $8,031,428.00 as of the Petition Date.

2.38.   "**FBT Payoff Amount**" means the sum of (i) $6,600,000.00 plus (ii) all accrued and unpaid interest under the FBT Notes as of the Effective Date which shall satisfy in full the FBT Secured Claims and all amounts claimed as due and owing pursuant to the FBT Notes.

2.39.   "**FBT Secured Claims**" means all Claims asserted in this case by FBT arising from the FBT Notes.

2.40.   "**Final Order**" means, as applicable, an order, ruling or judgment of the Bankruptcy Court or any other court of competent jurisdiction or governmental authority, as applicable, which has not been reversed, vacated or stayed and as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing will then be pending, or as to which any right to appeal, petition for certiorari, or motion to reargue or rehear will have been waived in writing in form and substance satisfactory to the Debtors, or on and after the Plan Effective Date the Reorganized Debtors, or in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court, or other court of competent jurisdiction (as applicable) will have been determined by the highest court to which such order was appealed, or certiorari, reargument or rehearing will have been denied and the time to take any further appeal, petition for certiorari or move for reargument or rehearing will have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the

Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state or provincial court rules of civil procedure, may be filed with respect to such order will not cause such order not to be a Final Order.

2.41. "**General Unsecured Claim**" means any Claim against a Debtor as of the Petition Date, other than an Administrative Expense Claim, a Priority Claim, a Wage Priority Claim, a Secured Tax Claim, an FBT Secured Claim, a Convenience Class Claim or an Other Secured Claim.

2.42. "**General Unsecured Claim Distribution**" means the pro-rata distribution to be made to Holders of Allowed General Unsecured Claims in the amount of 10% of the total Allowed Unsecured Claim, which distributions shall be made as set forth in Article 4.6 of the Plan.

2.43. "**Governmental Unit**" has the meaning set forth in section 101(27) of the Bankruptcy Code.

2.44. "**Holder**" means the beneficial holder of a Claim or Interest.

2.45. "**Impaired**" is used to describe a Claim or an Interest that is not Unimpaired.

2.46. "**Insider**" has the meaning set forth in section 101(31) of the Bankruptcy Code.

2.47. "**Interest**" means any limited partnership interests, equity, ownership, profit interest, unit, or share in the Debtors.

2.48. "**Lien**" means a "lien" as such term is defined in section 101(37) of the Bankruptcy Code.

2.49. "**Other Secured Claim**" mean, with respect to Claims, any Claim against the Debtor as of the Petition Date that is secured by an asset of the Debtor as collateral, other than a Secured Tax Claim, or the FBT Secured Claims.

2.50. "**Person**" means an individual, corporation, general partnership, limited partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization, Governmental Unit (as defined in section 101(27) of the Bankruptcy Code) or any political subdivision thereof, or other person (as defined in section 101(41) of the Bankruptcy Code) or entity, or the United States Trustee.

2.51. "**Petition Date**" means September 2, 2025, being the date on which the Bankruptcy Case was commenced.

2.52. "**Plan**" means this Chapter 11 plan, including the Plan Supplement and all exhibits, supplements, appendices, and schedules.

2.53. "**Plan Effective Date**" means the date upon which (a) no stay of the Confirmation Order is in effect and the Confirmation Order is a Final Order, (b) all conditions precedent to the effectiveness of the Plan have been satisfied or are expressly waived in accordance with the terms thereof, as the case may be, (c) the transactions to occur on the Plan Effective Date pursuant to the

Plan become effective and are consummated, and (d) the substantial consummation (as defined in section 1101 of the Bankruptcy Code) of the Plan occurs.

2.54. "**Plan Supplement**" means one or more compilations of documents and forms of documents, instruments, schedules and exhibits to the Plan, as each such document, agreement, instrument, schedule and exhibit and form thereof may be altered, restated, modified or replaced from time to time, including after the filing of any such documents. Each such document, agreement, instrument, schedule or exhibit, or form thereof, is referred to herein as a "Plan Supplement."

2.55. "**Priority Claim**" means any Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code.

2.56. "**Priority Tax Claim**" means any Tax Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code.

2.57. "**Priority Wage Claim**" means any Priority Claim entitled to priority pursuant to section 507(a)(4) or (a)(5) of the Bankruptcy Code.

2.58. "**Professional**" means any Entity: (a) employed in the Bankruptcy Case pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Plan Effective Date pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

2.59. "**Professional Claim**" means any Claim by a Professional for Professional Fees.

2.60. "**Professional Fees**" means the accrued, contingent, and/or unpaid compensation for services rendered, and reimbursement for expenses incurred, by Professionals, that: (a) are awardable and allowable pursuant to sections 327, 328, 329, 330, 331, 503(b) and/or 1103 of the Bankruptcy Code or otherwise rendered allowable prior to the Confirmation Date; (b) have not been denied by the Bankruptcy Court by Final Order; (c) have not been previously paid (regardless of whether a fee application has been filed for any such amount); and (d) remain outstanding after applying any retainer that has been provided to such Professional.

2.61. "**Proof of Claim**" means a proof of Claim filed against the Debtors in the Bankruptcy Case.

2.62. "**Record Date**" means the date on which the Bankruptcy Court enters its Order approving the Disclosure Statement.

2.63. "**Reinstated**" or "**Reinstatement**" means, with respect to any Claim, that the Claim shall be rendered unimpaired in accordance with section 1124 of the Bankruptcy Code, notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the holder to demand or receive payment of such Claim prior to the stated maturity of such Claim from and after the occurrence of a default.

