J. Mark Chevallier
State Bar No. 04189170
Email: mchevallier@romclaw.com
Michael Pipkin
State Bar No. 24122988
Email: mpipkin@romclaw.com
ROCHELLE MCCULLOUGH PLLC
901 Main Street, Suite 3200
Dallas, TX 75202
Telephone: 214.953.0182
Facsimile: 888.467.5979
http://www.romclaw.com

Joseph F. Postnikoff
State Bar No. 16168320
Email: jpostnikoff@romclaw.com
ROCHELLE MCCULLOUGH PLLC
300 Throckmorton Street, Suite 520
Fort Worth, TX 76102
Telephone: 817.347.5260
Facsimile: 817.347.5269
http://www.romclaw.com

Curt D. Hochbein
State Bar No. (IN) 29284-29
ROCHELLE MCCULLOUGH PLLC
300 N. Meridian St., Suite 1260
Indianapolis, IN 46204
Telephone: (317) 348-5677
chochbein@romclaw.com
http://www.romclaw.com

COUNSEL FOR DEBTORS IN POSSESSSION

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Chapter 11** |
| | § | |
| **ABUELO'S INTERNATIONAL, LP, *et al.*,**[1] | § | **Case No. 25-43339-elm11** |
| | § | |
| **Debtors.** | § | **Joint Administration Requested** |

**DISCLOSURE STATEMENT FOR THE
AMENDED JOINT PLAN OF REORGANIZATION FOR THE DEBTORS**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, include: Abuelo's International, LP (1108), Food Concepts International, L.P. (5079) and Food Concepts International Holdings, Inc. (2576).

**DISCLOSURE STATEMENT DATED July 2026**

On [[_____]], 2026, after notice and hearing, the Bankruptcy Court approved this Disclosure Statement and authorized the Debtors to solicit votes with respect to the Plan. The purpose of this Disclosure Statement is to enable those persons whose Claims against and Interests in the Debtors are Impaired and entitled to vote under the Plan to make an informed decision on whether to vote for or against the Plan. The Plan is supported by the Debtors, Abuelo's International, LP, Food Concepts International, L.P. and Food Concepts International Holdings, Inc. (collectively the "Debtors").

**The Debtors urge each holder of a Claim or Interest to consult with its own advisors with respect to any legal, financial, securities, tax, or business advice in reviewing this Disclosure Statement, the Plan, and each proposed transaction or distribution contemplated by the Plan.** The consummation and effectiveness of the Plan are subject to certain material conditions precedent, described herein. There is no assurance that the Bankruptcy Court will confirm the Plan or, if the Bankruptcy Court does confirm the Plan, that the conditions necessary for the Plan to become effective will be satisfied or otherwise waived.

The Debtors strongly encourage holders of Claims in Classes 4 through 7 to read this Disclosure Statement (including the Risk Factors described in Article VII hereof) and the Plan in their entirety before voting to accept or reject the Plan. Assuming the requisite acceptances to the Plan are obtained, the Debtors will seek the Bankruptcy Court's approval of the Plan at the Confirmation Hearing.

**RECOMMENDATION**

**THE DEBTORS BELIEVE THAT THE PLAN IS FAIR AND EQUITABLE, MAXIMIZES THE VALUE OF THE DEBTORS' ESTATES, AND PROVIDES THE BEST RECOVERY TO CREDITORS. AT THIS TIME, THE DEBTORS BELIEVE THAT THE PLAN REPRESENTS THE BEST OPTION FOR ACCOMPLISHING THE DEBTORS' RESTRUCTURING OBJECTIVES. THE DEBTORS STRONGLY RECOMMEND THAT ALL HOLDERS OF CLAIMS ENTITLED TO VOTE SUBMIT BALLOTS TO ACCEPT THE PLAN BY RETURNING THEIR BALLOTS SO AS TO BE ACTUALLY RECEIVED BY THE VOTING DEADLINE.**

**DISCLAIMER**

**This Disclosure Statement contains summaries of certain provisions of the Plan and certain other documents and financial information. The information included in this Disclosure Statement is provided solely for the purpose of soliciting acceptances of the Plan and should not be relied upon for any purpose other than to determine whether and how to vote on the Plan. All Holders of Claims entitled to vote are advised and encouraged to read this Disclosure Statement and the Plan in their entirety before voting. The Debtors believe that these summaries are accurate and provide Holders of Claims entitled to vote to accept or reject the Plan with adequate information. The summaries of the financial information and the documents that are attached to, or incorporated by reference in, this Disclosure Statement are qualified in their entirety by reference to such information and documents. In**

the event of any inconsistency or discrepancy between a description in this Disclosure Statement, on the one hand, and the terms and provisions of the Plan or the financial information, on the other hand, the Plan or the financial information, as applicable, shall govern for all purposes.

Except as otherwise provided in the Plan or in accordance with applicable law, the Debtors are under no duty to update or supplement this Disclosure Statement. The Bankruptcy Court's approval of this Disclosure Statement does not constitute a guarantee of the accuracy or completeness of the information contained herein or the Bankruptcy Court's endorsement of the merits of the Plan. The statements and financial information contained in or incorporated by reference into this Disclosure Statement, including financial projections, have been made as of the date hereof unless otherwise specified. Holders of Claims and Interests reviewing this Disclosure Statement should not assume at the time of such review that there have been no changes in the facts set forth in this Disclosure Statement since the date of this Disclosure Statement. No Holder of a Claim or Interest should rely on any information, representations, or inducements that are not contained in or are inconsistent with the information contained in this Disclosure Statement, the documents attached to this Disclosure Statement, and the Plan. This Disclosure Statement does not constitute legal, business, financial, or tax advice. Any Person or Entity desiring any such advice should consult with their own advisors.

This Disclosure Statement shall not be construed to be conclusive advice on any of the tax, securities, financial or other effects of the Plan to Holders of Claims against or Interests in, the Debtors or any other party in interest. Please refer to Article VII of this Disclosure Statement, entitled "Certain Factors To Be Considered" for a discussion of certain risk factors that Holders of Claims voting on the Plan should consider.

*THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION, NOR HAS THE SECURITIES AND EXCHANGE COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.*

Except as otherwise expressly set forth herein, all information, representations, or statements contained herein have been provided by the Debtors. No person is authorized by the Debtors in connection with this Disclosure Statement or the Plan to give any information or to make any representation or statement regarding this Disclosure Statement or the Plan other than as contained in this Disclosure Statement and the exhibits attached hereto or as otherwise incorporated herein by reference or referred to herein. If any such information, representation, or statement is given or made, it may not be relied upon as having been authorized by the Debtors.

## FORWARD-LOOKING STATEMENTS

This Disclosure Statement may contain forward-looking statements, including financial projections, all of which are subject to a number of assumptions, risks, and uncertainties, many of which are beyond the control of the Debtors, including the implementation of the Plan. Such forward-looking statements are subject to inherent uncertainties and to a wide variety of significant business, economic, and competitive risks, including, but not limited to, those summarized herein. When used in this Disclosure Statement, the words "anticipate," "believe," "estimate," "will," "may," "intend," and "expect" and similar expressions generally identify forward-looking statements. Important assumptions and other important factors that could cause actual results to differ materially include, but are not limited to, those factors, risks and uncertainties described in more detail under the heading "Certain Factors to be Considered" below. These statements are only predictions and are not guarantees of future performance or results. Forward-looking statements are subject to risks and uncertainties that could cause actual results to differ materially from those contemplated by a forward-looking statement. All forward-looking statements attributable to the Debtors or Persons or Entities acting on their behalf are expressly qualified in their entirety by the cautionary statements set forth in this Disclosure Statement. Forward-looking statements speak only as of the date on which they are made. Actual results or developments may differ materially from the expectations expressed or implied in the forward-looking statements, and the Debtors expressly disclaim any obligation to update any forward-looking statement. The Debtors do not intend or undertake any obligation to update or otherwise revise any forward-looking statements contained in or incorporated by reference into the Disclosure Statement, to reflect the occurrence of unanticipated events or otherwise, including any financial projections, unless required by law.

**TABLE OF CONTENTS**

PREFATORY STATEMENT .................................................................................................... 8

INTRODUCTION AND OVERVIEW ................................................................................... 8

    A.   Purpose of Chapter 11 ...................................................................................... 9

    B.   Events Leading to Bankruptcy .......................................................................... 10

    C.   Major Events During the Chapter 11 Cases ...................................................... 11

ARTICLE I ASSETS, LIABILITIES, AND BUSINESS OPERATIONS OF THE DEBTORS.. 18

    1.1   Assets of the Debtors ....................................................................................... 18

    1.2   Liabilities of the Debtors ................................................................................. 18

    1.3   Business Operations, in General ....................................................................... 19

ARTICLE II THE PLAN OF REORGANIZATION .............................................................. 19

    2.1   The Plan, in General ........................................................................................ 19

    2.2   Discharge of Claims and Interests ................................................................... 19

    2.3   Unclassified Claims Summary.......................................................................... 19

    2.4   Classified Claims and Interests ....................................................................... 21

    2.5   Means for Implementation of the Plan.............................................................. 26

    2.6   Acceptance and Confirmation of the Plan ....................................................... 29

ARTICLE III  LIQUIDATION ANALYSIS ......................................................................... 33

    3.1   Introduction...................................................................................................... 33

    3.2   Value of Debtors' Assets if Sold in Chapter 7 Liquidation ............................... 33

ARTICLE IV VOTING PROCEDURES, REQUIREMENTS, AND INSTRUCTIONS ............ 34

    4.1   Classes Entitled to Vote on the Plan................................................................ 34

    4.2   Persons Entitled to Vote on the Plan ................................................................ 35

    4.3   Vote Required for Class Acceptance ................................................................. 35

    4.4   Voting Instructions .......................................................................................... 35

    4.5   Contested and Unliquidated Claims................................................................. 37

    4.6   Possible Reclassification of Creditors and Interest Holders ............................. 37

ARTICLE V  OTHER KEY ASPECTS OF THE PLAN......................................................... 37

    5.1   Distributions.................................................................................................... 37

    5.2   Undeliverable, and Unclaimed Distributions................................................... 38

5.3     Claims Paid or Payable by Third Parties ............................................................ 38

5.4     Setoffs ................................................................................................................. 39

5.5     Disputed Claims Process..................................................................................... 39

5.6     Claims Administration Responsibilities.............................................................. 39

5.7     Duplicate, Satisfied, Amended, and Superseded Claims .................................... 40

5.8     Disallowance of Claims and Interests................................................................. 40

5.9     Settlement, Release, Injunction, and Related Provisions.................................... 40

5.10    Conditions Precedent to the Plan Effective Date ............................................... 43

5.11    Modification of the Plan ..................................................................................... 44

5.12    Effect of Confirmation on Modifications ........................................................... 44

5.13    Withdrawal of Plan ............................................................................................. 44

ARTICLE VI  CERTAIN FACTORS TO BE CONSIDERED....................................... 45

6.1     General................................................................................................................ 45

6.2     Risks Relating to the Plan and Other Bankruptcy Law Considerations ............. 45

6.3     Risks Relating to Future Litigation..................................................................... 47

6.4     Certain Tax Implications of the Chapter 11 Cases.............................................. 47

6.5     Disclosure Statement Disclaimer ....................................................................... 47

ARTICLE VII  CERTAIN FEDERAL INCOME TAX CONSEQUENCES............................ 48

7.1     Introduction......................................................................................................... 48

7.2     Certain Federal Income Tax Consequences to the Debtor .................................. 50

7.3     Federal Income Tax Consequences to Holders of Claims and Interests Generally .. 51

ARTICLE VIII  CONCLUSION AND RECOMMENDATION................................................ 53

## EXHIBITS

**Exhibit A** – Joint Plan of Reorganization for the Debtors

**Exhibit B** – Plan Projections

**Exhibit C** – Liquidation Analysis

**Exhibit D –** Assumed Contracts Schedule

## PREFATORY STATEMENT

Pursuant to Chapter 11 of Title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), Abuelo's International, LP, Food Concepts International, L.P. and Food Concepts International Holdings, Inc. debtors and debtors-in-possession (the "Debtors"), hereby submit this disclosure statement (the "Disclosure Statement") in support of the Amended Plan of Reorganization for the Debtors (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"). A copy of the Plan is attached hereto as **Exhibit A**. The definitions set forth in Article II of the Plan apply to capitalized terms used herein that are not otherwise defined herein. In the event of a conflict between the definitions contained herein and those definitions contained in the Plan, the definitions contained in the Plan shall control.

## INTRODUCTION AND OVERVIEW

### A.  Introduction

Abuelo's International, LP, Food Concepts International, L.P. and Food Concepts International Holdings, Inc., jointly administered debtors and debtors-in-possession in the above-referenced cases (the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Norther District of Texas on September 2, 2025. Debtors requested joint administration on September 2, 2025, and the Bankruptcy Court entered an order granting joint administration on September 5, 2025. From and after the Petition Date, the Debtors have continued to operate as debtors in possession under 11 U.S.C. §§ 1107 and 1108.

This Disclosure Statement is provided pursuant to Section 1125 of the Bankruptcy Code to all of the Debtors' known creditors, Interest holders and other parties in interest in connection with the solicitation of acceptances of the *Joint Plan of Reorganization* (the "Plan") filed on March 2, 2025.

The Plan contemplates substantive consolidation of the Debtors for the purposes of voting, allowance of claims, and distributions to holders of Allowed Claims. The purpose of this Disclosure Statement is to provide such information as will enable a hypothetical, reasonable investor typical of the holders of Claims or Interests to make an informed judgment in exercising his, her or its right either to accept or reject the Plan. A copy of the Plan is attached to this Disclosure Statement and is incorporated herein by this reference as **Exhibit A**.

**FOR THE REASONS SET FORTH HEREIN, THE DEBTORS RECOMMEND THAT HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE ON THE PLAN VOTE TO ACCEPT THE PLAN.**

Your acceptance of the Plan is important. In order for the Plan to be deemed "accepted" by creditors, at least sixty six and two-thirds percent (66 2/3%) in amount of Allowed Claims and a majority in number of Allowed Claims voting in each class of Claims must accept the Plan. As set forth in Section 4.8 of the Plan, all Interests will be deemed cancelled as of the Effective Date, and Holders of Interests will receive no distributions under the Plan. Accordingly, Holders of Interests

are deemed to reject the Plan and are not entitled to vote. Whether or not you expect to be present at the hearing to consider confirmation of the Plan, you are urged to fill in, date, sign and properly mail the ballot accompanying the Plan and this Disclosure Statement to Joseph F. Postnikoff, Rochelle McCullough PLLC, 300 Throckmorton Street, Suite 520, Fort Worth, Texas 76102 or via email to jpostnikoff@romclaw.com. For your vote to count, your ballot must be received by Mr. Postnikoff prior to the date and time shown thereon.

**NO REPRESENTATIONS CONCERNING THE DEBTORS ARE AUTHORIZED OTHER THAN THOSE SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN.**
**THE DEBTORS DO NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS ACCURATE, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THIS DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN. THE PLAN WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT IS AN INTEGRAL PART OF THE DISCLOSURE STATEMENT, AND EACH CREDITOR IS URGED TO REVIEW THE PLAN PRIOR TO VOTING ON IT.**

## A.     Purpose of Chapter 11

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. The commencement of a Chapter 11 case creates an "estate" comprised of all the legal and equitable interests of a debtor. Sections 1101, 1107, and 1108 of the Bankruptcy Code provide that a debtor may remain in possession of its property and continue to operate its business as a "debtor-in-possession". Thus, since the Petition Date, the Debtors have been operating and managing their business operations in the ordinary course of business and under the supervision of the Bankruptcy Court.

Confirmation of a plan of reorganization is the principal purpose of a Chapter 11 case. The plan is the vehicle for satisfying the holders of claims against, and equity interests in, a debtor. Under the Bankruptcy Code, when soliciting acceptance or rejection of a plan of reorganization, a plan proponent must transmit to the holders of claims or interests a disclosure statement approved by the court as containing "adequate information." The Bankruptcy Court found that this Disclosure Statement contained information that complies with the adequate information requirement of the Bankruptcy Code. The Disclosure Statement describes various transactions contemplated under the Plan and is supplied to you for purposes of assisting in your evaluation of, and your decision of how to vote on, the Plan. The Plan is attached hereto as **Exhibit A**.

B.      **Events Leading to Bankruptcy**

Food Concepts International Holdings, Inc. ("FCIH") is the sole member of the general partner of Food Concepts International, L.P., a Texas limited partnership ("FCI"). FCI is the 99.99% limited partner of the Abuelo's International, L.P., a Texas limited partnership ("ABI").