2.64. "**Rejection Claim**" means, with respect to Claims, a Claim arising against the Debtor as a result of the Debtor's rejection of an Executory Contract in accordance with Article V of the Plan.

2.65. "**Released Party**" means, collectively, each of the following in their respective capacities as such: (a) the Exculpated Parties and (b) with respect to each of the foregoing, such Entities' current officers, managers, directors, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, and other professionals, and such persons' respective heirs, executors, estates, servants and nominees.

2.66. "**Releasing Party**" means the Debtors and the Reorganized Debtors.

2.67. "**Reorganized Debtors**" means the Reorganized FCIH, FCI and ABI as reorganized on the Plan Effective Date.

2.68. "**Secured Claim**" means any Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order to the extent of the value of the creditor's interest in the Estate's interest in such property as determined pursuant to section 506(a) of the Bankruptcy Code, or (b) subject to setoff pursuant to section 553 of the Bankruptcy Code to the extent of the amount subject to setoff.

2.69. "**Secured Tax Claim**" mean, with respect to Claims, any Tax Claim against the Debtors as of the Petition Date by a governmental taxing authority that is secured by an asset of the Debtors.

2.70. "**Securities Act**" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa, together with the rules and regulations promulgated thereunder, or any similar federal, state, or local law.

2.71. "**Security**" has the meaning set forth in section 2(a)(1) of the Securities Act.

2.72. "**Tax Claims**" mean any and all Secured or Priority Claims of any Entity for the payment of any Taxes (a) accorded a priority pursuant to §507(a)(8) of the Code, or (b) secured by valid Liens on assets of the Debtors existing on the Confirmation Date.

2.73. "**Unclaimed Distribution**" means any distribution under the Plan on account of an Allowed Claim or Allowed Interest to a holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Reorganized Debtors of an intent to accept a particular distribution; (c) responded to the Debtors' or Reorganized Debtors' requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

2.74. "**Unimpaired**" is used to describe a Class of Claims or Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

2.75. "**U.S. Trustee**" means the Office of the United States Trustee for the Northern District of Texas.

**B.      Rules of Interpretation**

For purposes of the Plan: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (e) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply other than section 102(5) of the Bankruptcy Code, which shall not apply herein; (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (i) references to docket numbers of documents filed in the Bankruptcy Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (j) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like as applicable; (k) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation;" and (l) any immaterial effectuating provisions may be interpreted by the Debtors or the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

**C.      Computation of Time**

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may or shall occur pursuant to the Plan is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

**D.      Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); provided, however, that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, shall be governed by the laws of the state of incorporation or formation of the Debtors or Reorganized Debtors, as applicable.

### E.        Reference to Monetary Figures

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

### F.        Conflicts

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

## ARTICLE III

## ADMINISTRATIVE CLAIMS, PRIORITY
## TAX CLAIMS, AND PROFESSIONAL CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Priority Tax Claims, and Professional Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article IV of the Plan.

### A.        Administrative Expense Claims

On the Plan Effective Date or as soon thereafter as such Allowed Administrative Expense Claim becomes due and payable according to its terms, Allowed Administrative Expense Claims shall be paid in full in Cash by the Reorganized Debtors from Cash on hand, except to the extent that any Holder of an Allowed Administrative Expense Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Administrative Expense Claim.

### B.        Professional Fees

Holders of Administrative Claims for Professional Fees shall file and serve applications for final allowance and payment of their Professional Claim no later than the first Business Day that is forty-five (45) days after the Plan Effective Date. Objections to any Professional Claim must be filed and served on the Reorganized Debtors and the applicable Professional within thirty (30) days after the filing of the final fee application with respect to the Professional Claim.  A hearing to consider final fee application of a Professional, and any outstanding objections thereto, shall be scheduled for a date and time as the Bankruptcy Court directs.

From and after the Plan Effective Date, any requirement that a Professional comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

### C.        Priority Tax Claims

Except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtors or the Reorganized Debtors, as applicable, agree to less favorable treatment, in full and final satisfaction,

settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive, at the option of the Reorganized Debtors: (a) payment in full of such Allowed Priority Tax Claim on the Distribution Date; or (b) treatment in accordance with the provisions of Sections 1129(a)(9)(C) or 1129(a)(9)(D) of the Bankruptcy Code, as the case may be, by payment in full amortized over 42 equal monthly installments (the "**Installment Period**"), with interest on such Allowed Priority Tax Claims after the Plan Effective Date in accordance with Sections 511 and 1129(a)(9)(C) of the Bankruptcy Code, beginning on the Plan Effective Date.

Such Installment Period payments shall commence on the first Business Day of the first month that is not less than thirty (30) days after the Plan Effective Date and shall continue to be paid on the first Business Day of each month thereafter. To the extent there is then any outstanding balance on an Allowed Priority Tax Claim, it shall be paid on the first Business Day of the sixtieth (60th) month following the Petition Date.

**D.     Statutory Fees**

On or before the Plan Effective Date, the Debtors shall have paid in full in Cash all fees due and payable pursuant to section 1930 of Title 28 of the United States Code. On and after the Plan Effective Date, the Reorganized Debtors shall timely pay all such fees when due and payable and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee for each quarter (or portion thereof) that such Debtor's case remains open. The Reorganized Debtors shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of the case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

**ARTICLE IV**

**CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS**

**A.     Classification of Claims and Interests**

Except for the Claims addressed in Article III of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with section 1122 of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Plan Effective Date. The Debtors reserve the right to assert that the treatment provided to Holders of Claims and Interests pursuant to Article IV.B of the Plan renders such Holder Unimpaired.