The Debtors own and operate a chain of full-service, casual dining Mexican restaurants serving made-from-scratch Mexican food. The Debtors' first restaurant opened in 1989, and as of the Petition Date, they operated a total of 19 restaurants located in 7 states throughout the nation. The states and cities in which Debtors' restaurant operated are as follows:

Arizona
    Peoria
Arkansas
    Rogers
Florida
    Lakeland
Kansas
    Wichita Ridge Road
    Wichita Waterfront
Oklahoma
    Tulsa Nickel Creek
South Carolina
    Myrtle Beach
Texas
    Abilene
    Amarillo
    Arlington
    Fort Worth
    Hurst
    Lubbock
    Midland
    The Colony
    Tyler

The Debtors' operations have been impacted by a significant drop in sales, rising food and labor costs, continued staffing challenges, and changes in consumer preferences.

The Debtors began seeing headwinds in 2023 as inflation persisted and consumer willingness to spend on discretionary items, such as dining out, remained low. In 2023, the Debtors experience a reduction in store traffic of 5.9% from 2022. Additionally, as a result of rampant inflation, the Debtors were battling labor shortages and increased wage pressure

Unfortunately, consumer weakness, labor shortages, and rising labor and food costs continued through 2024. Furthermore, certain locations experienced extreme weather events through the busy months of May and June caused store closures totaling 63 days which resulted in a conservative estimate of $550,000 of lost revenue in those two months alone.

However, while in-store traffic and sales remained lower in 2024, the Debtors saw an increase in off premises sales of 7.7% as consumers pivoted to ordering online and eating at home where they could save on drink and tip expenses.

To combat the drop in sales and profitability experienced through 2023 and 2024, the Debtors' reduced corporate overhead costs, and have closed certain low performing stores. The Debtors began to see some improved operating results during 2025 following the closure of low performing stores. Nevertheless, the Debtors still faced significant distress in its cash position.

As of the Petition Date, the Debtors had cash deposits, payment facilitator deposits, and credit card receivables totaling approximately $484,665, and inventory with a value of approximately $643,536. The cash reserves, together with accounts receivable and inventory, constitute the ("Cash Collateral") of the Debtors' major secured lender, FBT.

## C.      Major Events During the Chapter 11 Cases

Since the Petition Date, the Debtors have continued in possession of their property and operated as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) & 1108. The following is a summary of significant events in the bankruptcy case leading to the filing of the Plan.

### A.  First Day Motions

On September 2, 2025, the Debtors filed the following motions with Bankruptcy Court:

(i)      *Motion for Joint Administration* [Docket No. 4] (the "Joint Administration Motion"). The Court entered an order granting the Joint Administration on September 5, 2025. [Docket No. 46].

(ii)     *Emergency Motion for Entry of an Order (I) Extending Time to File Schedules of Assets and Liabilities, and Statements of Financial Affairs, and (II) Granting Related Relief* [Docket No. 5] (the "Deadline Extension Motion"). The Court entered an order granting the Deadline Extension Motion on September 5, 2025. [Docket No. 57].

(iii)    *Emergency Motion for Entry of an Order (I) Authorizing the Debtors to File a Consolidated List of Top 40 Unsecured Creditors and Consolidated List of Creditors, and (II) Authorizing the Debtors to Redact Certain Personal Identification Information of Individual Creditors and Current and Former Employees* [Docket No. 6] (the "Creditor Notice Motion"). On September 5, 2025, the Court granted the Creditor Notice Motion with modifications as stated on the record [Docket No. 40].

(iv)     *Emergency Motion for an Order (I) Authorizing Continued Use of Existing Business Forms and Records, (II) Authorizing Maintenance of Existing Corporate Bank Accounts and Cash Management System, (III) Authorizing Payment of Prepetition Costs and Fees Associated with Customer Credit and Debit Card Transactions, and (IV) Waiving Certain United States Trustee Requirements* [Docket No. 9] (the "Cash Management Motion"). The Court entered an amended interim order granting the Cash Management Motion on September 8, 2025 [Docket No. 62], and

a final order granting the Cash Management Motion on September 23, 2025 [Docket No. 111].

(v)     *Emergency Motion for Entry of an Order (I) Authorizing Debtors to (A) Pay Prepetition Wages, Employee Benefits Obligations, and Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefit Programs and Pay Related Administrative Obligations, and (II) Granting Related Relief* [Docket No. 13] (the "Employee Compensation Motion"). The Court entered an order granting the Employee Compensation Motion on September 5, 2025 [Docket No. 58].

(vi)    *Emergency Motion for Entry of an Order (I) Authorizing the Debtors to (A) Continue Their Insurance Policies and Honor all Obligations in Respect Thereof, (B) Renew, Supplement, and Enter Into New Insurance Policies, (C) Honor the Terms of Related Premium Financing Agreement and Pay Premiums Thereunder, and (D) Honor the Terms of Related Broker Agreement and Pay Amounts Thereunder, and (II) Granting Related Relief* [Docket No. 14] (the "Insurance Policy and Premium Finance Agreement Motion"). The Court entered an order granting the Insurance Policy and Premium Finance Agreement Motion on September 5, 2025 [Docket No. 59].

(vii)   *Emergency Motion for Entry of an Order (I) Authorizing the Payment of Certain Prepetition, and Post-Petition Taxes and Fees, and (II) Granting Related Relief* [Docket No. 16] (the "Sales Tax Motion"). The Court entered an order granting the Sales Tax Motion on September 5, 2025 [Docket No. 61].

(viii)  *Emergency Motion for Entry of an Order (I) Authorizing the Debtors to Maintain and Administer Their Existing Customer Programs and Honor Certain Pre-Petition Obligations Related Thereto, and (II) Granting Related Relief* [Docket No. 18] (the "Customer Programs Maintenance Motion"). The Court entered an order granting the Customer Programs Maintenance Motion on September 5, 2025 [Docket No. 64].

(ix)    *Debtors' Emergency Motion for Entry of an Order (I) Approving the Debtors' Proposed Adequate Assurance of Payment for Future Utility Services, (II) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Services, (III) Approving the Debtors' Proposed Procedures for Resolving Adequate Assurance Requests, and (IV) Granting Related Relief* [Docket No. 21] (the "Utility Motion"). The Court entered an order granting the Utility Motion on September 5, 2025 [Docket No. 60].

### B.  Critical Vendors

In conjunction with the other first day motions, the Debtors filed their *Emergency Motion for Entry of an Order Authorizing the Debtors to Pay Prepetition Obligations of Critical Vendors and Additional Use of Cash Collateral* [Docket No. 22] (the "Critical Vendors Motion"). The

Court entered an Interim Order granting the Critical Vendors Motion on September 15, 2025 [Docket No. 89], a Second Interim Order granting the Critical Vendors Motion on September 23, 2025 [Docket No. 107], and a Final Order granting the Critical Vendors Motion on September 30, 2025 [Docket No. 121].

### C. Employment of Professionals

#### 1. Application to Employ Debtors' Counsel

On September 30, 2025, the Debtors filed their *Application to Employ Rochelle McCullough, LLP* as its general bankruptcy counsel [Docket No. 122]. The time for filing an objection to such application lapsed without any objection being filed and on October 24, 2025, the application was granted, approving retention of Rochelle McCullough, LLP as counsel for the Debtors [Docket No. 157].

#### 2. Other Professionals

To facilitate the reorganization of the Debtors, the Debtors have sought to employ many different professionals to realize the greatest value for the creditors of the estates:

On September 30, 2025, the Debtors filed their *Application for Approval of Employment of Lain, Faulkner & Co., P.C., as Accountant and Financial Advisor* [Docket No. 123]. The time for filing an objection to such application lapsed without any objection being filed and on October 24, 2025, the application was granted, approving retention of Lain, Faulkner & Co., P.C., as accountant and financial advisor for the Debtors [Docket No. 158].

On October 19, 2025, the Debtors filed their *Application to Employ Local Liquidators as Auctioneer* [Docket No. 136]. The Court approved the retention of Local Liquidators as auctioneer for the Debtors on October 23, 2025 [Docket No. 153].

On October 20, 2025, the Debtors filed their *Application for Approval of Employment of Dinsmore & Shohl, LLP as Special Coun*sel [Docket No. 142]. The time for filing an objection to such application lapsed without any objection being filed and on November 14, 2025, the application was granted, approving retention of Dinsmore & Shohl, LLP as special counsel for the Debtors [Docket No. 188].

On November 10, 2025, the Debtors filed their *Application for Approval of Employment of A&G Realty Partners, LLC as Real Estate Consultant* [Docket No. 172]. The time for filing an objection to such application lapsed without any objection being filed and on December 3, 2025, the application was granted, approving retention of A&G Realty Partners, LLC as Real Estate Consultant for the Debtors [Docket No. 205].

### D. Assumption and Rejection of Leases

In conjunction with the other First Day Motions, on September 2, 2025 the Debtors filed their *Emergency Motion to Reject Leases of Nonresidential Real Property* [Docket No. 7] (the "Lease Rejection Motion") seeking to reject the lease agreements at the following restaurant locations: (1) Chandler, Arizona; (2) Katy, Texas; (3) Kissimmee, Florida; (4) League City, Texas;

(5) The Colony, Texas; and (6) Tulsa, Oklahoma. The Court entered an order granting the Lease Rejection Motion on September 25, 2025. [Docket No. 115].

On September 10, 2025, the Debtors filed the *Emergency Motion for Entry of an Order (I) Authorizing and Approving Procedures to Reject or Assume Executory Contracts and Unexpired Leases and (II) Granting Related Relief* ("Contract Procedures Motion") [Dkt. No. 80]. The Court later entered an Order granting the Contract Procedures Motion on September 23, 2025 [Dkt. No. 108].

### 1. Motions To Extend Time to Assume or Reject Leases of Nonresidential Real Property

The initial deadline for the Debtors to assume or reject nonresidential real property leases was December 31, 2025 (the "Initial Deadline"). On December 4, 2025, the Debtors filed the *Motion Pursuant to 11 U.S.C. §365(d)(4) for the Extension of Time Period Within Which Debtor May Assume or Reject Leases of Nonresidential Real Property* ("First Extension Motion") seeking to extend the Initial Deadline to March 31, 2026 [Docket No. 206]. An objection to the First Extension Motion was filed by Hulen Mall, LLC on December 29, 2025 [Docket No 213].

On December 30, 2025, this Court entered an Order granting the First Extension Motion extending the Initial Deadline to March 31, 2026 [Docket. No. 215].

On March 6, 2026, the Debtors filed the *Second Motion Pursuant to 11 U.S.C. §365(d)(4) for the Extension of Time Period Within Which Debtor May Assume or Reject Leases of Nonresidential Real Property* (the "Second Extension Motion") pursuant to which the Debtors sought an extension of the deadline to assume or reject other remaining leases until the earlier of (a) the date of entry of an order confirming a plan of reorganization or (b) June 29, 2026. The Court entered an *Order Granting Second Motion Pursuant to 11 U.S.C. §365(d)(4) for the Extension of Time Period Within Which Debtors May Assume or Reject Leases of Nonresidential Real Property* [Docket No. 238].

### 2. Rejection of Leases

The Debtors filed a *Notice of Rejection* of two Austin, Texas leases on September 25, 2025 [Docket No. 113]. The Debtors filed a *Notice of Rejection* of The Colony, Texas lease on October 19, 2025 [Docket No. 139]. The Debtors filed a *Notice of Rejection* of the E. Wichita Lease on November 9, 2025 [Docket No. 169]. The Debtors filed a *Notice of Rejection* of the Tulsa Lease on November 13, 2025 [Docket No. 180].

### 3. Assumption of Leases

The Debtors have assumed fourteen leases, including thirteen lease agreements associated with restaurants and one lease agreement associated with the Debtors' headquarters. On March 6, 2026, the Debtors filed a *Motion to Assume Unexpired Leases of Nonresidential Real Property* (the "First Assumption Motion") seeking to assume those leases associated with restaurants located at West Wichita, Kansas; Peoria, Arizona; and Tyler, Texas effective as of March 31, 2026. [Docket No. 222]. The Court entered an *Order Granting the Motion to Assume Unexpired Leases of Nonresidential Real Property* on March 31, 2026 [Docket No. 237].

On April 7, 2026, the Debtors filed the *Second Motion to Assume Unexpired Lease of Nonresidential Real Property* (the "Second Assumption Motion") seeking to assume the lease associated with the restaurant located at Rogers, Arkansas [Docket No. 241]. The Court entered an *Order Granting the Second Motion to Assume Unexpired Leases of Nonresidential Real Property* on April 29, 2026 [Docket No. 259].

On June 5, 2026, the Debtors filed a *Notice of Assumption of Certain Executory Contracts and/or Unexpired Leases* ("Lease Assumption Notice") seeking to assume those leases associated with restaurants at the following locations:

- Amarillo, Texas
- Lubbock, Texas
- Midland, Texas
- Abilene, Texas
- Hurst, Texas
- Arlington, Texas
- Myrtle Beach, South Carolina
- Fort Worth, Texas
- Lakeland, Florida

In addition, the Debtors sought to assume the lease associated with their headquarters building located in Lubbock, Texas in the Lease Assumption Notice. The Court entered an *Order Pertaining to Notice of Assumption of certain Executory Contracts and/or Expired Leases* on June 26, 2026 [Docket No. 283].

### E. Sale Motions

### 1. The Colony

On October 19, 2025, Debtors filed the *Emergency Motion to Sell Personal Property of the Estate by Public Auction Free and Clear of all Liens, Claims, Interests and Encumbrances Pursuant to §363 of the Bankruptcy Code* ("First Sale Motion") proposing to close the restaurant located at 5733 State Hwy 121, The Colony, Texas 75056 (the Colony") and sell at public auction the furniture, equipment, inventory and supplies as well as reject the lease [Docket No. 137]. A joint limited objection to the First Sale Motion was filed on October 20, 2025, by Denton County, City of The Colony, and Lewisville ISD [Docket N. 140]. On October 24, 2025, the Court entered an Order approving the First Sale Motion [Docket No. 154].

### 2. East Wichita

On November 9, 2025, the Debtors filed the *Second Emergency Motion to Sell Personal Property of the Estate by Public Auction Free and Clear of all Liens, Claims, Interests and Encumbrances Pursuant to §363 of the Bankruptcy Code* (the "Second Sale Motion") proposing to close the restaurant located at 1413 N. Waterfront Parkway, Wichita, Kansas 67206 ("East Wichita")

and sell at public auction the furniture, equipment, inventory and supplies as well as reject the ground lease [Docket No. 167]. On November 14, 2025, the Court entered an Order approving the Second Sale Motion [Docket No. 191].

### 3. Tulsa

On November 13, 2025, the Debtors filed the *Amended Third Emergency Motion to Sell Personal Property of the Estate by Public Auction Free and Clear of all Liens, Claims, Interests and Encumbrances Pursuant to §363 of the Bankruptcy Code* (the "Third Sale Motion") proposing to close the restaurant located at 1531 W 81st Street, Tulsa, Oklahoma 74132 ("Tulsa") and sell at public auction the furniture, equipment, inventory and supplies as well as reject the ground lease [Docket No. 181]. On November 20, 2025, the Court entered an Order approving the Third Sale Motion [Docket No. 197].

### F. Motion to Extend Exclusivity Period

On December 4, 2025, the Debtors filed the *Motion to Extend the Exclusive Period During Which Debtor May File and Solicit Acceptances of a Chapter 11 Plan* ("First Exclusivity Motion") [Docket No. 207]. The Court subsequently entered an order granting the First Exclusivity Motion, and the Debtor's exclusivity period to file a plan was extended until March 1, 2026, and the period to solicit and obtain acceptances of a plan was extended until April 30, 2026 [Dkt. 214].

On April 7, 2026, the Debtors filed a *Second Motion to Extend the Exclusive Period During Which Debtor May Solicit Acceptances of a Chapter 11 Plan* ("Second Exclusivity Motion") [Docket No. 242]. The Debtors sought additional time to solicit acceptances of the plan as they continued negotiations with their senior secured lender. The Court subsequently entered an Order granting the Second Exclusivity Motion, and the Debtor's exclusivity period to solicit and obtain acceptances of a plan was extended through and including June 29, 2026 [Docket No. 260].

On June 5, 2026, the Debtors filed a *Third Motion to Extend the Exclusive Period During Which Debtor May Solicit Acceptances of a Chapter 11 Plan* ("Third Exclusivity Motion"). The Debtors sought additional time to solicit acceptances of the plan to work on the final terms of the agreement with their secured lender. The Court subsequently entered an Order granting the Third Exclusivity Motion, and the Debtor's exclusivity period to solicit and obtain acceptances of a plan was extended through and including August 28, 2026 [Docket No. 284].