Below is a chart assigning each Class a number for purposes of identifying each separate Class.

| Class | Claims or Interests | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote |

| 2 | Priority Wage Claims | Unimpaired | Not Entitled to Vote |
|---|---|---|---|
| 3 | Secured Tax Claims | Unimpaired | Not Entitled to Vote |
| 4 | FBT Secured Claims | Impaired | Entitled to Vote |
| 5 | Other Secured Claims | Impaired | Entitled to Vote |
| 6 | General Unsecured Claims | Impaired | Entitled to Vote |
| 7 | Convenience Class Claims | Impaired | Entitled to Vote |
| 8 | FCIH Interest Holders | Impaired | Not Entitled to Vote, Deemed to Reject |

**B.      Treatment of Claims and Interests**

Each Holder of an Allowed Claim or Allowed Interest, as applicable, will receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by: (a) the Debtors; and (b) the Holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, will receive such treatment on the Plan Effective Date or as soon as reasonably practicable thereafter.

4.1.    **Class 1 – Other Priority Claims**

(a)     *Classification.* Class 1 consists of the Other Priority Claims. For the purposes of classification and treatment under the Plan, "Other Priority Claims" means all Priority Claims not addressed or otherwise subject to treatment under Article III of the Plan that are not Priority Wage Claims.

(b)     *Treatment.* Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Priority Claim, each such Holder shall receive, at the option of the Reorganized Debtors, either:

i.      payment in full in Cash; or

ii.     other treatment rendering such Claim Unimpaired or otherwise permitted by the Bankruptcy Code and equitable to that described in Article III.D.

(c)     *Voting.* Class 1 is Unimpaired under the Plan. Holders of Claims in Class 1 are not entitled to vote to accept or reject the Plan.

4.2.    **Class 2—Priority Wage Claims**

(a)    *Classification.* Class 2 consists of Priority Wage Claims.

(b)    *Treatment.* Except to the extent that a Holder of an Allowed Wage Priority Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Wage Priority Claim, each such Holder shall receive, at the option of the Reorganized Debtors, either:

    i.    payment in full in Cash within 90 days from the Effective Date; or

    ii.    other treatment rendering such Claim Unimpaired or otherwise permitted by the Bankruptcy Code and equitable to that described in Article III.D.

(c)    *Voting.* Class 2 is Unimpaired under the Plan. Holders of Claims in Class 2 are not entitled to vote to accept or reject the Plan.

4.3.    **<u>Class 3 – Secured Tax Claims</u>**

(a)    *Classification.*  Class 3 consists of the Secured Tax Claims.

(b)    *Treatment.* Except to the extent that a Holder of an Allowed Secured Tax Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Secured Tax Claim, each Holder shall receive, at the option of the Reorganized Debtors, either:

    i.    payment in full in Cash; or

    ii.    other treatment rendering such Claim Unimpaired or otherwise permitted by the Bankruptcy Code and equitable to that described in Article III.D.

(c)    *Collateral.* Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interests securing an Allowed Secured Tax Claim shall remain in full force and effect following the Plan Effective Date. To the extent necessary, the Debtors grant each such Holder of an Allowed Secured Tax Claim replacement liens and security interests in accordance with the Bankruptcy Code co-extensive with any pre-existing liens held by such creditor, with such replacement liens being automatically perfected without the need for further record filings.

(d)    *Voting.* Class 3 is Unimpaired under the Plan. Holders of Claims in Class 3 are not entitled to vote to accept or reject the Plan.

4.4. **Class 4 – FBT Secured Claims**

   (a)   *Classification.* Class 4 consists of the FBT Secured Claims.

   (b)   *Treatment.* Except to the extent that a Holder of an Allowed FBT Secured Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for the Allowed FBT Secured Claims, FBT shall receive the FBT Payoff Amount on the Effective Date.

   (c)   *Voting.* Class 5 is Impaired under the Plan. Holders of Claims in Class 5 are entitled to vote to accept or reject the Plan.

4.5. **Class 5 – Other Secured Claims**

   (a)   *Classification.* Class 5 consists of Other Secured Claims.

   (b)   *Treatment.* Holders of Other Secured Claims shall receive, in full and final satisfaction, settlement, release, and discharge of and in exchange for the each such Secured Claim, a note bearing a principal amount equal to the amount of the Class 5 Claim, as determined by the Bankruptcy Court or agreement of the parties, with a fully amortized term of sixty (60) months and with interest on such Class 5 Claim after the Plan Effective Date at the Plan Rate.

   (c)   *Collateral.* Except to the extent inconsistent herewith or with the law, the validity and priority of any Lien securing an Other Secured Claim shall remain in full force and effect following the Plan Effective Date with the same lien priority which existed on the Petition Date.

   (d)   *Voting.* Class 5 is Impaired under the Plan. Holders of Claims in Class 5 are entitled to vote to accept or reject the Plan.

4.6. **Class 6– General Unsecured Claims**

   (a)   *Classification.* Class 6 consists of the Allowed General Unsecured Claims.

   (b)   *Treatment.* Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed General Unsecured Claim, each such Holder shall receive its pro rata share of the General Unsecured Creditor Distribution payable over 20 equal quarterly installments without interest on such Allowed General Unsecured Claims after the Plan Effective Date. The initial General Unsecured Creditor Distribution shall be made on the last day of the first full quarter following the Plan Effective Date.

   (c)   *Voting.* Class 6 is Impaired under the Plan. Holders of Claims in Class 6 are entitled to vote to accept or reject the Plan.