### G. EEOC Claims

### a. Hunter Claim

Kim Hunter ("Hunter") was previously employed by FCI. Hunter made allegations against FCI related to her employment with and separation from FCI and filed Charges of Discrimination against FCE with the Equal Employment Opportunity Commission, charge numbers 540-2025-06115 and 540-2025-06865. FCI denied that it is liable to Hunter on any basis or that it has engaged in any improper or unlawful conduct or wrongdoing with respect to Hunter's employment.

After a period of negotiations, the FCI and Hunter reached an agreement which resolved any and all disputes that existed, may have existed, or that may exist between the Parties, either known or unknown. Accordingly, on February 17, 2026, the Debtors filed the *Motion for Approval of Compromise and Settlement Agreement with Kim Hunter* ("Hunter Settlement Motion") [Docket

No. 219]. The Court entered an Order approving the Hunter Settlement Motion on March 13, 2026 [Docket No. 228].

### b. Lloyd Claim

Jessica Lloyd ("Lloyd") was previously employed by FCI. Lloyd made allegations against FCI related to her employment with and separation from FCI and has filed a Charge of Discrimination against FCI with the Equal Employment Opportunity Commission, charge number 511-2025-01730. FCI denied that it was liable to Lloyd on any basis or that it has engaged in any improper or unlawful conduct or wrongdoing with respect to Lloyd's employment.

After a period of negotiations, the FCI and Lloyd reached an agreement which resolved any and all disputes that existed, may have existed, or that may exist between the Parties, either known or unknown. Accordingly, on February 17, 2026, the Debtors filed *the Motion for Approval of Compromise and Settlement Agreement with Jessica Lloyd* ("Lloyd Settlement Motion") [Docket No. 220]. The Court entered an Order approving the Lloyd Settlement Motion on March 13, 2026 [Docket No. 228].

### H. Cash Collateral and DIP Financing

### a. Cash Collateral

On September 3, 2025, Debtors filed their *Emergency Motion for Interim and Final Orders (I) Authorizing Use of Cash Collateral; (II) Granting Adequate Protection; and (III) Scheduling a Final Hearing* [Docket No. 11] (the "Cash Collateral Motion").

On September 5, Court entered interim order authorizing the Debtors to use Cash Collateral until September 26, 2025. [Docket No. 55].

On September 23, 2025, the Court entered a Final Cash Collateral Order authorizing the Debtors to use Cash Collateral until December 31, 2025 [Docket No. 110].

On December 26, 2025, the Debtors filed a *Notice of Approved Budget Authorizing Use of Cash Collateral* through and including March 27, 2026. On March 23, 2026, the Debtors filed a *Notice of Approved Second Extended Budget Authorizing Continued Use of Cash Collateral* for a three month period through and including June 26, 2026.

### b. DIP Financing

On September 3, 2025, the Debtors filed the *Emergency Motion for Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing; (II) Granting Superpriority Administrative Claims; and (III) Scheduling a Final Hearing* (the "DIP Financing Motion") requesting entry of Interim and Final Orders authorizing them to enter into a post-petition line of credit with the DIP Lenders of up to $1,500,000 including $500,000 in interim financing [Docket No. 12].

On September 5, 2025, the Court entered an Interim Order authorizing the Debtors to obtain post-petition financing [Docket No. 56]. On September 23, 2025, the Court entered a Final Order authorizing the Debtors to obtain post-petition financing up to $1,500,000 [Docket No. 109].

## ARTICLE I
## ASSETS, LIABILITIES, AND BUSINESS OPERATIONS OF THE DEBTORS

**1.1 Assets of the Debtors**

The following is a summary description of the Debtors' and their Estates' principal assets. The information has been compiled from the Debtors' unaudited records as reflected in the Debtors' Schedules, Statement of Financial Affairs and Monthly Operating Reports.

a. **Abuelo's International, L.P.**: As of Petition Date, ABI possessed $1,325,883.50 in cash; $943,106.56 in deposits and prepayments; $370,611.00 in accounts receivable; $643,536.32 in inventory; and $8,978,446.00 in office furniture, fixtures, and equipment. These are all book values. The actual realizable value of the furniture, fixtures and equipment is a fraction of the indicated book value.

b. **Food Concepts International Holdings, Inc.:** As of Petition Date, FCIH possessed $2,595.39 in cash and $18,826,269.00 in tax credits comprised of a Net Operating Loss Carryforward of $2,224,693.00 and a Federal FICA Tip Credit Carryforward of $16,601,576.00.

c. **Food Concepts International, L.P.:** As of Petition Date, FCI possessed $28,763.10 in cash; $51,871.67 in deposits and prepayments; $15,234.00 in office furniture, fixtures, and equipment; and $61,453.85 in all other assets.

**1.2 Liabilities of the Debtors**

The following is a summary description of the Debtors' and their Estates' principal liabilities. The information has been compiled from the Debtors' unaudited records as reflected in the Debtors' Schedules and filed Proofs of Claim.

**(a) Property Taxes**

The Debtors estimate that, as of the Petition Date, they owe approximately $222,000.00 to various taxing authorities.

**(b) FBT Loans**

The Debtors estimate that, as of the Petition Date, they owed $8,031,000.00 on the FBT Notes, secured by substantially all of the Debtors assets. Each Debtor is jointly and severally liable under the FBT Notes. FBT has filed its Proof of Claim (Proof of Claim No. ), asserting that it has a claim with a total value of $8,142,148.53.

**(c) Priority Wage Claims**

The Debtors owe approximately $91,000.00 to employees who agreed to defer part their compensation during the 180 days preceding the Petition Date in order to assist the Debtors in managing their cash flow.

**(d)**        **Unsecured Claims**

The Debtors estimate the Allowed Unsecured Claims in this case will be approximately $5,3476,000 owed to landlords with rejection claims, trade vendors and other general unsecured creditors.

## 1.3     Business Operations, in General

Under the Plan, the Debtors will continue to operate the thirteen remaining restaurants. Parties are referred to the Projections at **Exhibit B** for the Debtors' current estimates of future operations.

Following confirmation of the Plan, the Reorganized Debtors believe that they will be well-positioned to proceed with the continued operation of their restaurants on a profitable basis and with an overall reduction in the Debtors' total long term liabilities.

**ARTICLE II**
**THE PLAN OF REORGANIZATION**

## 2.1     The Plan, in General

In general, the Plan provides for the continued operations of a core group of restaurants totaling 13 locations as set forth in Section 1.3 above. The Debtors have identified these locations as being sufficiently profitable to support the payments proposed in the Plan. In sum, the Plan provides Holders of Claims a clear payment schedule. Attached as **Exhibit B** are Plan Projections that reflect the schedule of payments to Holders of Claims and the estimated operations of the Debtors through the Plan Term.

## 2.2     Discharge of Claims and Interests

The Plan classifies eight (8) Classes of Claims and Interests. The Plan impairs Classes 4-8. A chart summarizing the treatment of unclassified Claims and a chart summarizing the treatment of the classified Claims and Interests is set forth below in Section 2.5 of this Disclosure Statement.

## 2.3     Unclassified Claims Summary

**(a)**        **Unclassified Claims**

Under Section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

**(b)**        **Administrative Expense Claims**

On the Plan Effective Date or as soon thereafter as such Allowed Administrative Expense Claim becomes due and payable according to its terms, Allowed Administrative Expense Claims shall be paid in full in Cash by the Reorganized Debtors from Cash on hand, except to the extent that any Holder of an Allowed Administrative Expense Claim agrees to less favorable treatment,

in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Administrative Expense Claim.

**(c)        Professional Fees**

Holders of Administrative Claims for Professional Fees shall file and serve applications for final allowance and payment of their Professional Claim no later than the first Business Day that is forty-five (45) days after the Plan Effective Date. Objections to any Professional Claim must be filed and served on the Reorganized Debtors and the applicable Professional within thirty (30) days after the filing of the final fee application with respect to the Professional Claim.  A hearing to consider final fee application of a Professional, and any outstanding objections thereto, shall be scheduled for a date and time as the Bankruptcy Court directs.

From and after the Plan Effective Date, any requirement that a Professional comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

**(d)        Priority Tax Claims**

Except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtors or the Reorganized Debtors, as applicable, agree to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive, at the option of the Reorganized Debtor: (a) payment in full of such Allowed Priority Tax Claim on the Distribution Date; or (b) treatment in accordance with the provisions of Sections 1129(a)(9)(C) or 1129(a)(9)(D) of the Bankruptcy Code, as the case may be, by payment in full amortized over forty-two (42) equal monthly installments (the "Installment Period"), with interest on such Allowed Priority Tax Claims after the Plan Effective Date in accordance with Sections 511 and 1129(a)(9)(C) of the Bankruptcy Code, beginning on the Plan Effective Date.

Such Installment Period payments shall commence on the first Business Day of the first month that is not less than thirty (30) days after the Plan Effective Date and shall continue to be paid on the first Business Day of each month thereafter. To the extent there is then any outstanding balance on an Allowed Priority Tax Claim, it shall be paid on the first Business Day of the sixtieth (60th) month following the Petition Date.

**(e)        Statutory Fee**

On or before the Plan Effective Date, the Debtors shall have paid in full in Cash all fees due and payable pursuant to section 1930 of Title 28 of the United States Code. On and after the Plan Effective Date, the Reorganized Debtors shall timely pay all such fees when due and payable and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the

U.S. Trustee for each quarter (or portion thereof) that such Debtors' cases remain open. The Reorganized Debtors shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of the cases being closed, dismissed, or converted to cases under chapter 7 of the Bankruptcy Code.

(f)        **EXCEPTION: Payment of Ordinary Course Administrative Expense Claims**

Any and all Claims of a kind specified in paragraph (2) of § 507(a) of the Bankruptcy Code that are incurred in the ordinary course of business of the Debtors during the cases prior to the Effective Date will be paid in accordance with the customary terms of payment between the Debtors and the Creditor.

**2.4     Classified Claims and Interests**

(a)        **Classified Claims and Interests Summary**

The Plan establishes a comprehensive classification of Claims and Interests. The table below summarizes the classification, treatment, and projected recoveries of the Claims and Interests, by Class, under the Plan.

**THE PROJECTED RECOVERIES SET FORTH IN THE TABLE BELOW ARE ESTIMATES ONLY AND THEREFORE ARE SUBJECT TO CHANGE. FOR A COMPLETE DESCRIPTION OF THE PLAN'S CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS, REFERENCE SHOULD BE MADE TO THE ENTIRE PLAN, ATTACHED AS EXHIBIT A.**

| SUMMARY OF CLASSIFICATION & TREATMENT UNDER PLAN | | | | |
|---|---|---|---|---|
| **Class** | **Claim/Equity Interest** | **Treatment of Claim/Interest** | **Impairment** | **Projected Recovery Under the Plan** |

| 1 | **Other Priority Claims** | Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Priority Claim, each such Holder shall receive, at the option of the Reorganized Debtor, either: (i) payment in full in Cash; or (ii) other treatment rendering such Claim Unimpaired or otherwise permitted by the Bankruptcy Code and equitable to that described in Article III.D of the Plan. | **Unimpaired** | **100%** |
|---|---|---|---|---|
| 2 | **Priority Wage Claims** | Except to the extent that a Holder of an Allowed Wage Priority Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Wage Priority Claim, each such Holder shall receive, at the option of the Reorganized Debtors, either: payment in full in Cash within 90 days from the Effective Date; or other treatment rendering such Claim Unimpaired or otherwise permitted by the Bankruptcy Code and equitable to that described in Article III.D. | **Unimpaired** | **100%** |
| 3 | **Secured Tax Claims** | Except to the extent that a Holder of an Allowed Secured Tax Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Secured Tax Claim, each such Holder shall receive payment in full by the Reorganized Debtors on the Refinance Date, with interest on the Allowed Secured Tax Claims at the | **Impaired** | **100%** |

| | | | | |
|---|---|---|---|---|
| | | applicable statutory rate of interest from the Petition Date through the date of payment in accordance with Sections 511 and 1129(a)(9)(C) of the Bankruptcy Code. Any tax liabilities to a Holder of an Allowed Secured Tax Claim that was incurred by the Debtors, or has or will come due from the Debtors after the Petition Date shall be paid by the Debtors, or Reorganized Debtors as it may be, in the ordinary course of business, subject to all applicable non-bankruptcy laws including penalty and interest, when due without further notice to or order of the Bankruptcy Court. *Collateral*. Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interests securing an Allowed Secured Tax Claim shall remain in full force and effect following the Plan Effective Date to the extent such Holder is entitled to such liens, against the applicable property of the Debtors until such time as they are paid in full. To the extent necessary, the Debtors grant each such Holder of an Allowed Secured Tax Claim replacement liens and security interests in accordance with the Bankruptcy Code co-extensive with any pre-existing liens held by such creditor, with such replacement liens being automatically perfected without the need for further record filings. | | |
| 4 | **FBT Secured Claim** | Except to the extent that the Holder of the Allowed FBT Secured Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for the Allowed FBT Secured Claim, such Holder shall | **Impaired** | **100%** |

| | | | | |
|---|---|---|---|---|
| | | receive the FBT Payoff Amount on the Effective Date. | | |
| 5 | **Other Secured Claims** | Holders of Other Secured Claims shall receive, in full and final satisfaction, settlement, release, and discharge of and in exchange for the each such Secured Claim, a note bearing a principal amount equal to the amount of the Class 5 Claim, as determined by the Bankruptcy Court or agreement of the parties, with a fully amortized term of sixty (72) months and with interest on such Class 5 Claim after the Plan Effective Date at the Plan Rate. *Collateral*. Except to the extent inconsistent herewith or with the law, the validity and priority of any Lien securing an Other Secured Claim shall remain in full force and effect following the Plan Effective Date with the same lien priority which existed on the Petition Date. | **Impaired** | **100%** |
| 6 | **General Unsecured Claims** | Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed General Unsecured Claim, each such Holder shall receive its pro rata share of the General Unsecured Creditor Distribution payable over 20 equal quarterly installments without interest on such Allowed General Unsecured Claims after the Plan Effective Date. The initial General Unsecured Creditor Distribution shall be made on the last day of the first full quarter following the Plan Effective Date | **Impaired** | **10%** |

| 7 | **Convenience Class Claims** | All Holders of Convenience Class Claims shall receive in full and final satisfaction, settlement, release, and discharge of and in exchange for each Convenience Class Claim, 20% of their Allowed Claim amount which shall be paid within 90 days following the Effective Date. | **Impaired** | **20%** |
|---|---|---|---|---|
| 8 | **Equity Interest Holders of the Debtors** | Holders of Interests in FCIH shall receive nothing under this Plan on account of their existing Interests in FCIH and such Interests shall be cancelled on the Effective Date. Holders of Interests in FCIH shall be offered the right to participate in the equity rights offering described in Article V.B. of the Plan. | **Impaired** | **0%** |

**(b)**      **Special Prepayment Provisions Governing Treatment of Certain Classes**

**Optional Prepayment**. In the sole discretion of the Reorganized Debtors, any Allowed Claim in Classes 1, 2, 3, 5 and 6 may be prepaid, in full or in part, without penalty or fee at any time.

**(c)**      **Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

**(d)**      **Elimination of Vacant Classes**

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**(e)**      **Subordinated Claims**

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under

general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtors reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### (f)      Controversy Concerning Impairment

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

### (g)      Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to the Plan. The Debtors will seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Impaired Class of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

## 2.5    Means for Implementation of the Plan

### (a)      General Settlement of Claims and Interests

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Plan Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, the Estate, and Holders of Claims and Interests and is fair, equitable, and is within the range of reasonableness. Subject to Article VI of the Plan, all distributions made to Holders of Allowed Claims and Allowed Interests in any Class are intended to be and shall be final.

### (b)      DIP Conversion and Equity Rights Offering

On the Effective Date, the principal balance of the DIP Loan shall be fully satisfied and converted to equity in FCIH on the following terms:

(a) $1,000,000 of the principal amount shall be converted into 50 shares of Series A Super Voting Preferred Stock of FCIH.   This Super Voting

Preferred Stock shall have (i) no liquidation preference, but on sale or liquidation, it will receive the equivalent consideration as 40,000 shares of Common Stock of FCIH per Preferred Share (ii) common stock voting rights of 120,000 votes per Preferred Share and (iii) dividend rights equal to 40,000 shares of common stock per share.

(b) $500,000 of principal amount shall be converted into 10 shares of Series B Non Voting 8.5% pay in kind ("PIK") Preferred Stock of FCIH.  This Series B PIK Preferred Stock shall have (i) a $60,000 liquidation preference per share, (ii) no voting rights, (iii) dividend rights equal to 100,000 shares of common stock per share, (iv) PIK dividend rights which shall accumulate quarterly at 2.125%, and (v) shall be callable after 3 years.  In the event of no call, the PIK Dividend Rate shall increase by 1% beginning in year 4 with further 1% increases annually with a maximum rate of 12%.