4.7.  **Class 7 – Convenience Class Claims**

(a)  *Classification.*  Class 7 consists of Convenience Class Claims.

(b)  *Treatment.*  All Holders of Convenience Class Claims shall receive in full and final satisfaction, settlement, release, and discharge of and in exchange for each Convenience Class Claim, 20% of their Allowed Claim amount which shall be paid within 90 days following the Effective Date.

(c)  *Voting.*  Class 7 is Impaired under the Plan.  Holders of Claims in Class 7 are entitled to vote to accept or reject the Plan.

4.8.  **Class 8 – Interest Holders**

(a)  *Classification.*  Class 8 consists of the Interest Holders of FCIH.

(b)  *Treatment.*  Holders of Interests in FCIH shall receive nothing under this Plan on account of their existing Interests in FCIH and such Interests shall be cancelled on the Effective Date, provided that holders of Interests in FCIH on the Record Date shall be offered the right to participate in the equity rights offering described in Article V.B. of this Plan.

(c)  *Voting.*  Class 8 is Impaired under the Plan.  Holders of Interests in Class 8 are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

C.  **Special Provisions Governing Treatment of Certain Class Groupings**

4.9.  **Optional Prepayment**. In the sole discretion of the Reorganized Debtors, any Allowed Claim in Classes 1, 2, 3, 4, 5 and 6 may be prepaid, in full or in part, without penalty or fee at any time.

D.  **Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

E.  **Elimination of Vacant Classes**

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

F.  **Subordinated Claims**

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtors reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### G.      Controversy Concerning Impairment

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

### H.      Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to the Plan. The Debtors will seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Impaired Class of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

### A.      General Settlement of Claims and Interests

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Plan Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, the Estate, and Holders of Claims and Interests and is fair, equitable, and is within the range of reasonableness. Subject to Article VI of the Plan, all distributions made to Holders of Allowed Claims and Allowed Interests in any Class are intended to be and shall be final.

### B.      DIP Conversion and Equity Rights Offering.

**DIP Conversion.** On the Effective Date, the principal balance of the DIP Loan shall be fully satisfied and converted to equity in FCIH on the following terms:

(a) $1,000,000 of the principal amount shall be converted into 50 shares of Series A Super Voting Preferred Stock of FCIH. This Super Voting Preferred Stock shall have (i) no liquidation preference, but on sale or liquidation, it will receive the equivalent consideration as 40,000 shares of Common Stock of FCIH per Preferred Share (ii) common stock voting rights of 120,000 votes per Preferred Share and (iii) dividend rights equal to 40,000 shares of common stock per share.

(b) $500,000 of principal amount shall be converted into 10 shares of Series B Non Voting 8.5% pay in kind ("PIK") Preferred Stock of FCIH. This Series B PIK Preferred Stock shall have (i) a $60,000 liquidation preference per share, (ii) no voting rights, (iii) dividend rights equal to 100,000 shares of common stock per share, (iv) PIK dividend rights which shall accumulate quarterly at 2.125%, and (v) shall be callable after 3 years. In the event of no call, the PIK Dividend Rate shall increase by 1% beginning in year 4 with further 1% increases annually with a maximum rate of 12%.

**Equity Rights Offering.** Each Holder of Interests in FCIH as of the Record Date shall be offered the exclusive, non-assignable pro-rata right to subscribe to both the Super Voting Preferred Stock and the PIK Preferred Stock described above. Fractional shares of each issue will be offered. The documents describing these offerings in further detail will be included in the Plan Supplement. Any subscriber to the Super Voting Preferred Stock shall be required to indemnify the guarantor(s) of the Exit Financing in an amount of $100,000 per share with any fractional share rounded up to the next whole share amount. For example, if .40 of a share is purchased, the indemnity amount shall be $100,000.00 and if 1.40 of a share is purchased, the indemnity amount shall be $200,000.00.

**Exemption from Securities Laws.** The offer, issuance, sale, and delivery of the Series A Super Voting Preferred Stock and the PIK Preferred Stock, and the distribution thereof, are made in reliance on the exemption from registration provided by Section 1145(a)(1) of the Bankruptcy Code, and such securities shall not be subject to registration under the Securities Act of 1933, as amended (the 'Securities Act'), or any state securities laws.

## C.     Sources of Plan Payments

5.1.     **Source of Plan Payments**. The Reorganized Debtors shall make use of a combination of the Exit Financing and its business income during the Plan Period and capital created by conversion of the DIP Loan to equity in the Reorganized Debtors to make all payments required by the Plan.

## D.     Company Existence and Management.

Each of the Reorganized Debtors shall continue to exist after the Plan Effective Date as an Entity with all the powers of their respective entity form pursuant to the applicable law in the State in which the Debtors are formed.

The respective Reorganized Debtors' operating agreements or by-laws in effect prior to

the Plan Effective Date shall be cancelled effective on the Plan Effective Date, except to the extent such operating agreements are amended under the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).  Drafts of any amended operating agreements or by-laws will be included in the Plan Supplement.

The initial Directors of FCIH on the Effective Date will be Randy Andrews and David Sharbutt.  Thereafter, the Directors of FCIH shall be elected in accordance with the FCIH by laws as amended and effective on the Effective Date.  The Directors of FCIH shall elect the managers and officers of all other Debtors.