**Equity Rights Offering**.  Each Holder of Interests in FCIH as of the Record Date shall be offered the exclusive, non-assignable pro-rata right to subscribe to both the Super Voting Preferred Stock and the PIK Preferred Stock described above.  Fractional shares of each issue will be offered. The documents describing these offerings in further detail will be included in the Plan Supplement. Any subscriber to the Super Voting Preferred Stock shall be required to indemnify the guarantor(s) of the Exit Financing in an amount of $100,000 per share with any fractional share rounded up to the next whole share amount.  For example, if .40 of a share is purchased, the indemnity amount shall be $100,000.00 and if 1.40 of a share is purchased, the indemnity amount shall be $200,000.00.

**Exemption from Securities Laws**.  The offer, issuance, sale, and delivery of the Series A Super Voting Preferred Stock and the PIK Preferred Stock, and the distribution thereof, are made in reliance on the exemption from registration provided by Section 1145(a)(1) of the Bankruptcy Code, and such securities shall not be subject to registration under the Securities Act of 1933, as amended (the 'Securities Act'), or any state securities laws.

(c)      **Sources of Plan Payments**

The Reorganized Debtors shall make use of a combination of its business income during the Plan Period and capital created by conversion of the DIP Loan to equity in the Reorganized Debtors to make all payments required by the Plan.

(d)      Company Existence, Organizational Documents, and Management

The Reorganized Debtors shall continue to exist after the Plan Effective Date as Entities with all the powers of corporations pursuant to the applicable law in the State in which the Debtors are formed.

The Reorganized Debtors' operating agreements in effect prior to the Plan Effective Date shall be cancelled effective on the Plan Effective Date, except to the extent such operating agreements are amended under the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law). Drafts of any amended operating agreements or by-laws will be included in the Plan Supplement. After the Plan Effective Date, the Reorganized Debtors may amend and restate their formation, organizational, and constituent documents as permitted by the laws of its respective jurisdiction of formation and the terms of such documents.

The initial Directors of FCIH on the Effective Date will be Randy Andrews and David Sharbutt. Thereafter, the Directors of FCIH shall be elected in accordance with the FCIH by laws as amended and effective on the Effective Date. The Directors of FCIH shall elect the managers and officers of all other Debtors.

The key executives of the Reorganized Debtors will be John Dorrington, Chief Executive Officer and Jeff Dossett, Chief Financial Officer.

(e)      **Substantive Consolidation**

Except as otherwise provided in this Plan, each Debtor shall continue to maintain its separate corporate existence after the Effective Date for all purposes other than the treatment of Claims under this Plan. Except as expressly provided in this Plan (or as otherwise ordered by the Bankruptcy Court), on the Effective Date: (a) all assets (and all proceeds thereof) and liabilities of the Debtors shall be deemed merged or treated as though they were merged into and with the assets and liabilities of each other; (b) no distributions shall be made under this Plan on account of inter-Debtor Claims among the Debtors and all such Claims shall be eliminated and extinguished; (c) all guaranties of the Debtors of the obligations of any other Debtor shall be deemed eliminated and extinguished so that any Claim against any Debtor, and any guarantee thereof executed by any Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Debtors; (d) each and every Claim filed or to be filed in any of the Chapter 11 Cases shall be treated filed against the consolidated Debtors and shall be treated as one Claim against and obligation of the consolidated Debtors; and (e) for purposes of determining the availability of the right of set off under section 553 of the Bankruptcy Code, the Debtors shall be treated as one entity so that, subject to the other provisions of section 553 of the Bankruptcy Code, debts due to any of the Debtors may be set off against the debts of any of the other Debtors. Such substantive consolidation shall not (other than for purposes relating to this Plan) affect the legal and corporate structures of the Reorganized Debtors. Moreover, such substantive consolidation shall not affect any subordination provisions set forth in any agreement relating to any Claim or Interest or the ability of the Reorganized Debtors to seek to have any Claim or Interest subordinated in accordance with any contractual rights or equitable principles. Notwithstanding anything in this section to the contrary, all post-Effective Date fees payable to the United States Trustee pursuant

to 28 U.S.C. § 1930, if any, shall be calculated on a separate legal entity basis for each Reorganized Debtor.

**(f)** **Vesting of Assets in the Reorganized Debtors**

Except as otherwise provided in the Plan, or in any agreement, instrument, or other document incorporated in the Plan, on the Plan Effective Date, all property of the Estates, all Causes of Action, and any property acquired by the Debtors under the Plan shall vest in the Reorganized Debtors, free and clear of all Liens, Claims, charges, or other encumbrances, except the Liens specifically provided for by the Plan. On and after the Plan Effective Date, except as otherwise provided herein, the Reorganized Debtors may operate their businesses and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**(g)** **Executory Contracts and Unexpired Leases**

Pursuant to Article VI of the Plan and except as otherwise provided in the Plan, the Debtors will assume the Executory Contracts and Unexpired Leases set forth on the Assumed Contracts Schedule, attached hereto as **Schedule 1**, and pay when due any amounts due and payable thereunder. Any Executory Contract or Unexpired Lease not included in the Assumed Contracts Schedule, as it may be modified in the Plan Supplement, or otherwise subject to a pending motion to Assume on the date of the Confirmation Hearing, shall be deemed Rejected. Any modifications to the Assumed Contracts Schedule will be included in the Plan Supplement. The Debtors reserve the right to amend the Assumed Contracts Schedule at any time prior to the Plan Effective Date and will provide notice of any such amendment to the affected counterparty.

**2.6** **Acceptance and Confirmation of the Plan**

**(a)** **Requirements for Confirmation.**

At the Confirmation Hearing, the Court will determine whether the provisions of section 1129 of the Code have been satisfied. Section 1129 of the Bankruptcy Code, as applicable here, provides as follows:

> The Plan must comply with the applicable provisions of the Code, including section 1123 which specifies the mandatory contents of a plan and section 1122 which requires that Claims and Interests be placed in Classes with "substantially similar" Claims and Interests (Section 1129(a)(1)).

> The Plan must comply with the applicable provisions of the Code (Section 1129(a)(2)).

> The Plan must have been proposed in good faith and not by any means forbidden by law (Section 1129(a)(3)).

Any payment made or to be made by the Debtors, or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in or in connection with the Case, or in connection with the Plan and incident to the Case, must be disclosed to the Court and approved or be subject to the approval of the Court as reasonable (Section 1129(a)(4)).

The Debtors must disclose the identity and affiliations of any individual proposed to serve, after Confirmation of the Plan, as a director, officer, or voting trustee of the reorganized debtor, of an Affiliate of the Debtors participating in the Plan with the Debtors, or of a successor to the Debtors under the Plan. The appointment to, or continuance in, such office of such individual must be consistent with the interests of the Debtors' creditors, equity holders, and with public policy. The Debtors must also disclose the identity of any insider that will be employed or retained by the Reorganized Debtors and the nature of any compensation for such insider (Section 1129(a)(5)).

The Plan must meet the "best interest of creditors" test which requires that each holder of a Claim or Interest of a Class of Claims or Interests that is impaired under the Plan either accept the Plan or receive or retain under the Plan on account of such Claim or Interest property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated on such date under Chapter 7 of the Code. If the holders of a Class of Secured Claims make an election under Section 1111(b) of the Code, each holder of a Claim in such electing Class must receive or retain under the Plan on account of its Claim property of a value, as of the Effective Date of the Plan, that is not less than the value of its interest in the Debtors' interest in the property that secures its Claim (Section 1129(a)(7)). To calculate what non-accepting holders would receive if the Debtors were liquidated under Chapter 7, the Court must determine the dollar amount that would be generated upon disposition of the Debtors' assets and reduce such amount by the costs of liquidation. Such costs would include the fees of a Trustee (as well as those of counsel and other professionals) and all expenses of a sale.

Each Class of Claims or Interests must either accept the Plan or not be impaired under the Plan (Section 1129(a)(8)). Alternatively, as discussed herein, the Plan may be confirmed over the dissent of a Class of Claims or Interests if the "cramdown" requirements of Section 1129(b) of the Code are met.

Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan must provide that holders of Administrative Claims and Priority Claims (other than tax claims) will be paid in full in cash on the Effective Date of the Plan, and that holders of priority tax Claims will receive

on account of such Claims deferred cash payments, over a period not exceeding six (6) years after the date of assessment of such tax, of a value, as of the Effective Date of the Plan, equal to the Allowed amount of such Claim (Section 1129(a)(9)).

At least one impaired Class must accept the Plan, determined without including the acceptance of the Plan by any insider holding a Claim of such Class (Section 1129(a)(10)).

The Plan must be "feasible". In other words, it cannot be likely that confirmation of the Plan will be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors under the Plan, unless such liquidation is proposed in the Plan (Section 1129(a)(11)).

All fees required to be paid under the Code have been paid or the Plan provides for such payment on its Plan Effective Date (Section 1129(a)(12)).

(b)      **Best Interests Test / Liquidation Analysis**

As described above, Section 1129(a)(7) of the Bankruptcy Code requires that each Holder of an Impaired Claim or Interest either (a) accept the Plan or (b) receive or retain under the Plan property of a value, as of the Plan Effective Date, that is not less than the value such Holder would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code. Based on the Liquidation Analysis attached hereto as **Exhibit C**, the Debtors believe that the value of any distributions if the Chapter 11 Cases were converted to cases under Chapter 7 of the Bankruptcy Code would be no greater than the value of distributions under the Plan and would likely be materially less. As a result, the Debtors believe Holders of Claims or Interests in all Impaired Classes will recover at least as much through Confirmation of the Plan as they would recover through a hypothetical Chapter 7 liquidation.

(c)      **Feasibility**

The Bankruptcy Code requires that a debtor demonstrate that confirmation of a Plan of reorganization is not likely to be followed by liquidation or the need for further financial reorganization. For purposes of determining whether the Plan meets this requirement, the Debtors believe all payments required under the Plan will be made. The Debtors projections attached as **Exhibit B** show that the Debtors will be able to make the payments required by the Plan. Therefore, Confirmation of the Plan is not likely to be followed by liquidation or the need for further reorganization.

(d)      **Confirmation Without Acceptance by All Impaired Classes**

The Bankruptcy Court may confirm the Plan over the rejection or deemed rejection of such Plan by an Impaired Class of Claims or Interests if the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such Class.

**(e)**        **No Unfair Discrimination**

This test applies to classes of Claims or Interests that are of equal priority and are receiving different treatment under the Plan. The test does not require that the treatment be the same or equivalent, but that such treatment be "fair." Here, the Debtors do not believe the Plan discriminates unfairly against any Impaired Class of Claims or Interests. The Debtors believe the Plan and the treatment of all Classes of Claims or Interests under the Plan satisfy the foregoing requirements for nonconsensual confirmation.

**(f)**        **Fair and Equitable Test**

This test applies to classes of different priority and status (e.g., secured versus unsecured) and includes the general requirement that no class of claims receive more than 100% of the amount of the allowed claims in such class. As to the dissenting class, the test sets different standards depending on the type of claims or interests of the debtor in such class. To demonstrate that a plan is fair and equitable, the plan proponent must demonstrate:

**(i)** Secured Creditors: Each holder of a secured claim: (1) retains its liens on the property, to the extent of the allowed amount of its secured claim, and receives deferred cash payments having a value, as of the Plan Effective Date of the Plan, of at least the allowed amount of such claim; (2) has the right to credit bid the amount of its claim if its property is sold and retains its liens on the proceeds of the sale (or if sold, on the proceeds thereof); or (3) receives the "indubitable equivalent" of its allowed secured claim;

**(ii)** Unsecured Creditors: Either (1) each holder of an impaired unsecured claim receives or retains under the Plan property of a value equal to the amount of its allowed claim or (2) the holders of claims and interests that are junior to the claims of the non- accepting class will not receive any property under the Plan; and

The Debtors also believe the Plan satisfies the "fair and equitable" requirement even if not all Impaired Classes accept the Plan because, as to such Classes, they will receive the value of their Claims.

**(g)**        **Alternatives to Confirmation of the Plan**

If the Plan cannot be Confirmed, the Debtors may seek to (1) prepare and present to the Bankruptcy Court an alternative plan for confirmation, (2) effect a sale transaction, including, potentially, a sale of all or substantially all of the Debtors' assets pursuant to section 363 of the Bankruptcy Code, or (3) liquidate the Debtors under Chapter 7 of the Bankruptcy Code. If the Debtors were to pursue a liquidation, the Chapter 11 Cases would be converted to cases under Chapter 7 of the Bankruptcy Code and trustees would be elected or appointed to liquidate the assets of the Debtors for distribution in accordance with the priorities established by the Bankruptcy Code. As discussion of possible liquidation outcomes can be found in the Liquidation Analysis herein.

**(h)**          **The Plan Meets All of the Requirements for Confirmation**

The Debtors believe the Plan satisfies all statutory requirements of Chapter 11 of the Code and should be confirmed. More specifically:

**(i)**     The Plan complies with all of the applicable provisions of the Code;

**(ii)**    The Debtors have complied with the Code and have proposed the Plan in good faith;

**(iii)**   All disclosure requirements concerning payments made or to be made for services rendered in connection with the Chapter 11 case or the Plan have been, or will be met prior to or at the Confirmation Hearing; and

**(iv)**   Administrative Claims, Priority Claims, and fees required to be paid under the Code are appropriately treated under the Plan.

**(v)**    Plan Supplements--The Debtors may file certain documents that provide additional details regarding implementation of the Plan via one or more Plan Supplements. The Debtors may amend the documents contained in, and exhibits to, the Plan Supplement through the Plan Effective Date.

**ARTICLE III**
**LIQUIDATION ANALYSIS**

**3.1**      **Introduction**

As reflected in the Liquidation Analysis attached hereto as **Exhibit C**, the Debtors believe that the Plan provides a greater recovery for all Holders of Allowed Claims than would be achieved in a liquidation under Chapter 7 of the Bankruptcy Code. This conclusion is based on a number of considerations, including the speculative nature of valuing the Debtors, the cost to market, and the post-Confirmation positioning of Reorganized Debtors to redevelop the Property. The Plan proposes paying all non-Insider and non-Affiliate Allowed Claims in full and partially pay all Non-Debtor Affiliate Claims.

In a prospective Chapter 7 liquidation, additional expenses, including trustee fees and broker fees would significantly reduce the recoverable value for Holders of Allowed Claims. The time to market could also result in increased interest charges for secured creditors. As detailed below, under a liquidation scenario, Holders of Allowed Claims would receive less than through the proposed Plan.

**3.2**      **Value of Debtors' Assets if Sold in Chapter 7 Liquidation**

Attached hereto as **Exhibit C** is an exhibit summarizing and comparing the present value of the proposed plan treatment and the present value of prospective recoveries in several liquidation scenarios as to all classified Claims against and Interest in the Debtors under the Plan. Debtors reserve the right to object to the amount or classification of any Claim under the Plan, with successful objections to one or more Claims potentially materially impacting the recoveries projected therein.

**THE DEBTORS BELIEVE THAT CONFIRMATION AND IMPLEMENTATION OF THE PLAN IS PREFERABLE TO ANY OF THE ALTERNATIVES DESCRIBED**

**HEREIN BECAUSE IT WILL PROVIDE GREATER CERTAINTY AND SHOULD PROVIDE GREATER RECOVERIES THAN THOSE REASONABLY AVAILABLE IN A CHAPTER 7 LIQUIDATION TO THE HOLDERS OF SECURED AND UNSECURED CLAIMS WHO WOULD LIKELY RECEIVE LESS IN A CHAPTER 7 LIQUIDATION. OTHER LIQUIDATION ALTERNATIVES WOULD INVOLVE DELAY, INCREASED COSTS, UNCERTAINTY, AND SUBSTANTIAL ADMINISTRATIVE COSTS.**

**ARTICLE IV**
**VOTING PROCEDURES, REQUIREMENTS, AND INSTRUCTIONS**

Holders of Claims or Interests entitled to vote will receive a copy of a Disclosure Statement package, including a Ballot setting forth detailed voting instructions. You should read your Ballot and carefully follow the instructions included in the Ballot to vote on the Plan. Please use only the Ballot that accompanies this Disclosure Statement.