### E.       Vesting of Assets in the Reorganized Debtors

Except as otherwise provided in the Plan, or in any agreement, instrument, or other document incorporated in the Plan, on the Plan Effective Date, all property of the respective Debtors' Estate, all Causes of Action, and any property acquired by the Debtors under the Plan shall vest in the Reorganized Debtors, free and clear of all Liens, Claims, charges, or other encumbrances, except the Liens specifically provided for by the Plan. On and after the Plan Effective Date, except as otherwise provided herein, the Reorganized Debtors may operate their business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

### F.       New Organizational Documents

On the Plan Effective Date or as soon thereafter as is reasonably practicable, the Reorganized Debtors will enter into the new organizational documents, which will be consistent with section 1123(a)(6) of the Bankruptcy Code. After the Plan Effective Date, the Reorganized Debtors may amend and restate their formation, organizational, and constituent documents as permitted by the laws of its respective jurisdiction of formation and the terms of such documents.

### G.       Effectuating Documents; Further Transactions

On and after the Plan Effective Date, Reorganized Debtors and their managers and members are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the new organizational documents in the name of and on behalf of Reorganized Debtors without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

### H.       Section 1146(a) Exemption

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from the Debtors to the Reorganized Debtors or to any other person) of property under the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, any equity security, or other Interest in either the Debtors or the Reorganized Debtors; (b) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of

Abuelo's International, LP, *et al.,* Jointly Administered Debtors
Debtors' Amended Joint Plan of Reorganization Page 19

trust, or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment, or recording of any lease or sublease; (d) the grant of collateral, if any, as security; or (e) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## ARTICLE VI

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.      Assumption of Executory Contracts and Unexpired Leases

Except as set forth herein, the Debtors will assume the Executory Contracts and Unexpired Leases set forth on the Assumed Contracts Schedule and shall be authorized to pay when due any amounts due and payable thereunder pursuant to the terms thereof. Any modifications to the Assumed Contracts Schedule will be included in the Plan Supplement.  The Debtors reserve the right to amend the Assumed Contracts Schedule at any time prior to the Plan Effective Date and will provide notice of any such amendment to the affected counterparty.

Any Executory Contract or Unexpired Lease not included in the Assumed Contracts Schedule, as it may be modified in the Plan Supplement, or otherwise subject to a pending motion to Assume on the date of the Confirmation Hearing, shall be deemed Rejected.  In the event that the rejection of an Executory Contract or Unexpired Lease hereunder results in damages to the other party or parties to such contract, any Claim for such damages shall be forever barred and shall not be enforceable against the Reorganized Debtors, as applicable, or the Estate of the respective Reorganized Debtors, properties or interests in property, unless a Proof of Claim is timely filed with the Bankruptcy Court and served upon the Reorganized Debtors.  An Allowed Claim arising from rejection of Executory Contract or Unexpired Lease shall be treated as a General Unsecured Claim and paid according to the Plan.

Except as otherwise provided herein or agreed to by the Debtors or Reorganized Debtors, as applicable, and the applicable counterparty, each assumed Executory Contract or Unexpired Lease will include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests.  Any modifications, amendments, supplements, and restatements to Executory Contracts and Unexpired Leases that

have been executed by the Debtors or the Reorganized Debtors during the Bankruptcy Case will not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

**B.** **Cure of Defaults and Objections to Cure and Assumption**

The amount, if any, the Debtors believe necessary to cure any default under an Assumed Contract or Lease will be identified on the Assumed Contracts Schedule and included in the Plan Supplement. The Reorganized Debtors, as applicable, will pay any undisputed Cure on the Plan Effective Date or as soon as reasonably practicable thereafter. Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, any objections to the proposed assumption or rejection of an Executory Contract or Unexpired Lease, or to the Debtors' calculation of the amount necessary to Cure, must be filed and served on Reorganized Debtors within thirty (30) days after the latest of: (1) the date of entry of a Final Order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, and (3) the Plan Effective Date. **Unless otherwise ordered by the Bankruptcy Court, any cure objection that is not filed in time will be disallowed and unenforceable against the Reorganized Debtors.**

The Debtors shall be authorized to assume the Executory Contracts and Unexpired Leases on the Assumed Contracts Schedule, and to pay undisputed Cure amounts, as of the Plan Effective Date. Following the occurrence of the Plan Effective Date, Reorganized Debtors may resolve any disputed Cure amount without any further notice to or action, order, or approval of the Bankruptcy Court.

Any timely filed objection to a Cure amount will be scheduled to be heard by the Bankruptcy Court at a hearing date after the Confirmation Hearing, unless the parties otherwise agree. **Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.**

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise will result in the full release and satisfaction of any Cure, Claim, or defaults, whether monetary or nonmonetary, including provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the Plan Effective Date.

**C.** **Contracts and Leases Entered Into After the Petition Date**

Contracts and Leases entered after the Petition Date by the Debtors and any Executory Contracts and Unexpired Leases assumed by the Debtors prior to the Plan Effective Date shall be performed by Reorganized Debtors in the ordinary course of business after the Plan Effective Date.

**D.** **Insurance Policies**

Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan. Unless otherwise provided in the Plan, on the Plan Effective Date, the Debtors shall be deemed to have assumed all insurance

policies and any agreements, documents, and instruments relating to coverage of all insured Claims.

**E.      Reservation of Rights**

Nothing contained in the Plan or the Plan Supplement will constitute an admission by the Debtors or any other party that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Reorganized Debtors have any liability thereunder.