**ACCEPTANCE OR REJECTION OF THE PLAN WILL BE DETERMINED, PURSUANT TO THE BANKRUPTCY CODE, BASED UPON THE ALLOWED CLAIMS AND ALLOWED INTERESTS THAT ACTUALLY VOTE ON THE PLAN. THEREFORE, IT IS IMPORTANT THAT CLAIMANTS EXERCISE THEIR RIGHT TO VOTE TO ACCEPT OR REJECT THE PLAN.**

**4.1    Classes Entitled to Vote on the Plan**

The following chart identifies the Classes that are and are not entitled to vote to accept or reject the Plan:

| Class | Claims or Interests | Voting Rights |
|---|---|---|
| 1 | Other Priority Claims | Not Entitled to Vote |
| 2 | Priority Wage Claims | Not Entitled to Vote |
| 3 | Secured Tax Claims | Not Entitled to Vote |
| 4 | FBT Secured Claims | Entitled to Vote |
| 5 | Other Secured Claims | Entitled to Vote |
| 6 | General Unsecured Claims | Entitled to Vote |
| 7 | Convenience Class Claims | Entitled to Vote |
| 8 | Equity Interest Holders of FCIH | Not Entitled to Vote |

All members of Impaired Classes who hold Allowed Claims are entitled to vote to accept or reject the Plan. Section 1124 of the Bankruptcy Code generally provides that a class of claims or interests is Impaired under a plan unless the plan does not alter the legal, equitable and contractual rights of the holders of such claims or interest. For purposes of Plan solicitation, all Classes of Claims are Impaired and are, therefore, entitled to cast ballots on this Plan. Interest holders are deemed to have rejected the Plan and are therefore not entitled to vote on the Plan.

**4.2     Persons Entitled to Vote on the Plan**

Only holders of Allowed Claims and holders of Disputed Claims which have been temporarily allowed for voting purposes are entitled to vote on the Plan. For purposes of the Plan, an Allowed Claim is (i) a Claim against or Interest in a Debtor, proof of which, if filed on or before the Bar Date, which is not a Contested Claim or Contested Interest, (ii) if no proof of claim or interest was so filed, a Claim against or Interest in a Debtor that has been or hereafter is listed by a Debtor in the Schedules as liquidated in amount and not disputed or contingent, or (iii) a Claim or Interest allowed hereunder or by Final Order. An Allowed Claim or Allowed Interest does not include any Claim or Interest or portion thereof which is a Disallowed Claim or Disallowed Interest which has been subsequently withdrawn, disallowed, released or waived by the holder thereof, by this Plan, or pursuant to Final Order. Unless otherwise specifically provided in the Plan, an Allowed Claim or Allowed Interest shall not include any amount for punitive damages or penalties. Therefore, although the holders of Disputed Claims will receive ballots, these votes will not be counted unless such Claims become Allowed Claims as provided under the Plan or are temporarily allowed for voting purposes by the Court.

**4.3     Vote Required for Class Acceptance**

During the Confirmation Hearing, the Bankruptcy Court will determine whether the Classes voting on the Plan have accepted the Plan by determining whether sufficient acceptances have been received from the holders of Allowed Claims actually voting in such Classes. A Class of Claims will be determined to have accepted the Plan if the holders of Allowed Claims in the Class casting votes in favor of the Plan (i) hold at least two-thirds of the total amount of the Allowed Claims of the holders in such Class who actually vote and (ii) constitute more than one-half in number of holders of the Allowed Claims in such Class who actually vote on the Plan.

As a condition to Confirmation, the Bankruptcy Code requires that each impaired Class of Claims or Interests accept the Plan, subject to the "cramdown" exception of section1129(b) described herein. To effectuate the section 1129(b) exception, at least one impaired Class of Claims must accept the Plan.

**4.4     Voting Instructions**

**(a) Ballots and Voting**

Holders of Claims entitled to vote on the Plan have been sent a Ballot, together with instructions for voting, with this Disclosure Statement. Claimants should read the Ballot carefully and follow the instructions contained therein. In voting for or against the Plan, please use only the Ballot that accompanies this Disclosure Statement.

**EACH CREDITOR WILL RECEIVE A SINGLE BALLOT. IF YOU HAVE MORE THAN ONE CLAIM, YOU MAY REPRODUCE THIS BALLOT AS MANY TIMES AS NECESSARY TO PROPERLY VOTE YOUR CLAIMS. IF YOU HAVE ANY QUESTIONS**

**CONCERNING THE BALLOT OR VOTING PROCEDURES, YOU SHOULD CONTACT COUNSEL FOR THE DEBTORS:**

**JOSEPH F. POSTNIKOFF**

**ROCHELLE McCULLOUGH PLLC**

**300 Throckmorton Street, Suite 520**

**Fort Worth, Texas 76102**

**Telephone: 817.347.5260**

**Facsimile: 817.347.5269**

jpostnikoff@romclaw.com

**(b) Returning Ballots and Voting Deadline**

You should complete and sign each Ballot that you receive and return it in the pre-addressed envelope enclosed with each Ballot to the counsel for the Debtors in the self-addressed envelope provided, by the Voting Deadline.

**THE VOTING DEADLINE IS 5:00 P.M., CENTRAL STANDARD TIME, ON [     ] 2026. IN ORDER TO BE COUNTED, BALLOTS MUST BE ACTUALLY RECEIVED BY COUNSEL FOR THE DEBTORS ON OR BEFORE 5:00 P.M., CENTRAL STANDARD TIME, ON THE VOTING DEADLINE AT THE ADDRESS SET FORTH IN THE BALLOT INSTRUCTIONS WHICH ACCOMPANY THE ENCLOSED BALLOT. EXCEPT TO THE EXTENT ALLOWED BY THE BANKRUPTCY COURT, BALLOTS RECEIVED AFTER THE VOTING DEADLINE MAY NOT BE ACCEPTED OR USED IN CONNECTION WITH THE DEBTORS' REQUEST FOR CONFIRMATION OF THE PLAN OR ANY MODIFICATION THEREOF, UNLESS THE DEBTORS AGREE OTHERWISE.**

**IT IS IMPORTANT THAT THE HOLDER OF A CLAIM OR INTEREST IN THE VOTING CLASSES FOLLOW THE SPECIFIC INSTRUCTIONS PROVIDED ON SUCH HOLDER'S BALLOT AND THE ACCOMPANYING INSTRUCTIONS.**

**(c) Incomplete or Irregular Ballots.**

Ballots which fail to designate the Class to which they apply shall be counted in the appropriate Class as determined by the Debtors, subject only to contrary determinations by the Bankruptcy Court.

**(d) Changing Votes.**

Bankruptcy Rule 3018(a) permits a Claimant, for cause, to move the Bankruptcy Court to permit such claimant to change or withdraw its acceptance or rejection of a plan of reorganization.

**4.5     Contested and Unliquidated Claims**

Contested Claims are not entitled to vote to accept or reject the Plan. If you are the holder of a Contested Claim, you may ask the Bankruptcy Court pursuant to Bankruptcy Rule 3018 to have your Claim temporarily Allowed for the purpose of voting.

**4.6     Possible Reclassification of Creditors and Interest Holders**

The Debtors are required pursuant to section 1122 of the Bankruptcy Code to place Claims and Interests into Classes that contain substantially similar Claims or Interests. While the Debtors believe that all Claims and Interests are classified in the Plan in compliance with section 1122, it is possible that a Claimant or Interest holder may challenge the classification of its Claim or Interest. If the Debtors are required to reclassify any Claims or Interests of any Claimants or Interest holders under the Plan, the Debtors, to the extent permitted by the Bankruptcy Court, intend to continue to use the acceptances received from such Claimants or Interest holders pursuant to the solicitation of acceptances using this Disclosure Statement for the purpose of obtaining the approval of the Class or Classes of which such Claimants or Interest holders are ultimately deemed to be a member. Any reclassification of Claimants or Interest holders should affect the Class in which such Claimants or Interest holders were initially a member, or any other Class under the Plan, by changing the composition of such Class and the required vote thereof for approval of the Plan.

**ARTICLE V**
**OTHER KEY ASPECTS OF THE PLAN**

Below are selected provisions from the Plan, which the Debtors believe are particularly important for Holders of Claims and Interests to review before voting on the Plan. Inclusion or exclusion from the below does not indicate the materiality of a provision to the Plan. Debtors encourage all Holders of Claims and Interests to review the entirety of the Plan before voting to accept or reject the Plan.

**5.1     Distributions**

One of the key concepts under the Bankruptcy Code is that only claims and interests that are "allowed" may receive distributions under a Plan. This term is used throughout the Plan. In general, an Allowed Claim or Interest means that the Debtors agree, or if there is a dispute, the Bankruptcy Court determines, that the Claim or Interest, and the amount thereof, is in fact a valid obligation of or equity interest in the Debtors.

**(a) Record Date for Distributions to Holders of Claims**

The Reorganized Debtors will be authorized and entitled to recognize only those record Holders, if any, listed on the Claims Register as of the close of business on the Distribution Record Date.

---

**(b) Distribution Process**

The Reorganized Debtors shall make or facilitate all distributions required under the Plan. Except as otherwise provided herein, and notwithstanding any authority to the contrary, distributions to Holders of Allowed Claims and Interests, including Claims and Interests that become Allowed after the Plan Effective Date, shall be made to Holders of record as of the Distribution Record Date by Reorganized Debtors: (1) to the address of such Holder as set forth in the books and records of the Debtors (or if the Debtors have been notified in writing, on or before the date that is ten (10) days before the Plan Effective Date, of a change of address, to the changed address); (2) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, if no address exists in the Debtors' books and records, no Proof of Claim has been filed and the Reorganized Debtors have not received a written notice of a change of address on or before the date that is ten (10) days before the Plan Effective Date; or (3) on any counsel that has appeared in the Bankruptcy Case on the Holder's behalf. The Debtors and Reorganized Debtors, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan.

**5.2    Undeliverable, and Unclaimed Distributions**

If any distribution to a Holder of an Allowed Claim or Interest is returned to the Reorganized Debtors as undeliverable, no further distributions shall be made to such Holder unless and until Reorganized Debtors are notified in writing of such Holder's then-current address or other necessary information for delivery, at which time all currently due missed distributions shall be made to such Holder on the next Distribution Date. Undeliverable distributions shall remain in the possession of the Reorganized Debtors until such time as a distribution becomes deliverable, or such distribution reverts to the Reorganized Debtors or is cancelled pursuant to the Plan, and shall not be supplemented with any interest, dividends, or other accruals of any kind.

Any distribution under the Plan that is an unclaimed distribution for a period of three months after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such unclaimed distribution shall revest in the Reorganized Debtors. Upon such revesting, the Claim or Interest of any Holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws, or any provisions in any document governing the distribution that is an unclaimed distribution, to the contrary.

**5.3    Claims Paid or Payable by Third Parties**

A Claim shall be reduced in full, and such Claim shall be disallowed without an objection to such Claim having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtors or Reorganized Debtors. To the extent the Holder of a Claim receives a distribution on account of such Claim and receives payment from

a party that is not the Debtors or Reorganized Debtors on account of such Claim, such Holder shall repay, return or deliver any distribution held by or transferred to the Holder to Reorganized Debtors to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

**5.4    Setoffs**

Except as otherwise expressly provided for herein, the Reorganized Debtors, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Interest, may set off against any Allowed Claim or Interest and the distributions to be made pursuant to the Plan on account of such Allowed Claim or Interest (before any distribution is made on account of such Allowed Claim or Interest), any claims, rights, and Causes of Action of any nature that the Debtors or Reorganized Debtors, as applicable, may hold against the Holder of such Allowed Claim or Interest, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Plan Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by Reorganized Debtors of any such claims, rights, and Causes of Action that the Reorganized Debtors may possess against such Holder.

**5.5    Disputed Claims Process**

Except as otherwise provided herein, if a party files a Proof of Claim or Interest and the Debtors or Reorganized Debtors objects then the Claim or Interest subject to such Proof of Claim or Interest will be Allowed unless or until Disputed and disallowed by a Final Order or as otherwise set forth in Article VIII of the Plan. For the avoidance of doubt, the Plan does not create a requirement to file a Proof of Claim or Interest (or move the Bankruptcy Court for allowance) to be an Allowed Claim. Unless otherwise ordered by the Bankruptcy Court, except as otherwise provided herein, or at the discretion of the Reorganized Debtors, all Proofs of Claim or Interest filed after the Plan Effective Date will be disallowed and forever barred, estopped, and enjoined from assertion, and will not be enforceable against the Reorganized Debtors, without the need for any objection by Reorganized Debtors or any further notice to or action, order, or approval of the Bankruptcy Court.

**5.6    Claims Administration Responsibilities**

Except as otherwise specifically provided in the Plan, after the Plan Effective Date the Reorganized Debtors shall have the authority to (1) file, withdraw, or litigate to judgment, objections to Claims or Interests; (2) settle or compromise any Disputed Claim or Interest without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided herein, from and after the Plan Effective Date, the Reorganized Debtors

shall have and retain any and all rights and defenses the Debtors had immediately prior to the Plan Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained pursuant to the Plan.

## 5.7   Duplicate, Satisfied, Amended, and Superseded Claims

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Reorganized Debtors as allowed by the Bankruptcy Court.

## 5.8   Disallowance of Claims and Interests

All Claims and Interests of any Entity from which property is sought by the Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or Reorganized Debtors, as applicable, allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if: (a) the Entity, on the one hand, and the Debtors or Reorganized Debtors, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

## 5.9   Settlement, Release, Injunction, and Related Provisions

**Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Plan Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in the Debtors or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Plan Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Plan Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Plan Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Interest has accepted the Plan. The Confirmation**

**Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Plan Effective Date.**

(a) **Releases by the Debtors**

**Notwithstanding anything contained in this Plan to the contrary, pursuant to Section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Plan Effective Date, each Released Party is deemed released and discharged by the Debtor, the Reorganized Debtor, and the Releasing Parties from any and all Causes of Action, including any derivative claims, asserted on behalf of the Debtors, that the Debtors or the Reorganized Debtors would have been legally entitled to assert in their own right or on behalf of the Holder of any Claim against, or Interest in, the Debtors or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including management, ownership, or operation thereof), the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Bankruptcy Case, the Disclosure Statement, the Plan, the filing of the Bankruptcy Case, the pursuit of the DIP Loan, the DIP Loan, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Plan Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Plan Effective Date obligations of any party or Entity under the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan. Furthermore, notwithstanding anything contained herein to the contrary, the foregoing release shall not release any obligation of any Person or Entity under the Plan or any document, instrument or agreement executed to implement the Plan.**

(b) **Exculpation**

**Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action for any claim related to any act or omission occurring on or after the Petition Date and before the Plan Effective Date in connection with, relating to, or arising out of, the Bankruptcy Case, the Disclosure Statement, the Plan, the filing of the Bankruptcy Case, the pursuit of the DIP Loan, the DIP Loan, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution**

**of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

**(c) Injunction**

**Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Plan Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Plan Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan. Nothing in the foregoing paragraph shall act as a non-consensual third party release to the extent in contravention of _Harrington v. Purdue Pharma L.P._, 603 U.S. 204, 144 S. Ct. 2071 (2024).**

**(d) Protection Against Discriminatory Treatment**

In accordance with section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against the Reorganized Debtors, or any Entity with which the Reorganized Debtors have been or are associated, solely because the Reorganized Debtors were debtors under Chapter 11, may have been insolvent before the commencement of the Bankruptcy Case (or during the Bankruptcy Case but before the Debtors were granted or denied a discharge), or has not paid a debt that is dischargeable in the Bankruptcy Case.

**(e) Document Retention**

On and after the Plan Effective Date, Reorganized Debtors may maintain documents in accordance with their respective standard document retention policy, as may be altered, amended, modified, or supplemented by Reorganized Debtors.

**(f) Reimbursement or Contribution**

If the Bankruptcy Court allows or disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent; or (2) the relevant Holder of a Claim has filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

**(g) Release of Liens**

Except with respect to the Liens specifically provided for under the Plan, on the Plan Effective Date, any mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate will be fully released and discharged, and the Holders thereof will execute such documents as may be reasonably requested by the Debtors or Reorganized Debtors to reflect or effectuate such releases, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests will revert to the Reorganized Debtors.

**5.10 Conditions Precedent to the Plan Effective Date**

It shall be a condition to the Plan Effective Date that the following conditions shall have been satisfied or waived pursuant to Article X.B of the Plan:

i. the Bankruptcy Court shall have entered the Confirmation Order and such order shall be a Final Order;

ii. the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

iii. the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been filed in a manner consistent in all material respects with the Plan;

iv. the Confirmation Order shall not have been reversed, stayed, amended, modified, dismissed, vacated, or reconsidered; and

v. there shall not be in effect any (a) order, opinion, ruling, or other decision entered by any court or other Governmental Unit or (b) U.S. or other applicable law staying, restraining, enjoining, prohibiting, or otherwise making illegal the implementation of any of the transactions contemplated by the Plan; and

**(a) Waiver of Conditions Precedent**

The conditions to the Plan Effective Date set forth in Article X.A of the Plan may be waived, only if waived in writing by the Debtors and the Plan Funder without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm and consummate the Plan.