**ARTICLE VII**

**PROVISIONS GOVERNING DISTRIBUTIONS**

**A.      Distributions on Account of Claims and Interests Allowed as of the Plan Effective Date**

Subject to the Debtors' or Reorganized Debtors' right to object to any Claim or Interest (other than any Claims that may be deemed Allowed under the Plan), and except as otherwise provided herein, or in a Final Order, or as otherwise agreed to by the Debtors or Reorganized Debtors, as applicable, and the Holder of the applicable Claim or Interest, on the Distribution Date, Reorganized Debtors will make distributions under the Plan on account of Claims and Interests Allowed as of the Record Date or the Plan Effective Date or as soon as practicable thereafter; *provided*, *however*, that Allowed Administrative Expense Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Bankruptcy Case or assumed by the Debtors prior to the Plan Effective Date will be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice. To the extent any Allowed Priority Tax Claim is not due and owing on the Plan Effective Date, such Claim will be paid in full in Cash in accordance with the terms of any agreement between the Debtors and the Holder of such Claim or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

**B.      Special Rules for Distributions to Holders of Disputed Claims and Interests**

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed by the relevant parties: (a) no partial payments and no partial distributions shall be made with respect to a Disputed Claim or Interest until all such disputes in connection with such Disputed Claim or Interest have been resolved by settlement or Final Order; and (b) any Entity that holds both an Allowed Claim or Interest and a Disputed Claim or Interest shall not receive any distribution on the Allowed Claim or Interest unless and until all objections to the Disputed Claim or Interest have been resolved by settlement or Final Order or the Claims or Interests have been Allowed or expunged.

**C.      Delivery of Distributions**

7.1.      **Record Date for Distributions to Holders of Claims**. The Reorganized Debtors will be authorized and entitled to recognize only those record Holders, if any, listed on the Claims Register as of the close of business on the Distribution Record Date.

7.2.      **Distribution Process**. The Reorganized Debtors shall make or facilitate all

distributions required under the Plan. Except as otherwise provided herein, and notwithstanding any authority to the contrary, distributions to Holders of Allowed Claims and Interests, including Claims and Interests that become Allowed after the Plan Effective Date, shall be made to Holders of record as of the Distribution Record Date by Reorganized Debtors: (1) to the address of such Holder as set forth in the books and records of the Debtors (or if the Debtors have been notified in writing, on or before the date that is ten (10) days before the Plan Effective Date, of a change of address, to the changed address); (2) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, if no address exists in the Debtors' books and records, no Proof of Claim has been filed and the Reorganized Debtors have not received a written notice of a change of address on or before the date that is ten (10) days before the Plan Effective Date; or (3) on any counsel that has appeared in the Bankruptcy Case on the Holder's behalf. The Debtors and Reorganized Debtors, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan.

**7.3.     Undeliverable and Unclaimed Distributions**. If any distribution to a Holder of an Allowed Claim or Interest is returned to the Reorganized Debtors as undeliverable, no further distributions shall be made to such Holder unless and until Reorganized Debtors are notified in writing of such Holder's then-current address or other necessary information for delivery, at which time all currently due missed distributions shall be made to such Holder on the next Distribution Date. Undeliverable distributions shall remain in the possession of the Reorganized Debtors until such time as a distribution becomes deliverable, or such distribution reverts to the Reorganized Debtors or is cancelled pursuant to the Plan, and shall not be supplemented with any interest, dividends, or other accruals of any kind.

Any distribution under the Plan that is an unclaimed distribution for a period of three months after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such unclaimed distribution shall revest in the Reorganized Debtors. Upon such revesting, the Claim or Interest of any Holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws, or any provisions in any document governing the distribution that is an unclaimed distribution, to the contrary.

**D.     Claims Paid or Payable by Third Parties**

**7.4.     Claims Paid by Third Parties**. A Claim shall be reduced in full, and such Claim shall be disallowed without an objection to such Claim having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtors or Reorganized Debtors. To the extent the Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtors or Reorganized Debtors on account of such Claim, such Holder shall repay, return or deliver any distribution held by or transferred to the Holder to Reorganized Debtors to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

**E.      Setoffs**

Except as otherwise expressly provided for herein, the Reorganized Debtors pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Interest, may set off against any Allowed Claim or Interest and the distributions to be made pursuant to the Plan on account of such Allowed Claim or Interest (before any distribution is made on account of such Allowed Claim or Interest), any claims, rights, and Causes of Action of any nature that the Debtors or Reorganized Debtors, as applicable, may hold against the Holder of such Allowed Claim or Interest, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Plan Effective Date (whether pursuant to the Plan or otherwise); *provided, however*, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by Reorganized Debtors of any such claims, rights, and Causes of Action that the Reorganized Debtors may possess against such Holder.

## ARTICLE VIII

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS

**A.      Disputed Claims Process**

Except as otherwise provided herein, if a party files a Proof of Claim or Interest and the Debtors or Reorganized Debtors objects then the Claim or Interest subject to such Proof of Claim or Interest will be Allowed unless or until Disputed and disallowed by a Final Order or as otherwise set forth in Article VIII of the Plan. For the avoidance of doubt, the Plan does not create a requirement to file a Proof of Claim or Interest (or move the Bankruptcy Court for allowance) to be an Allowed Claim. Unless otherwise ordered by the Bankruptcy Court, **except as otherwise provided herein, or at the discretion of the Reorganized Debtors all Proofs of Claim or Interest filed after the Plan Effective Date will be disallowed and forever barred, estopped, and enjoined from assertion, and will not be enforceable against the Reorganized Debtors, without the need for any objection by Reorganized Debtors or any further notice to or action, order, or approval of the Bankruptcy Court.**

**B.      Claims Administration Responsibilities**

Except as otherwise specifically provided in the Plan, after the Plan Effective Date the Reorganized Debtors shall have the authority to (1) file, withdraw, or litigate to judgment, objections to Claims or Interests; (2) settle or compromise any Disputed Claim or Interest without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided herein, from and after the Plan Effective Date, the Reorganized Debtors shall have and retain any and all rights and defenses the Debtors had immediately prior to the Plan Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained pursuant to the Plan.