**(b) Substantial Consummation**

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), with respect to the Debtors, shall be deemed to occur on the Plan Effective Date.

**(c) Effect of Non-Occurrence of Conditions to Consummation**

If prior to Consummation, the Confirmation Order is vacated pursuant to a Final Order, then except as provided in any order of the Bankruptcy Court vacating the Confirmation Order, the Plan will be null and void in all respects, and nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims, Interests, or Causes of Action; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtors or any other Entity.

**5.11    Modification of the Plan**

The Debtors reserve the right to amend or modify the Plan before the entry of the Confirmation Order consistent with the terms set forth herein. After the entry of the Confirmation Order but prior to the Plan Effective Date, the Debtors may, subject to approval of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, to remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan consistent with the terms set forth herein.

**5.12    Effect of Confirmation on Modifications**

Entry of the Confirmation Order shall constitute approval of all modifications to the Plan occurring after the solicitation thereof pursuant to section 1127(a) of the Bankruptcy Code and a finding that such modifications to the Plan do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

**5.13    Withdrawal of Plan**

The Debtors reserve the right to withdraw the Plan before the Confirmation Date and to file subsequent Chapter 11 plan(s). If the Debtors withdraw the Plan, or if the Confirmation Date or the Plan Effective Date does not occur, then: (a) the Plan will be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption of Executory Contracts effected by the Plan, and any document or agreement executed pursuant hereto will be null and

void in all respects; and (c) nothing contained in the Plan shall (1) constitute a waiver or release of any Claims, Interests, or Causes of Action, (2) prejudice in any manner the rights of the Debtors or any other Entity, or (3) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE VI
## CERTAIN FACTORS TO BE CONSIDERED

**PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN, ALL HOLDERS OF CLAIMS OR INTERESTS THAT ARE IMPAIRED OR VOTING ON A PROVISIONAL BASIS SHOULD READ AND CAREFULLY CONSIDER THE FACTORS SET FORTH HEREIN, AS WELL AS ALL OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT.**

**DESPITE THE MANY RISK FACTORS NOTED BELOW, THESE MAY NOT BE THE ONLY RISKS PRESENT IN CONNECTION WITH THE DEBTORS' BUSINESSES OR THE PLAN AND ITS IMPLEMENTATION.**

### 6.1    General

The following provides a summary of various important considerations and risk factors associated with the Plan. In considering whether to vote to accept or reject the Plan, Holders of Claims or Interests should read and carefully consider the factors set forth below, as well as all other information set forth or otherwise referenced or incorporated by reference in this Disclosure Statement.

### 6.2    Risks Relating to the Plan and Other Bankruptcy Law Considerations

**(a) A Claim or Interest Holder may object to, and the Bankruptcy Court may disagree with, the Debtors' classification of Claims and Interests**

Section 1122 of the Bankruptcy Code provides that a Plan may place a Claim or an Interest in a particular class only if such Claim or Interest is substantially similar to the other Claims or Interests in such class. The Debtors believe that the classification of Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because each Class only contains Claims or Interests that are substantially similar to the other Claims and Interests in such Class. A Holder of a Claim or Interest could challenge the Debtors' classification, however. In such an event, the cost of the Chapter 11 Cases and the time needed to confirm the Plan may increase, and there can be no assurance that the Bankruptcy Court will agree with the Debtors' classification. If the Bankruptcy Court concludes that the classifications of Claims and Interests under the Plan do not comply with the requirements of the Bankruptcy Code, the Debtors may need to modify the Plan. Such modification could require re-solicitation of votes on the Plan. The Plan may not be confirmed if the Bankruptcy Court determines that the Debtors' classification of Claims and Interests is not appropriate.

**(b) The Bankruptcy Court may not confirm the Plan**

There can be no assurance that the Bankruptcy Court will find that the Plan satisfies the requirements for Confirmation, including the requirements set forth in sections 1122 and 1129 of the Bankruptcy Code. If the Bankruptcy Court finds that the Plan does not satisfy the requirements for Confirmation, the Plan will not be confirmed. If the Plan is not confirmed, the Plan may be modified or withdrawn, or the Chapter 11 Cases may be converted into cases under Chapter 7 of the Bankruptcy Code. As demonstrated in the Liquidation Analysis, herein, a liquidation under Chapter 7 of the Bankruptcy Code could result in less recovery to the non-member, non-Affiliate, and non-Insider Holders of General Unsecured Claims.

**(c) Conditions precedent to effectiveness of the Plan may not occur**

Confirmation of the Plan and the occurrence of the Plan Effective Date are subject to certain conditions that may or may not be satisfied. The Debtors cannot assure that all requirements for Confirmation and effectiveness required under the Plan will be satisfied.

**(d) Contingencies may affect distributions to Holders of Allowed Claims or Interests**

The distributions available to Holders of Allowed Claims or Interests under the Plan can be affected by a variety of contingencies, including the amount of Administrative Expense and other Claims senior in priority to Allowed Claims or Interests, as well as other potential contingencies. The occurrence of any and all such contingencies could affect the recoveries of the Holders of Allowed Claims or Interests under the Plan.

**(e) The Debtors may seek to amend, waive, modify, or withdraw the Plan at any time prior to Confirmation**

The Debtors reserve the right, in accordance with the Bankruptcy Code, the Bankruptcy Rules, and consistent with the terms of the Plan, to amend the terms of the Plan or waive any conditions thereto and necessary or desirable to Consummate the Plan. The potential impact of any such amendment or waiver on the Holders of Claims and Interests cannot presently be foreseen but may include a change in the economic impact of the Plan on some or all of the proposed Classes or a change in the relative rights of such Classes. All Holders of Claims and Interests will receive notice of such amendments or waivers required by applicable law and the Bankruptcy Court. If, after receiving sufficient acceptances, but prior to Confirmation of the Plan, the Debtors seek to modify the Plan, such modification will not require additional disclosure or re-solicitation under Bankruptcy Rule 3019, so long as (1) the Holders of Claims or Interests who voted to accept the Plan approve the modification in writing, or (2) the Bankruptcy Court determines, after notice to designated parties, that such modification was de minimis or purely technical or otherwise did not adversely change the treatment of Holders of accepting Claims or Interests, or is otherwise permitted by the Bankruptcy Code.

**(f) The Debtors may not obtain the consent required to Assume certain Executory Contracts**

The Plan provides for the Assumption of certain Executory Contracts and Unexpired Leases. The Debtors may need to obtain the consent of the counterparties to certain Executory Contracts or Unexpired Leases in order to Assume them. There is no guarantee that such consent would either be forthcoming or that conditions would not be attached to any such consent that would make assuming the contract unattractive. The Debtors would then be required to either forego the benefits offered by such contracts or to find alternative arrangements to replace them.

**6.3    Risks Relating to Future Litigation**

In the future, the Debtors may become party to litigation. In general, litigation can be expensive and time consuming to bring or defend against. Such litigation could result in settlements or damages that could significantly affect the redevelopment and financial condition of the Debtors. It is also possible that certain parties will commence litigation with respect to the treatment of their Claims or Interests under the Plan. It is not possible to predict the potential litigation that the Debtors may become party to, nor the final resolution of such litigation. The impact of any such litigation could be material.

**6.4    Certain Tax Implications of the Chapter 11 Cases**

Holders of Allowed Claims and Interests should carefully review Article VII herein, "Certain Federal Income Tax Consequences," to determine how the tax implications of the Plan and the Chapter 11 Cases may adversely affect the Reorganized Debtors and Holders of Claims and Interests.

**6.5    Disclosure Statement Disclaimer**

**(a) Information Contained Herein Is for Soliciting Votes**

The information contained in this Disclosure Statement is for the purpose of soliciting acceptances to the Plan and may not be relied upon for any other purpose.

**(b) Disclosure Statement May Contain Forward-Looking Statements**

This Disclosure Statement may contain "forward-looking statements." Such statements consist of any statement other than a recitation of historical fact and can be identified by the use of forward-looking terminology such as "may," "expect," "anticipate," "estimate," or "continue," the negative thereof, or other variations thereon or comparable terminology.

The Debtors consider all statements regarding anticipated or future matters. Statements concerning such matters are not guarantees of the Debtors' future performance. The reader is cautioned that all forward-looking statements are necessarily speculative. The valuations of assets contained or referenced herein are estimates only, and the timing and amount of actual distributions to Holders of Allowed Claims or Allowed Interests may be affected by many factors that cannot

be predicted. Forward-looking statements represent the Debtors' estimates and assumptions only as of the date such statements were made. There are risks, uncertainties, and other important factors that could cause the Debtors' actual performance or achievements to be materially different from those they may project, and the Debtors undertake no obligation to update any such statement.

**(c) No Legal, Business, or Tax Advice Is Provided by this Disclosure Statement**

**THIS DISCLOSURE STATEMENT DOES NOT PROVIDE LEGAL, BUSINESS, OR TAX ADVICE**. The contents of this Disclosure Statement should not be construed as legal, business, or tax advice. Each Holder of a Claim or Interest should consult their own legal counsel and accountant with regard to any legal, tax, and other matters concerning their Claim or Interest. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to Confirmation.

**(d) No Waiver of Right to Object or Right to Recover Transfers and Assets**

The vote by a Holder of an Allowed Claim or Interest for or against the Plan does not constitute a waiver or release of any claims or rights of the Debtors or Reorganized Debtors may have against such Holder to object to that Holder's Allowed Claim or Interest, or to bring Causes of Action or recover any preferential, fraudulent, or other voidable transfer of assets, regardless of whether any claims or Causes of Action of the Debtors or their Estates are specifically or generally identified herein.

**(e) Information was Provided by the Debtors and was Relied Upon by the Debtors' Advisors**

Counsel to the Debtors have relied upon information provided by the Debtors in connection with the preparation of this Disclosure Statement. Although counsel has performed certain limited due diligence in connection with the preparation of this Disclosure Statement, they have not independently verified the information contained herein.

**ARTICLE VII**
**CERTAIN FEDERAL INCOME TAX CONSEQUENCES**

**7.1    Introduction**

The following discussion summarizes certain anticipated U.S. federal income tax consequences of the Plan to the Debtors and certain Holders of Claims or Interests. This summary is provided for general information purposes only and should not be relied upon for purposes of determining the specific tax consequences of the Plan with respect to any particular Holder of a Claim or an Interest. This summary does not purport to be a complete analysis or listing of all potential tax considerations.

This summary is based on the Internal Revenue Bankruptcy Code of 1986, as amended (the "Tax Code"), Treasury regulations promulgated thereunder (the "Regulations"), judicial

authorities, current published administrative rulings and pronouncements of the Internal Revenue Service (the "IRS"), and other applicable authorities, all as in effect as of the date hereof. Legislative, judicial, or administrative changes or new interpretations enacted or promulgated after the date hereof could alter or modify the analyses set forth below with respect to the U.S. federal income tax consequences of the Plan. Any such changes or new interpretations could have retroactive effect and could significantly affect the U.S. federal income tax consequences described below.

This summary does not address all aspects of U.S. federal income taxation that may be relevant to a particular Holder of a Claim or an Interest in light of its particular facts and circumstances or to certain types of Holders of Claims or Interests subject to special treatment under the Tax Code (e.g., persons who are related to the Debtors within the meaning of the Tax Code, non-U.S. taxpayers, banks, mutual funds, financial institutions, broker-dealers, insurance companies, small business investment companies, tax-exempt organizations, real estate investment trusts, regulations investment companies, grantor trusts, persons holding a Claim as part of a "hedging," "integrated," or "constructive" sale or straddle transaction, persons holding Claims through a partnership or other pass-through entity, persons that have a "functional currency" other than the U.S. dollar, and Holders of Claims or Interests who are themselves in bankruptcy). If a partnership (or other entity or arrangement taxed as a partnership) holds a Claim or an Interest, the tax treatment of a partner in the partnership generally will depend upon the status of the partner and upon the activities of the partnership. This summary does not address the tax considerations applicable to Holders who obtained their Claims or Interests (or the rights underlying such Claims or Interests) in connection with the performance of services. This summary does not discuss any aspects of foreign, state, local, estate, or gift taxation, nor does it apply to any person that acquires any of the exchange consideration in the secondary market. This summary does not address the U.S. federal income tax consequences to Holders of Claims or Interests that are not entitled to vote on the Plan, including Holders whose Claims or Interests are entitled to reinstatement or payment in full in Cash under the Plan or Holders whose Claims or Interests are otherwise not Impaired under the Plan.

The U.S. federal income tax consequences of the Plan are complex and are subject to significant uncertainties. In addition, some amount of time will necessarily elapse between the date of this Disclosure Statement and the receipt of a final distribution or transfer under the Plan. Events occurring after the date of this Disclosure Statement, such as additional tax legislation, Bankruptcy Court decisions, or administrative changes, could affect the U.S. federal income tax consequences of the Plan and the transactions contemplated hereby. Thus, there can be no assurance that the IRS will not take a contrary view with respect to one or more of the issues discussed below. No ruling will be sought from the IRS with respect to any of the tax aspects of the Plan, and no opinion of counsel has been or will be obtained by the Debtors with respect thereto.

**TO ENSURE COMPLIANCE WITH TREASURY DEPARTMENT CIRCULAR 230, EACH HOLDER OF A CLAIM OR AN INTEREST IS HEREBY NOTIFIED THAT**

**(1) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE RELIED UPON, AND CANNOT BE RELIED UPON, BY ANY HOLDER OF A CLAIM OR AN INTEREST FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON A HOLDER OF A CLAIM OR AN INTEREST UNDER THE TAX CODE; (2) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE CONFIRMATION OF THE PLAN TO WHICH THE TRANSACTIONS DESCRIBED IN THIS DISCLOSURE STATEMENT ARE ANCILLARY; AND (3) A HOLDER OR ITS ASSIGNEE OR DESIGNEE OF A CLAIM OR AN INTEREST SHOULD SEEK ADVICE BASED UPON ITS PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

**THE DISCUSSION SET FORTH IN THIS DISCLOSURE STATEMENT IS INCLUDED FOR GENERAL INFORMATION ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED ON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A HOLDER OF A CLAIM OR INTEREST. EACH HOLDER SHOULD CONSULT ITS OWN TAX ADVISOR REGARDING THE FEDERAL INCOME TAX CONSEQUENCES, AS WELL AS OTHER FEDERAL, STATE, LOCAL, AND OTHER TAX CONSEQUENCES, CONTEMPLATED UNDER OR IN CONNECTION WITH THE PLAN IN LIGHT OF ITS PARTICULAR CIRCUMSTANCES.**

**7.2    Certain Federal Income Tax Consequences to the Debtor**

Under the Tax Code, a taxpayer generally must include in gross income the amount of any discharge of indebtedness income realized during the taxable year. Section 108(a)(1)(A) of the IRC provides an exception to this general rule, however, in the case of a taxpayer that is under the jurisdiction of a bankruptcy court in a case brought under the Bankruptcy Code where the discharge of indebtedness is granted by the court or is pursuant to a Plan approved by the court, provided that the amount of discharged indebtedness that would otherwise be required to be included in income is applied to reduce certain tax attributes of the taxpayer. Section 108(e)(2) of the Tax Code provides that a taxpayer shall not realize income from the discharge of indebtedness to the extent that satisfaction of the liability would have given rise to a deduction. As a result of §§ 108(a)(1)(A) and 108(e)(2) of the IRC, the Debtors do not anticipate that any of them will recognize any taxable income from the discharge of indebtedness through the Chapter 11 Cases. Reductions in tax attributes (net operating loss carryover) will occur to the extent of cancellation of indebtedness income not recognized due to the above.

Under Section 1141 of the Bankruptcy Code, confirmation of the Plan will discharge the Debtors from all debts except as provided for in the Plan. Implementation of the Plan, including the liquidation and ultimate dissolution of the Debtors may result in discharge of indebtedness to the Debtors as a matter of tax law to the extent of any unsatisfied portion of such Claims. Any such

discharge of indebtedness should not be included in gross income of the Debtors, however, because of the exceptions to such inclusion discussed above.

**7.3     Federal Income Tax Consequences to Holders of Claims and Interests Generally**

A Creditor who receives cash or other consideration in satisfaction of any Claim may recognize ordinary income. The impact of such ordinary income, as well as the tax year for which the income shall be recognized, shall depend upon the individual circumstances of each Claimant, including the nature and manner of organization of the Claimant, the applicable tax bracket for the Claimant, and the taxable year of the Claimant. Each Creditor is urged to consult with its tax advisor regarding the tax implications of any payments or distributions under the Plan.