C.      **Duplicate, Satisfied, Amended, and Superseded Claims**

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Reorganized Debtors as allowed by the Bankruptcy Court.

D.      **Disallowance of Claims and Interests**

All Claims and Interests of any Entity from which property is sought by the Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtor or Debtors, as applicable, allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if: (a) the Entity, on the one hand, and the Debtors or Reorganized Debtors, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

**ARTICLE IX**

**SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**

**Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Plan Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Plan Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Plan Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Plan Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Interest has accepted the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Plan Effective Date.**

A.    **Releases by the Debtors**

**Notwithstanding anything contained in this Plan to the contrary, pursuant to Section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Plan Effective Date, each Released Party is deemed released and discharged by the Debtors, the Reorganized Debtors, and the Releasing Parties from any and all Causes of Action, including any derivative claims, asserted on behalf of the Debtors, that the Debtors or the Reorganized Debtors would have been legally entitled to assert in their own right or on behalf of the Holder of any Claim against, or Interest in, the Debtors or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including management, ownership, or operation thereof), the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Bankruptcy Case, the Disclosure Statement, the Plan, the filing of the Bankruptcy Case, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Plan Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Plan Effective Date obligations of any party or Entity under the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan. Furthermore, notwithstanding anything contained herein to the contrary, the foregoing release shall not release any obligation of any Person or Entity under the Plan or any document, instrument or agreement executed to implement the Plan.**

B.    **Exculpation**

**Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action for any claim related to any act or omission occurring on or after the Petition Date and before the Plan Effective Date in connection with, relating to, or arising out of, the Bankruptcy Case, the Disclosure Statement, the Plan, the filing of the Bankruptcy Case, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

C.    **Injunction**

**Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to**

**exculpation are permanently enjoined, from and after the Plan Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Plan Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.**

**D.      Protection Against Discriminatory Treatment**

In accordance with section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against the Reorganized Debtors, or any Entity with which the Reorganized Debtors have been or are associated, solely because the respective Reorganized Debtors were  debtors under Chapter 11, may have been insolvent before the commencement of the Bankruptcy Case (or during the Bankruptcy Case but before the Debtors were granted or denied a discharge), or has not paid a debt that is dischargeable in the Bankruptcy Case.

**E.      Document Retention**

On and after the Plan Effective Date, Reorganized Debtors may maintain documents in accordance with their respective standard document retention policy, as may be altered, amended, modified, or supplemented by Reorganized Debtors.

**F.      Reimbursement or Contribution**

If the Bankruptcy Court allows or disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent; or (2) the relevant Holder of a Claim has filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

**G.      Release of Liens**

Except with respect to the Liens specifically provided for under the Plan, on the Plan Effective Date, any mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate will be fully released and discharged, and the Holders thereof will execute such documents as may be reasonably requested by the Debtors or Reorganized Debtors to reflect or effectuate such releases, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests will revert to the Reorganized Debtors.

## ARTICLE X

## CONDITIONS TO PLAN EFFECTIVE DATE

**A.      Conditions Precedent to the Plan Effective Date.**

It shall be a condition to the Plan Effective Date that the following conditions shall have been satisfied or waived pursuant to Article X.B of the Plan:

i.      the Bankruptcy Court shall have entered the Confirmation Order and such order shall be a Final Order;

ii.      The Reorganized Debtors shall have obtained the Exit Financing;

iii.      the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

iv.      the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been filed in a manner consistent in all material respects with the Plan;

v.      the Confirmation Order shall not have been reversed, stayed, amended, modified, dismissed, vacated, or reconsidered;

vi.      there shall not be in effect any (a) order, opinion, ruling, or other decision entered by any court or other Governmental Unit or (b) U.S. or other applicable law staying, restraining, enjoining, prohibiting, or otherwise making illegal the implementation of any of the transactions contemplated by the Plan.

**B.      Waiver of Conditions Precedent**

The conditions to the Plan Effective Date set forth in Article X.A of the Plan may be waived only if waived in writing by the Debtors, without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm and consummate the Plan.

**C.      Substantial Consummation**

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), with respect to the Debtors, shall be deemed to occur on the Plan Effective Date.

**D.**     **Effect of Non-Occurrence of Conditions to Consummation**

If prior to Consummation, the Confirmation Order is vacated pursuant to a Final Order, then except as provided in any order of the Bankruptcy Court vacating the Confirmation Order, the Plan will be null and void in all respects, and nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims, Interests, or Causes of Action; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE XI

## MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

**A.**     **Modification of Plan**

The Debtors reserve the right to amend or modify the Plan before the entry of the Confirmation Order consistent with the terms set forth herein. After the entry of the Confirmation Order but prior to the Plan Effective Date, the Debtors may, subject to approval of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, to remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan consistent with the terms set forth herein.