In general, the principal federal income tax consequences of the Plan to holders of Claims will be (a) recognition of loss or a bad debt deduction to the extent that the total payments received under the Plan with respect to the Claim are less than the adjusted basis of the holder in such Claim, or (b) recognition of taxable income by the holder of the Claim to the extent of the excess of the amount of any payments made under the Plan in respect of the Claim over the holder's adjusted basis therein.

Common examples of holders of Claims who may recognize taxable income upon receipt of payments under the Plan include: (a) former employees with Claims for services rendered while serving as employees of a Debtor; (b) trade creditors whose Claims represent an item not previously reported in income (including Claims for lost income upon rejection of leases or other contracts with a Debtor); (c) holders of Claims who had previously claimed a bad debt deduction with respect to their Claims in excess of their ultimate economic loss; and (d) holders of Claims that include amounts of pre- petition interest that had not previously been reported in income. Common examples of Claims who may recognize a loss or deduction for tax purposes as a result of implementation of the Plan, provided that such holders are not paid in full, include holders of Claims that arose out of cash actually loaned or advanced to a Debtor, and holders of Claims consisting of items that were previously included in income of such holders on the accrual method of accounting, to the extent, in both cases, that the economic loss to such holders has not been allowed as a tax deduction in a prior year.

The amount and character or any resulting income or loss recognized for federal income tax consequences to a holder of any Claim because of implementation of the Plan will, however, depend on many factors. The most significant of these factors include: (a) the nature and origin of the Claim; (b) whether the holder is a corporation; (c) the extent to which the Plan provides for payment of the particular Claim; (d) the extent to which any payment made is allocable to pre- petition interest which is part of such Claim; and (e) the prior tax reporting positions taken by the holder with respect to the item that constitutes the Claim. As to the last factor, relevant tax reporting positions include whether the holder had to report under its method of accounting any portion of the Claim (including accrued and unpaid interest) as income prior to receipt and whether the holder

previously claimed a bad debt or worthlessness deduction with respect to the Claim, which would affect the adjusted basis of the holder in the Claim.

General rules for the deduction of bad debts are provided in Tax Code § 166 as follows:

> If either (a) the creditor is a corporation, or (b) the debt is a business bad debt in the hands of the creditor, and the creditor demonstrates that the debt is collectable only in part, a deduction for partial worthlessness of the debt will be allowed to the extent that the debt is charged off in the accounting records of the creditor.

> For a creditor not described in the previous paragraph, a bad debt deduction is allowable only in the year that the debt becomes wholly worthless.

> If the creditor is not a corporation and the debt is a nonbusiness bad debt, the bad debt deduction is treated as a short-term capital loss, which can offset only capital gain income and a limited amount of ordinary income.

For purposes of Tax Code § 166, a "nonbusiness debt" means a debt other than (i) a debt created or acquired in connection with the creditor's trade or business, or (ii) a debt the loss from the worthlessness of which was incurred during the operation of the creditor's trade or business.

The time as of which a debt becomes worthless (or partially worthless), and therefore the tax year in which a creditor may claim a bad debt deduction, is a question of fact. Pursuant to Income Tax Regulations ("Regs.") § 1.166-2(c), as a general rule, bankruptcy is an indication of the worthlessness of at least a part of an unsecured, non-priority debt. In bankruptcy cases, a debt may become worthless before settlement in some instances, and only when a settlement in bankruptcy has been reached in other instances. The mere fact that bankruptcy proceedings instituted against the debtor are terminated in a later year, thereby confirming the conclusion that the debt is worthless (or partially worthless), does not necessarily shift the deduction to such later year. Thus, even though the precise amount that holders of General Unsecured Claims or other Claims will receive under the Plan may not be known until the final distribution date, the determination of the precise amount that will be paid under the Plan with respect to a Claim, or that no amount will be paid, does not necessarily establish that any resulting bad debt deduction is properly allowable in the Creditor's tax year in which the final distribution is made, rather than in an earlier year. Accordingly, to the extent that a Creditor may claim a bad debt deduction which it has not previously claimed, it is possible that the Creditor will be required to amend its return for a prior year and claim the deduction in that year, rather than in the year in which the final distribution is made. Creditors should consult with their individual tax advisors with respect to this issue.

The extent to which gain, or loss may be recognized by a holder of a Claim upon implementation of the Plan may be significantly affected by any bad debt deduction that may have been claimed by the holder in a prior year with respect to the debt on which the Claim is based. If the holder took a bad debt deduction in a prior year which is recovered in whole or part through a

payment made to the holder pursuant to the Plan, the holder will generally be required to include in income the amount recovered in the year the holder receives the payment. An exception to this rule permits exclusion of a recovery of a prior bad debt deduction to the extent that the earlier bad debt deduction did not produce a tax benefit to the holder.

**THE FOREGOING IS INTENDED TO BE A SUMMARY ONLY AND NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING OR CONSULTATION WITH A TAX ADVISOR. THE FEDERAL, STATE, LOCAL, AND FOREIGN TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND, IN SOME CASES, UNCERTAIN. SUCH CONSEQUENCES MAY ALSO VARY BASED UPON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR INTEREST. ACCORDINGLY, EACH HOLDER OF A CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT WITH HIS OR HER OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL, AND FOREIGN TAX CONSEQUENCES OF THE PLAN.**

### ARTICLE VIII
### CONCLUSION AND RECOMMENDATION

Overall, the Plan resolves any default by the Debtors under the Golden Bank Loans, provides for maximum recovery to the Debtors' creditors and interest holders, and facilitates the continued ramp-up of the Debtors' businesses. The Debtors urge all Holders of Claims/Interests entitled to vote to accept the Plan and to evidence such acceptance by returning their Ballots so they will be received by the Debtors no later than [_____, 2026].

[Remainder of Page Intentionally Left Blank]

Respectfully submitted,

**FOOD CONCEPTS INTERNATIONAL, L.P., a Texas limited partnership**

By: /s/ *John Dorrington*

(printed):   John Dorrington

Its: President and Chief Executive Officer

**ABUELO'S INTERNATIONAL, L.P., a Texas limited partnership**

By: /s/ *John Dorrington*

(printed):   John Dorrington

Its: President and Chief Executive Officer

**FOOD CONCEPTS INTERNATIONAL HOLDINGS, INC.**

By: /s/ *G. Randall Andrews*

(printed):   G. Randall Andrews

Its: President

**ROCHELLE MCCULLOUGH PLLC**

By: */s/ J. Mark Chevallier*
J. Mark Chevallier
State Bar No. 04189170
Email: mchevallier@romclaw.com
Michael T. Pipkin
State Bar No. 24122988
Email: mpipkin@romclaw.com
ROCHELLE MCCULLOUGH PLLC
901 Main Street, Suite 3200
Dallas, TX 75202
Telephone: 214.953.0182
Facsimile: 888.467.5979
http://www.romclaw.com

and

Joseph F. Postnikoff
State Bar No. 16168320
Email: jpostnikoff@romclaw.com
ROCHELLE MCCULLOUGH PLLC
300 Throckmorton, Suite 520
Fort Worth, TX 76102
Telephone: 817.347.5260
Facsimile: 817.347.5269
http://www.romclaw.com

and

Curt D. Hochbein
State Bar No. (IN) 29284-29
ROCHELLE MCCULLOUGH PLLC
300 N. Meridian St., Suite 1260
Indianapolis, IN 46204
Telephone: (317) 348-5677
chochbein@romclaw.com
http://www.romclaw.com

COUNSEL FOR DEBTORS IN POSSESSION

# EXHIBIT A

## DEBTORS' AMENDED JOINT PLAN OF REORGANIZATION

(Intentionally Omitted)

# **EXHIBIT B**

# PLAN PROJECTIONS

**ABUELOS PROJECTIONS**

| | Actual 2024 | | Actual 2025 | | Projected 2026 | | 2027 | | 2028 | | 2029 | | 2030 | | 2031 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Rev | EBITDA | Rev | EBITDA | Rev | EBITDA | Rev | EBITDA | Rev | EBITDA | Rev | EBITDA | Rev | EBITDA | Rev | EBITDA |
| Amarillo | 3,957.4 | 405.3 | 3,739.4 | 344.0 | 3,335.8 | 375.9 | 3,688.2 | 454.1 | 4,994.1 | 862.2 | 4,779.3 | 788.7 | 4,573.8 | 719.2 | 4,377.1 | 653.4 |
| Lubbock | 6,217.4 | 1,241.0 | 6,350.7 | 1,299.8 | 5,620.2 | 1,104.8 | 5,487.8 | 1,104.8 | 5,119.4 | 1,040.2 | 4,885.9 | 978.5 | 4,663.1 | 913.3 | 4,450.5 | 866.6 |
| Midland | 5,869.2 | 1,335.6 | 5,724.9 | 1,263.6 | 5,089.3 | 1,092.5 | 4,865.6 | 1,012.9 | 4,651.4 | 937.5 | 4,446.7 | 866.1 | 4,251.1 | 798.7 | 4,064.0 | 734.9 |
| Abilene | 6,617.2 | 1,900.8 | 6,875.8 | 1,952.2 | 6,636.7 | 1,874.7 | 6,373.3 | 1,793.5 | 6,284.0 | 1,765.8 | 6,196.1 | 1,738.5 | 6,109.3 | 1,711.5 | 6,023.8 | 1,685.0 |
| Hurst | 4,999.7 | 338.6 | 4,882.3 | 366.3 | 4,651.6 | 409.2 | 4,559.1 | 378.6 | 4,477.0 | 483.4 | 4,396.5 | 573.3 | 4,317.3 | 550.1 | 4,239.6 | 524.5 |
| Arlington | 3,356.6 | 239.5 | 3,281.4 | 204.4 | 2,893.9 | 99.8 | 2,761.8 | 70.9 | 2,633.6 | 43.1 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Ft Worth | 3,337.4 | 132.8 | 3,300.1 | 137.3 | 3,019.7 | 114.0 | 2,918.5 | 87.9 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Tyler | 3,503.2 | 440.8 | 3,644.5 | 432.6 | 3,237.7 | 318.9 | 3,094.6 | 291.3 | 2,957.2 | 264.5 | 2,825.9 | 238.9 | 2,700.4 | 214.5 | 2,580.5 | 191.2 |
| Rogers | 3,823.7 | 417.8 | 3,657.5 | 357.8 | 3,368.6 | 285.3 | 3,260.7 | 243.1 | 3,156.4 | 203.0 | 3,055.4 | 164.9 | 2,957.6 | 128.6 | 2,863.0 | 94.2 |
| Peoria | 5,766.2 | 796.2 | 5,577.0 | 667.2 | 5,031.9 | 551.9 | 4,837.9 | 485.6 | 4,650.2 | 422.8 | 4,469.8 | 363.8 | 4,296.3 | 308.3 | 4,129.6 | 256.3 |
| W Wichita | 3,266.5 | 415.0 | 3,284.5 | 433.5 | 3,585.4 | 526.4 | 3,441.4 | 480.4 | 3,303.8 | 437.1 | 3,171.6 | 396.1 | 3,044.7 | 357.1 | 2,923.0 | 320.2 |
| Myrtle | 3,464.9 | 167.5 | 3,264.7 | 61.2 | 3,145.7 | 17.7 | 3,019.2 | (20.2) | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Lakeland | 4,752.9 | 830.1 | 4,711.7 | 797.9 | 4,227.9 | 665.8 | 4,055.5 | 610.7 | 3,890.0 | 543.7 | 3,731.3 | 509.5 | 3,579.1 | 463.1 | 3,433.0 | 419.3 |
| **Total** | **58,932.32** | **8,660.86** | **58,294.30** | **8,317.67** | **53,844.41** | **7,526.69** | **52,363.36** | **6,993.73** | **46,117.05** | **7,003.31** | **41,958.41** | **6,618.34** | **40,492.79** | **6,164.52** | **39,084.14** | **5,745.49** |
| Open Stores | 13 | | 13 | | 13 | | 13 | | 11 | | 10 | | 10 | | 10 | |

Exit Financing 7 year 8.0% effective 8/31/2026

| Total Company | 2024 | 2025 | 8/31/2026 | 2026 | 2027 | 2028 | 2029 | 2030 | 2031 |
|---|---|---|---|---|---|---|---|---|---|
| Revenue | 87,566 | 70,657 | | 53,844 | 52,363 | 46,117 | 41,958 | 40,493 | 39,084 |
| Store EBITDA | 8,661 | 8,318 | | 7,527 | 6,994 | 7,003 | 6,618 | 6,165 | 5,745 |
| G&A $ | 7,755 | 6,261 | | 4,189 | 3,982 | 3,466 | 3,174 | 3,084 | 3,084 |
| Restructuring Expenses | 0 | 1,027 | | 891 | 0 | | | | |
| EBITDA | 906 | 1,030 | | 2,447 | 3,012 | 3,537 | 3,444 | 3,080 | 2,661 |
| | | | | | | | | | |
| Cash | 1,091 | 1,495 | 1,680 | 1,130 | 1,093 | 2,083 | 1,335 | 1,906 | 2,118 |
| Unsecured Debt | 0 | 0 | 535 | 508 | 401 | 294 | 187 | 80 | 0 |
| Revolver | 1,999 | 2,499 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Sub Debt | 500 | 750 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| DIP Pref | 0 | 1,500 | 600 | 651 | 723 | 787 | (0) | (0) | (0) |
| Term Loan | 6,025 | 5,032 | 6,600 | 6,422 | 5,675 | 4,865 | 3,988 | 3,038 | 2,010 |
| Capex | 1,096 | 186 | | 975 | 1,481 | 825 | 825 | 806 | 910 |
| | | | | | | | | | |
| G&A % | 8.9% | 8.9% | | 7.8% | 7.6% | 7.5% | 7.6% | 7.6% | 7.9% |
| Bank Debt/LTM EBITDA | | | | 2.6 | 1.9 | 1.4 | 1.2 | 1.0 | 0.8 |
| LTM EBITDA/Debt Service | | | | 2.5 | 2.4 | 2.9 | 2.8 | 2.5 | 2.2 |

| | Mar-26 | Jun-26 | Sep-26 | Dec-26 | Mar-27 | Jun-27 | Sep-27 | Dec-27 | Mar-28 | Jun-28 | Sep-28 | Dec-28 | Mar-29 | Jun-29 | Sep-29 | Dec-29 | Mar-30 | Jun-30 | Sep-30 | Dec-30 | Mar-31 | Jun-31 | Sep-31 | Dec-31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EBITDA | 614.0 | 669.3 | 304.8 | 872.6 | 717.4 | 850.8 | 527.8 | 915.5 | 914.6 | 1,004.2 | 652.2 | 966.0 | 932.4 | 953.0 | 623.6 | 934.9 | 846.1 | 853.4 | 537.7 | 842.9 | 750.2 | 736.7 | 436.1 | 738.1 |
| Less CapEx | 0 | (150) | (400) | (600) | (600) | (400) | (400) | (150) | (228) | (228) | (228) | (228) | (228) | (228) | (228) | (228) | (228) | (228) | (228) | (228) | (228) | (228) | (228) | (228) |
| Less Loan payments (P&I) | (195) | (104) | (118) | (309) | (309) | (309) | (309) | (309) | (309) | (309) | (309) | (309) | (309) | (309) | (309) | (309) | (309) | (309) | (309) | (309) | (309) | (309) | (309) | (309) |
| Changes in Working Capital | (399) | (788) | 363 | (28) | 421 | (774) | 107 | 241 | 60 | (477) | 111 | 221 | 101 | (476) | (719) | 201 | 117 | (492) | 102 | 199 | 117 | (491) | 103 | 196 |
| Taxes | 33 | 19 | 47 | (48) | (32) | (45) | (13) | (52) | (52) | (62) | (27) | (59) | (56) | (59) | (26) | (58) | (50) | (51) | (20) | (51) | (43) | (42) | (12) | (43) |
| Other | (65) | 176 | 178 | (437) | (29) | (29) | (29) | (29) | (29) | (29) | (29) | (29) | (29) | (29) | (867) | (29) | (29) | (29) | (29) | (29) | (29) | (29) | (29) | (3) |
| Net Cash | (12) | (178) | 375 | (550) | 168 | (706) | (116) | 617 | 357 | (100) | 171 | 563 | 412 | (147) | (1,526) | 512 | 347 | (255) | 54 | 425 | 260 | (361) | (39) | 353 |
| Beginning Cash | 1,495 | 1,483 | 1,305 | 1,680 | 1,130 | 1,298 | 592 | 476 | 1,093 | 1,450 | 1,350 | 1,521 | 2,083 | 2,495 | 2,348 | 822 | 1,335 | 1,682 | 1,427 | 1,481 | 1,906 | 2,166 | 1,805 | 1,766 |
| Ending Cash | 1,483 | 1,305 | 1,680 | 1,130 | 1,298 | 592 | 476 | 1,093 | 1,450 | 1,350 | 1,521 | 2,083 | 2,495 | 2,348 | 822 | 1,335 | 1,682 | 1,427 | 1,481 | 1,906 | 2,166 | 1,805 | 1,766 | 2,118 |
| | | | | | | | | | | | | | | | | | | | | | | | | |
| Outstanding Term Debt | 8,142 | 8,142 | 6,600 | 6,422 | 6,241 | 6,056 | 5,867 | 5,675 | 5,478 | 5,278 | 5,073 | 4,865 | 4,652 | 4,435 | 4,214 | 3,988 | 3,757 | 3,522 | 3,283 | 3,038 | 2,789 | 2,534 | 2,274 | 2,010 |
| Bank Debt/LTM EBITDA | | | 4.2 | 2.6 | 2.4 | 2.2 | 2.0 | 1.9 | 1.7 | 1.6 | 1.5 | 1.4 | 1.3 | 1.3 | 1.2 | 1.2 | 1.1 | 1.1 | 1.0 | 1.0 | 0.9 | 0.9 | 0.8 | 0.8 |
| LTM EBITDA/Debt Service | | | 5.3 | 3.4 | 3.1 | 2.6 | 2.4 | 2.4 | 2.6 | 2.7 | 2.8 | 2.9 | 2.9 | 2.8 | 2.8 | 2.8 | 2.7 | 2.6 | 2.6 | 2.5 | 2.4 | 2.3 | 2.2 | 2.2 |