**B.**     **Effect of Confirmation on Modifications**

Entry of the Confirmation Order shall constitute approval of all modifications to the Plan occurring after the solicitation thereof pursuant to section 1127(a) of the Bankruptcy Code and a finding that such modifications to the Plan do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

**C.**     **Withdrawal of Plan**

The Debtors reserve the right to withdraw the Plan before the Confirmation Date and to file subsequent Chapter 11 plan(s). If the Debtors withdraw the Plan, or if the Confirmation Date or the Plan Effective Date does not occur, then: (a) the Plan will be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption of Executory Contracts effected by the Plan, and any document or agreement executed pursuant hereto will be null and void in all respects; and (c) nothing contained in the Plan shall (1) constitute a waiver or release of any Claims, Interests, or Causes of Action, (2) prejudice in any manner the rights of the Debtors or any other Entity, or (3) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE XII

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Plan Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out

of, or related to, the Bankruptcy Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

i. allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Claim or Interest and the resolution of all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

ii. decide and resolve all matters related to the granting and denying, in whole or in part, any applications for payment of Professionals Fees authorized pursuant to the Bankruptcy Code or the Plan;

iii. resolve any matters related to Executory Contracts or Unexpired Leases, including: (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which the Debtor(s) is party or with respect to which the Debtor(s) may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract that is assumed; and (c) any dispute regarding whether a contract is or was executory or expired

iv. ensure that distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

v. adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtors that may be pending on the Plan Effective Date;

vi. enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Bankruptcy Case and (b) the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

vii. to enforce the Confirmation Order, including to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

viii. hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Bankruptcy Case

ix. enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

x.  consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

xi.  hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

xii.  enter an order or Final Decree concluding or closing the Bankruptcy Case;

xiii.  enforce all orders previously entered by the Bankruptcy Court; and

xiv.  hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

### A.    Immediate Binding Effect

Subject to Article X.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Plan Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts with the Debtors.

### B.    Headings

All headings utilized in this Plan are for convenience and reference only and shall not constitute a part of this Plan for any other purpose.

### C.    Additional Documents

On or before the Plan Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or the Reorganized Debtors, as applicable, and all Holders of Claims and Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### D.    Payment of Statutory Fees

All fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid in full in cash when due for each quarter (including any fraction thereof) until the Bankruptcy Case is converted, dismissed, or a Final Decree is issued, whichever occurs first.  Notwithstanding anything else in the Plan to the contrary, (1) interest, if any, pursuant to 31 U.S.C. § 3717 shall be payable, and (2) the U.S. Trustee

shall not be required to file any proof of claim for quarterly fees.

**E.      No Interest or Attorneys' Fees**

Except as expressly stated in this Plan, or allowed by the Court, no interest, penalty or late charge is to be Allowed on any Claim subsequent to the Filing Date. No attorneys' fees will be paid with respect to any Claim, other than Claims of Professionals employed by the Debtors, except as specified herein or as allowed by order of the Court.

**F.      Reservation of Rights**

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtors with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors with respect to the Holders of Claims or Interests prior to the Plan Effective Date.

**G.      Successors and Assigns**

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**H.      Term of Injunctions or Stays**

**Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in effect in the Bankruptcy Case (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Plan Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.**

**I.      Entire Agreement**

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**J.      Plan Supplement Exhibits**

All exhibits and documents to be included in the Plan Supplement, if any, shall be incorporated into and made a part of the Plan as if set forth in full in the Plan. The Plan Supplement, if any, must be filed at least one week prior to the deadline for any objections to confirmation of the Plan. A copy of the Plan Supplement will be made available upon written request to the Debtors' Counsel and will be available on the Bankruptcy Court's website via PACER.

**K.      Non-Severability**

The provisions of the Plan (including its release, injunction, exculpation, and compromise provisions) are mutually dependent and non-severable.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors, consistent with the terms set forth herein; and (c) non-severable and mutually dependent.

**L.      Votes Solicited in Good Faith**

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and their agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

**M.      Closing of the Bankruptcy Case**

The Reorganized Debtors shall, promptly after the full administration of the Bankruptcy Case, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Bankruptcy Case.

**N.      Waiver or Estoppel**

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.

[Remainder of Page Intentionally Left Blank]

Respectfully submitted,

**FOOD CONCEPTS**

**INTERNATIONAL,L.P.,  a Texas limited**

**partnership**

By:/s/ *John Dorrington*

(printed):   John Dorrington

Its: President and Chief Executive Officer

**ABUELO'S INTERNATIONAL, L.P., a**

**Texas limited partnership**

By:/s/  *John Dorrington*

(printed):   John Dorrington

Its: President and Chief Executive Officer

**FOOD CONCEPTS INTERNATIONAL**

**HOLDINGS, INC.**

By:/s/ *G. Randall Andrews*

(printed):   G. Randall Andrews

Its: President

---

**ROCHELLE MCCULLOUGH PLLC**

By: */s/ J. Mark Chevallier*
J. Mark Chevallier
State Bar No. 04189170
Email: mchevallier@romclaw.com
Michael T. Pipkin
State Bar No. 24122988
Email: mpipkin@romclaw.com
ROCHELLE MCCULLOUGH PLLC
901 Main Street, Suite 3200
Dallas, TX 75202
Telephone: 214.953.0182
Facsimile: 888.467.5979
http://www.romclaw.com

and

Joseph F. Postnikoff
State Bar No. 16168320
Email: jpostnikoff@romclaw.com
ROCHELLE MCCULLOUGH PLLC
300 Throckmorton, Suite 520
Fort Worth, TX 76102
Telephone: 817.347.5260
Facsimile: 817.347.5269
http://www.romclaw.com

and

Curt D. Hochbein
State Bar No. (IN) 29284-29
Email: chochbein@romclaw.com
ROCHELLE MCCULLOUGH PLLC
300 N. Meridian St., Suite 1260
Indianapolis, IN 46204
Telephone: (317) 348-5677
http://www.romclaw.com

COUNSEL FOR DEBTORS IN POSSESSION