# **EXHIBIT C**

# LIQUIDATION ANALYSIS

| Claim Class | | Est. Claim ($000s)[1] | Est. Liquidation Recovery | Est. Plan Recovery Through Dec - 2030 |
|---|---|---|---|---|
| Unclassified Claims | | | | |
| | DIP Lender Claim | $1,500 | 100% | 100% |
| - | Ch. 11 Admin Claims | $70 | 50% | 100% |
| - | Ch. 11 Professionals | $948 | 50% | 100% |
| Class 1 | Other Priority Claims | $0 | 0% | 0% |
| Class 2 | Priority Wage Claims | $91 | 50% | 100% |
| Class 3 | Secured Tax Claims | $222 | 50% | 100% |
| Class 4 | FBT Secured Claim | $8,031 | 50% | 100% |
| Class 5 | Other Unsecured Claims | $0 | 0% | 0% |
| Class 6 | General Unsecured Claims | $5,342 | 0% | 10% |
| Class 7 | Convenience Class Claims | $134 | 0% | 20% |
| [2] Class 8 | FCIH Interest Holders | $0 | 0% | 0% |

[1] The foregoing is an estimate only and not to be misconstrued as an admission by Abuelos'. These claims figures have not been adjudicated and are thus subject to change. Further, some claim values may be reclassified as deficiency claims in whole or in part.

[2] Retain Earnings balance was approx, negative $20M on the date of filing; as such, Est. Claim amount herein is $0.

| RECOVERY ASSUMPTIONS | |
|---|---|
| **Liquidation:** | |
| — | Ch. 11 Admin recovery is 50% (or $35K); produced by Abuelo's Ch. 11 plan for professional fees. |
| *Class 4* | Abuelo's recovery is 50% (or $4.0M) after Ch. 7 liquidation costs. |
| **Plan:** | |
| *Unclassified* | |
| — | Ch. 11 Admins include i) post-petition Accounts Payable ("AP") and landlord cure. This class is paid in full by August 2026. Ref. Plan Projections ("Projections"): Accounts Payable (Post-Petition)', 'Structured Payments - Landlord', and 'Allowed Admin Expense Claims'. Note that post-petition AP in the Projections includes post-effective date AP. |
| — | Ch. 11 Professionals are paid in full by June 2026. Refer to Plan projections. |
| Class 2 | Priority Wage Claims total $91K and are to be paid $91K (or 100%) within 90 days upon Plan effective date. Remaining $423K is expected to be transferred to GUC (Class 6) or disallowed. |
| Class 3 | Secured Tax Claims with governmental taxing authorities will be paid in full within 90 days following the Plan effective date or up to 5 years bearing interest at 1%, but no penalties. |
| Class 4 | FBT Secured Claim has been negotiated with UMB as sucessor to the promissory notes settled with First Bank & Trust. The payments will be made in full starting at the Plan effective date in accordance with the new loan documents as drafted. |
| Class 6 | GUC's receive $534k in structured quarterly payments per the Plan over 5 years. Class 7 has been carved out of GUC at our convenience. |
| Class 7 | Convenience Class Claims are carved out of GUC to assist with quarterly payment numbers based on size of the claims included within the plan. Balances will be paid within 90 days upon Plan effective date. |

**Liquidation Analysis - Assets Liquidated**

| Assets | Est. Assets ($000s) | Liquidation Recovery % | | | Liquidation Recovery $000s | | |
|---|---|---|---|---|---|---|---|
| | | Low | Med | High | Low | Med | High |
| **Gross Liquidation Proceeds** | | | | | | | |
| Cash | $1,494 | 100.0% | 100.0% | 100.0% | $1,494 | $1,494 | $1,494 |
| A/R, not available for borrowing | $402 | 50.0% | 80.0% | 100.0% | $201 | $321 | $402 |
| PP&E (net) | $10,615 | 2.0% | 5.0% | 10.0% | $212 | $531 | $1,061 |
| Prepaid & Other | $1,137 | 2.0% | 5.0% | 10.0% | $23 | $57 | $114 |
| Right of Use Assets | $8,983 | 0.0% | 0.0% | 0.0% | $0 | $0 | $0 |
| Inventory | $588 | 10.0% | 25.0% | 50.0% | $59 | $147 | $294 |
| **Total Liquidation Proceeds** | **$23,219** | **9%** | **11%** | **14%** | **$1,988** | **$2,550** | **$3,365** |
| **Chapter 7 Costs** | | | | | | | |
| Less: Ch 7 Trustee Fees | | | | | ($150) | ($200) | ($250) |
| Less: Ch 7 Professionals | | | | | ($200) | ($350) | ($500) |
| Less: Ch 7 Admin/Wind Down | | | | | ($50) | ($75) | ($100) |
| **Total Ch. 7 Costs** | | | | | **($400)** | **($625)** | **($850)** |
| **Net Liquidation Proceeds Avail. for Distribution** | | | | | **$1,588** | **$1,925** | **$2,515** |

| | Ch 7 Claims & Recovery ($000s) | | | | | | |
|---|---|---|---|---|---|---|---|
| | Est. Claims ($000s) | Low | Med | High | Low | Med | High |
| **Post Petition Financing** | | | | | | | |
| DIP Loan | $1,500 | 100% | 100% | 100% | $1,500 | $1,500 | $1,500 |
| **Liquidation Proceeds after DIP Loan** | | | | | **$88** | **$425** | **$1,015** |
| **Secured Claims** | | | | | | | |
| Secured Tax Claims | $222 | 1% | 5% | 12% | $2 | $11 | $27 |
| FBT Secured Claim | $8,031 | 1% | 5% | 12% | $86 | $413 | $987 |
| **Total Secured Claims Recovery** | **$8,254** | **1%** | **5%** | **12%** | **$88** | **$425** | **$1,015** |
| **Net Liquidation Proceeds Avail. for Priority & Admin** | | | | | **$0** | **$0** | **$0** |
| **Priority & Admin Claims** | | | | | | | |
| Other Priority | $0 | 0% | 0% | 0% | $0 | $0 | $0 |
| Ch. 11 Admin | $70 | 0% | 0% | 0% | $0 | $0 | $0 |
| Ch. 11 Pro Fees, Net of Carve Out | $948 | 0% | 0% | 0% | $0 | $0 | $0 |
| Priority Wage Claims | $91 | 0% | 0% | 0% | $0 | $0 | $0 |
| **Total Priority & Admin Recovery** | **$1,109** | **0%** | **0%** | **0%** | **$0** | **$0** | **$0** |
| **Net Liquidation Proceeds Avail. for General Unsecured** | | | | | **$0** | **$0** | **$0** |
| **General Unsecured** | | | | | | | |
| GUCs | $5,342 | 0% | 0% | 0% | $0 | $0 | $0 |
| Convenience Class Claims | $134 | 0% | 0% | 0% | $0 | $0 | $0 |
| **Total GUCs Recovery** | **$5,476** | **0%** | **0%** | **0%** | **$0** | **$0** | **$0** |
| **Remaining Proceeds After GUCs** | | | | | **$0** | **$0** | **$0** |

**Liquidation Analysis - Sold as Going Concern**

| Assets | Est. Assets ($000s) | | Liquidation Recovery $000s | | | |
|---|---|---|---|---|---|---|
| | | | Low | Median | High | Equal to Plan |
| **Gross Liquidation Proceeds** | | | | | | |
| Going Concern sale | | | $1,269 | $2,388 | $4,325 | $12,274 |
| **Total Liquidation Proceeds** | | | **$1,269** | **$2,388** | **$4,325** | **$12,274** |
| **Chapter 7 Costs** | | | | | | |
| Less: Ch 7 Trustee Fees | | | ($150) | ($200) | ($250) | ($250) |
| Less: Ch 7 Professionals | | | ($200) | ($350) | ($500) | ($500) |
| Less: Ch 7 Admin/Wind Down | | | ($50) | ($75) | ($100) | ($100) |
| **Total Ch. 7 Costs** | | | **($400)** | **($625)** | **($850)** | **($850)** |
| **Net Liquidation Proceeds Avail. for Distribution** | | | **$869** | **$1,763** | **$3,475** | **$11,424** |

| | Ch 7 Claims & Recovery ($000s) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Est. Claims ($000s) | Low | Med | High | Low | Med | High | Equal to Plan |
| **Post Petition Financing** | | | | | | | | |
| DIP Loan | $1,500 | 100% | 100% | 100% | $869 | $1,500 | $1,500 | $1,500 |
| **Liquidation Proceeds after DIP Loan** | | | | | **$0** | **$263** | **$1,975** | **$9,924** |
| **Secured Claims** | | | | | | | | |
| Secured Tax Claims | $222 | 0% | 3% | 24% | $0 | $7 | $53 | $222 |
| FBT Secured Claim | $8,031 | 0% | 3% | 24% | $0 | $256 | $1,922 | $8,031 |
| **Total Secured Claims Recovery** | **$8,254** | **0%** | **3%** | **24%** | **$0** | **$263** | **$1,975** | **$8,254** |
| **Net Liquidation Proceeds Avail. for Priority & Admin** | | | | | **$0** | **$0** | **$0** | **$1,670** |
| **Priority & Admin Claims** | | | | | | | | |
| Other Priority | $0 | 0% | 0% | 0% | $0 | $0 | $0 | $0 |
| Ch. 11 Admin | $70 | 0% | 0% | 0% | $0 | $0 | $0 | $70 |
| Ch. 11 Pro Fees, Net of Carve Out | $948 | 0% | 0% | 0% | $0 | $0 | $0 | $948 |
| Priority Wage Claims | $91 | 0% | 0% | 0% | $0 | $0 | $0 | $91 |
| **Total Priority & Admin Recovery** | **$1,109** | **0%** | **0%** | **0%** | **$0** | **$0** | **$0** | **$1,109** |
| **Net Liquidation Proceeds Avail. for General Unsecured** | | | | | **$0** | **$0** | **$0** | **$561** |
| **General Unsecured** | | | | | | | | |
| GUCs | $5,342 | 0% | 0% | 10.2% | $0 | $0 | $0 | $547 |
| Convenience Class Claims | $134 | 0% | 0% | 10.2% | $0 | $0 | $0 | $14 |
| **Total GUCs Recovery** | **$5,476** | **0%** | **0%** | **0%** | **$0** | **$0** | **$0** | **$561** |
| **Remaining Proceeds After GUCs** | | | | | **$0** | **$0** | **$0** | **$0** |

**Sales Price of Abuelo's as Going Concern**
**Analytical Support - Price/Discretionary Earnings Method**

**1) Calculate Working Capital Excess or Shortfall:**     **2) Calculate Discretionary Income:**     **3) Calculate Sales price based on Industry P/DE Multiple:**

| Working Capital Calculation | | Discretionary Earnings Calculation | | Price Calculation | |
|---|---|---|---|---|---|

| | 2027 | | 2027 | | |
|---|---|---|---|---|---|
| Current Assets (CA-from AnnBSCF) | 3,007.00 | Corp EBITDA (from AnnIS) | 3,236.57 | B | C=AxB |

| | | | | | *Industry P/DE | Price per Industry | Less Working Capital Shortfall | Final Price after W/C Adjustment |
|---|---|---|---|---|---|---|---|---|
| Current Liabilities (CL-from AnnBSCF) | 1,675.00 | Less Taxes | (135.00) | High | 3.08 | 5,472 | (1,147) | 4,325 |
| | | | | Low | 1.36 | 2,416 | (1,147) | 1,269 |
| Current Ratio (CR - CA/CL) | 1.80 | | | Average | 2.11 | 3,742 | (1,147) | 2,595 |
| | | | | Median | 1.99 | 3,535 | (1,147) | 2,388 |
| 2024 Industry Current Ratio (ICR) | 2.48 | Capital Expenditures (from AnnBSCF) | (1,325.00) | Equal to Plan | 7.55 | 13,421 | (1,147) | 12,274 |
| Required Assets (RA=Clair) | 4,154.00 | | | | | | | |
| | | **Discretionary Earnings** | 1,776.57  A | | | | | |
| **Woking Capital Shortfall (CA-RA)** | (1,147.00) | | | | | | | |

*Source of Multiples: ValuSource Market Comps -5812 Mexican Only*

| Claim Class | | Pmts Pre/On Eff. Date | Pmts Post-Eff. Date Through 12/2030 | Total Payments | |
|---|---|---|---|---|---|
| | | | | | |
| Unclassified Claims | | | | | |
| -- | Ch. 11 Admin Claims | $0 | $70 | **$70** | A |
| -- | Ch. 11 Professionals | $948 | $0 | **$948** | 1 |
| Class 1 | Other Priority Claims | $0 | $0 | **$0** | |
| Class 2 | Priority Wage Claims | $0 | $91 | **$91** | 2 |
| Class 3 | Secured Tax Claims | $0 | $222 | **$222** | B, 3 |
| Class 4 | FBT Secured Claims | $0 | $8,031 | **$8,031** | |
| Class 5 | Other Unsecured Claims | $0 | $0 | **$0** | |
| Class 6 | General Unsecured Claims | $0 | $5,342 | **$5,342** | C |
| Class 7 | Convenience Class Claims | $0 | $134 | **$134** | |
| Class 8 | FCIH Interest Holders | $0 | $0 | **$0** | |
| | Total | **$948** | **$13,891** | **$14,839** | |

**Ch. 11 Admin Claims Summary**

| | Pmts Pre/On Eff. Date | Pmts Post-Eff. Date Through 12/2030 | Total Payments | |
|---|---|---|---|---|
| Admin Claims, excl. professionals | $0 | $0 | $0 | |
| Landlord Cure | $0 | $70 | $70 | |
| Total Ch. 11 Admin | $0 | $70 | $70 | A |

**Secured Tax Claims Calc**

| | Total Claims | Pmts Pre/On Eff. Date | Pmts Post-Eff. Date Through 12/2030 | Total Payments | |
|---|---|---|---|---|---|
| Ad valorem tax claims | $222 | $0 | $222 | $222 | |
| Net Other Sec. Claims | | | | | |
| Total Other Sec Claims | $222 | $0 | $222 | $222 | B |

**GUC/Other Secured Split - Assumes 100% Deficiency Claim to Net Other Sec. Claims**

| | Total Claims | Proration | Prorated GUC Pmts | |
|---|---|---|---|---|
| Other Sec. | $0 | | | |
| | $0 | | | |
| Net Other Sec. Claims | $0 | 0% | $0 | |
| GUCs | $5,342 | 100% | $5,342 | C |
| Other Unsecured Claims | $0 | 0% | | |
| **Total Net GUC** | **$5,342** | **100%** | **$5,342** | |

1 *Payments Pre/On Eff. Date' comprises i) Abuleo's legal, accounting, and trustee fees paid prior to eff. Date - $948k, ii) eff. Date payments per Plan - $0, and iii) excess/unapplied eff. Date contribution - $0*

2 *Priority Wage claims - amounts catergorized as priority and the balance included with General Unsecured Claims for employee deferred salaries*

3 *Secured Tax Claims will be paid shortly after emerging from bankruptcy up to over 5 years following with monthly interest charges paid*

# **EXHIBIT D**

ASSUMED CONTRACT SCHEDULE

(Intentionally Omitted)